S

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK 

----------------------------------------------------------------------x        J

Trevor Whittingham, Global Investment Strategies Trust 2201

Seventh Avenue Realty LLC,

                              Plaintiff,

                    vs,

.Docket  Number :

Jury Trial Demanded.

18 U.S.C 1961-1964 Civil RICO.

42 U.S.C. 1983. 42 U.S.C. 1985.

Constitution Tort& New York.

Pendent Common Law Fraud Claim.

Mark Tress  and his alter ego also known as Moishe Tress, 1180 President Funding LLC, Harlem Contracting LLC, David  Satnick, John Piskora. Loeb &  Loeb LLP, David Kriss, Jerold Feuerstein , Kenneth Horowitz, Kriss & Feuerstein LLP, Steve Zervoudis, Galaxy General Contracting Corporation, Susanna Molina Rojas Clerk of the Court, Kam Yuen Principal Motion Clerk, Emma Lauren Holmes Court Attorney, Veronica Duncan   Court Analyst New York State Supreme Court Appellate Division First Judicial Department, Melissa Ann Crane Justice of the Supreme Court, Debora Baker Chief Clerk, Tyler Evans Principals Law Clerk, KevinBadskhan Law Clerk Commercial Division, Joshua Kelly Assistant Law Clerk, New York State Supreme Court County of New York Civil Term, Steve Zervoudis, Galaxy General Contracting Corporation, Roberta Ashkin Court Appointed Referee Deed Auctioneer, Banco Popular N.A, First Insurance Company,

                              Defendants

----------------------------------------------------------------------------------------x

### COMPLAINT I.

#### FEDERAL RULE OF CIVIL PROCEDURE RULE 8[a][2] CONLEY v. GIBSON STATEMENT

.1..     Plaintiffs Trevor Whittingham, Global Investment Strategies Trust, 2201 7th Avenue Realty LLC brings this 18 U.S.C. 1961 et seq civil Racketeer Influenced & Corrupt Organization Act complaint against each defendants listed in the above  caption matter, and that  they  violated the criminal RICO Statute 18 U.S.C. 1962 [d]through the commission of  conspiracy while  aiding and abetting each other in committing  mail fraud, wire fraud, scheme to defraud, honest service fraud,  bribery,  bank fraud, Hobbs Act,   money laundering, criminal violations of civil rights 18 U.S.C 241, 18 U.S.C 242 predicate consisting a pattern of racketeeringactivities 18 U.S.C 1962 [b] directly or in directly investmentin it 18 U.S.C 1962 [a], or maintain and interest in it, or participates  in an enterprise 18 U.S.C 1962 [C] pattern of  activities which affect interstate or foreign commerce, and that plaintiffs suffered injury to business and property and that the injury was proximately caused by the defendants RICO activities 18  U.S.C. 1964. Each of the defendants also violated Plaintiff Trevor Whittingham civil rights 42 U.S.C. 1983 and conspired to violate his civil rights 42 U.S.C 1985 under color of New York State law in violation of United States Constitution First Amendment Petition Clause, Fourteenth Amendment Due Process and Equal Protection Clause, and New York State pendent common law fraud, and conversion claims.

s

II.

PRLIMARY STATEMENT AND NATURE OF THE CASE..

2.   In Section III  below Plaintiffs  have provided  Federal Rules of  Civil Procedure 9[b] particularized statements  with evidence attached as exhibits which are incontrovertible proof supporting the veracity of their claims which Defendants cannot controvert, if this matter is decided on the merit on fact and law, and fraud upon the court is prevented from happening  again as it did in the New York State Unified Court System during the litigation of Plaintiffs New York Civil Practice Law and Rules CPLR Section 5501 a[1][2][3]4][5] and Section 3215 default judgement motions  and appeals taken to both the First Department and New York State Court of Appeals in 2021-2023.

3.    Defendants David Satnick, John Piskora, Loeb & Loeb, David Kriss, Jerold Feuerstein, Kenneth Horowitz, Kriss &Feuerstein, Mark Tress and his alter ego also known as Moishe Tress contaminated by extraneous influence including 18 U.S.C. 201 bribery, 18  U.S.C. 1951 Hobbs Act extortion New York State Unified Court System judges, Clerks of the court, and law clerks as their RICO co-participants, which aresome who are named herein as defendants to commit fraud upon the court, obstructed justice and  to suborn  their perjury.

4.  The RICO co- participants conspired 18U.S.C.371 with aided and abetted each other18  U.S.C.2 using wires 18 U.S.C 1241,  mail 18 U.S.C 1343, to scheme  to defraud 18 U.S.C 1346  Plaintiffs condominium development located at 2201 7th  Avenue New York New York 10027, in so doing violated 18 U.S.C 1346 honest service fraud statute. The defendants 18 U.S.C 1962 [c]  which is Harlem Contracting LLC  the RICO Enterprise pattern 18 U.S. 1962[b], and 18 U.S.C 1962 [d] affected  predicate Plaintiff Trevor Whittingham ability to conduct interstate commerce. Whittingham was also at some time a resident of Fort Lee Bergen County New Jersey with business in New York City.

5.This matter is similar to United States v. Angeilli  660 F2d 23 [CA2.1981] were eight New York City Marshalls appointed by the Mayor of the  City of New York as officers of the City's Civil Court  regarding bona fides of the Marshalls auction sales. The Marshalls converted the Court into an 18 U.S.C. 1962[c] RICO enterprise in  the same manner the defendants in Trevor Whitingham et al vs. Mark Tress aka Moishe Tress et al  used   New  York State Unified Court System which a victim of the  RICO  co-participants activities.

6.Plaintiffsentered into a  contract  EXHIBIT B with Defendants Steve Zervoudis and Galaxy General Contracting Corporation for the construction of a 32 units Class A luxurious condominium in Harlem on - - .Galaxy breached the terms of its contract by being 12 months behind schedule It was Defendant Steve Zervoudis responsibility to pay his own handpickedsub-contractors and vendors which he did not despite receiving timely monthly payments by wire transfer of almost $10 Million dollars from  Plaintiffs. On --- day Plaintiffsonly choice  was to  terminate  Defendants Steve Zervoudis and Galaxy General Contracting Corporation contract for cause in accordance with the clause agreed upon by both parties when signing the contract

7.Galaxy completed less than 70% of the condominium development project. At best it workmanship was shoddy and materially inferior.  Defendant Steve Zervoudis  and First American Title Insurance

s

Company filed an exaggerated fraudulent mechanic lien EXHIBIT H, with the knowledge of both Defendants Banco Popular N.A and First American Title Insurance Company. Galaxy commence a fraudulent foreclosure action. Against 2201 7th Avenue Realty LLC which was Plaintiff's Trevor Whitingham development company, even though it no longer owned the property, which has been transferred to Whittingham personal trust Global Investment Strategies Trust.

8.    A substantial commercia construction project went wrong in many ways. In this case defendants Steve Zervoudis and Galaxy, the general contractor [GC] was insolvent or kheer wise trips and falls and could not complete the project. As a result, Plaintiffs find itself in an awkward corner, facing claims for parties they did not even know which was the defense advance by Defendants Mark Tress aka Moishe Tress, David Satnick, John Piskora, Loeb & Loeb, Harlem Contracting that Plaintiffs defaulted in paying it vendors and as a result trigger foreclosure. EXHIBTs C,I,J.

9.    Plaintiffs engaged Defendants Galaxy and Zervoudis under a traditional contract that the GC agrees to build the Project for a fixed fee and pay all subcontractors and material suppliers [ collectively Vendors. But the Defendants drop the ball and default in many ways because Defendants Zervoudis and Galaxy were not paying their vendors and sub-contractors and using the monies from Plaintiffs to pay other debts or clean up similar meses on previous Projects, or this payment went to fund Zervoudis exorbitant lifestyle. EXHIBITs B,C.D,E,F,G,H,,I,J,K,L,M,N,O,P,Q,,R,S,T.

10.    New York Lien Law Article 2 allows an unpaid Vendor to file a mechanic's lien against the site and enforce that lien. Article 3-A createsa separate trust fund to protect GC and Vendors. Article 3-A makes power a statutory trustee over certain funds available for a Project. If the ownerdivest assets from the trust, then owner may incur liability to any Vendors or contracted directly with Owner which was not the case here.

11. Defendant Zervoudis entered into a conspiracy with Defendant Mark Tress aka Moishe Tress to swindle Plaintiffs. Mark Tress aka Moishe Tress used two Limited liability dummy companies in the scheme which are Defendants 1180 President Funding LLC and Harlem Contracting LLC. Zervoudis working in concert with Defendant First American Title Insurance filed an exaggerated fraudulent lien against Plaintiffs condominium to deliberately forced a foreclosure in a scheme to defraud Plaintiffs out of the most valuable luxury condominium development project in Harlem.

12.    Defendant Banco Popular N.A. joined the conspiracy by withholding disbursement of funds from the construction loan. Plaintiff used $500,000.of their own personal funds in an attempt to complete the project, but Banco Popular obstructed their efforts by not allowing it's engineers to certified the Project elevators, electric and mechanical components but instead commenced a bogus foreclosure action against 2201 7TH Avenue Realty LLC which no longer owned the Project.

13.    Defendant Mark Tress aka Moishe Tress using Defendant 1180 President Funding LLC as a straw buyer of Plaintiff's alleged outstanding debt but not a single dime was paid to either Defendants Banco Popular N.A, First American Title Insurance, Steve Zervoudis, Galaxy General Contracting Corporation.

14.    The foreclosure proceeding was before Hon. Marcy Friedman J.S.C. [retired] New York County Supreme Court Civil Term Commercial Division who was a UNICORN because she was a rarity who was honest, ethical, independent, fair, experience was scrupulous and has morals in a court system infested with dishonorable men and women who are political hacks masquerading in their black Halloween judicial robe costumes impersonating jurist of reasons, although corrupt and beholden to the real

s

estate industry the law, firms, banks and title insurance companies who are the political election campaign donors for their election and reelection to the bench.

15.    Judge Friedman pierce the corporate vail and exposed Defendant Mark Tress and his alter ego also known as Moishe Tress as one and the same person and his scams which was aided and abetted by his two law firms attorneys which are Defendants David Kriss, Jerold Feuerstein, Kenneth Horowitz, Kriss&Feuerstein, David Satnick, John Piskora, Loeb & Loeb. Judge Friedman forced Mark Tress aka Moishe Tress and 1180 President Funding LLC to issue Plaintiff 2201 7th Avenue Realty LLC a payout letter. EXHIBITs K,L,M,N,O,P.

16.    Realizing they were in no position to do so in view of the fact 2201 7th Avenue Realty LLC no longer owned the Project. Defendant Banco Popular voluntarily terminated its bogus foreclosure. Defendant Steve Zervoudis and Galaxy indemnifiedPlaintiffs and stipulated there was no outstanding debt. Judge Friedman decided on a sanction hearing against Defendants Kenneth Horowitz, Kriss &Feuerstein 1180 President Funding LLC i.e., Mark Tress aka MoisheTress.

17.    Unbeknownst to Judge Friedman Defendant Mark Tress aka Moishe Tress order his other lawyers David Satnick, John Piskora, Loeb & Loeb to bifurcate the matter and to petition Judge Carol Emead for a judicial order appointing Defendant Roberta Ashkin as a referee to auction Plaintiff Global Investment Strategies Trust condominium.EXHIBITs P and Q.

18.    1180 President Funding LLC was listed as the creditor auctioning 2201 7th Avenue Realty LLC condominium development "Project." Defendants Kenneth Horowitz, David Kriss, Jerold Feuerstein, Roberta Ashkin, 1180 President Funding LLC, Mark Tress aka Moishe Tress, David Satnick, John Piskora, Loeb & Loeb, Harlem Contracting LLC did not notified Plaintiffs attorney Andre Ramon Soile nor Plaintiffs or published the date, time and place of the auction. EXHIBITs N,O,P.

19.    Instead, they deliberately render a sewer service upon Defendant Joseph Raymond Sanchez who was no longer Plaintiffs'Lawyer and has shut the door to his law office due to his suspension by the State of Washington from practicing. Subsequently he was also suspended by the New York State Supreme Court Appellate Division Second Judicial Department. Mark Tress aka Moishe Tress was the only participant in the rigged auction. Defendant Roberta Ashkin was paid $80,000 for a five-minute auction.

20.    Mark Tress aka Moishe Tress and Harlem Contracting LLC paid $400,000. to himself Mark Tress aka Moishe Tress and 1180 President Funding LLC. Defendant Melissa Ann Crane is a New York State Supreme Court County of New York Civil Term Justice. Defendant Susanna Molina Rojas is the Clerk of The Court Supreme Court State of New York Appellate Division First Judicial Department. EXHIBITs N,0,P,Q.

21.    Both New York County Supreme Court and Appellate Division First Judicial Department are within New York State Unified Court System conspired to violate 18 U.S.C 1962 [c] Harlem Contracting LLC the enterprise and 18 U.S.C. 1962[d] predicate acts of 18 U.S.C 2 aiding and abetting, 18 U.S.C. 371 conspiracy, 18 U.S.C 1341 wire fraud. 18 U.S.C. 1343 mail fraud, 18 U.S.C. 1346 scheme to defraud, 18 U.S.C. 1346 honest service fraud, 18 U.S.C. 201 bribery of a public official, 18 U.S.C. 1951 Hobbs Act, 18 U.S.C. 241, 242 criminal civil rights violation. EXHIBITs Y and WW.

22.    The defendants RICO co-participants did knowingly, willfully and unlawfully combined, conspire, confederate agree with each other and defendants Mark Tress and his alter ego also known as Moishe Tress, David Satnick, John Piskora, Lobe & Lobe, David Kriss, Jerold Feuerstein, KennethHorowitz,

s

Kriss&Feuerstein, Roberta Ashkin, Steve Zervoudis, Galaxy General Contracting Corporation, First American Title Insurance, Banco Popular N.A, Harlem Contracting LLC, 1180 President funding LLC from June 1, 2021 entered into an agreement to associate with and participate in the conduct of an enterprise that affects interstate commerce Harlem Contracting LLCthrough a pattern of racketeering activity of bribery of state officials in violation of state and federal laws. EXHIBITs I,J,K,L,M,N,O,Q,,P.

23. Upon information and believed Defendant Melissa Ann Crane is not a multi-millionaire or a heiress to vast fortune who does not need Defendants David Satnick, John Piskora, Loeb & Loeb, David Kriss, Jerold Feuerstein, Kenneth Horowitz, Kriss &Feuerstein, First American Title Insurance, Banco Popular N.A, Seve Zervoudis, Galaxy General Contracting Corporation, Harlem Contracting LLC, 1180 President Funding LLC, Mark Tress aka Moishe Tress political campaign funds donations nor guarantees should she decided to retire or removed from the bench a partnership in one of the defendant's law firm Real Estate & Insurance Practice Group, otherwise why should she have committed fraud on the court, obstructed justice and suborn perjury. EXHIBITs E and Y.

24. The conspiracycentered around Defendant Mark Tress and his alter ego also known as Moishe Tress who agreed to commit fraud upon the court, obstruct justice, and suborn perjury, and Defendant Susanna Molina Rojas, Kam Yuen, Veronica Duncan, Emma Lauren Holmes who masqueraded and impersonated an Appellate Division First Department panel of jurist by entering an unarticulated, fraudulent, silent post card memorandum decision and order denying Plaintiffs appeal and affirming Defendant Melissa Ann Crane memorandum Decision and order denying Plaintiffs N.Y. Civil Practice Law & Rules [CPLR] Section 5015 [a][1][2][3][4][5] motion fraud upon the court and CPLR 3215 default judgement motions against Defendants Mark Tress and his alter ego Moishe Tress, Harlem Contracting LLC. EXHIBIT W.EXHIBIT X.

25. It's a common practice such as the wooing of New York State Unified Court System judges, clerk of the court, law and motion clerks such as Defendants Susan Molina Rojas, Kam Yuen, Veronica Duncan, Emma Lauren Holmes, Debora Baker, Kevin Badskhan, Tyler Evans, Joshua Kelly et al guaranteed employment by law firms, Title Insurance , and financial institutions in a quid pro quo exchange for committing fraud upon the court, obstruction of justice surbornation of perjury as Defendants in this matter at bar did. XEHIBTS,E,W,X,Y.

26. It was due to the fact that Defendants David Kriss, Jerold Feuerstein , Kenneth Horowitz, David Satnick, John Piskora. Roberta Ashkin, Steve Zervoudis, Mark Tress aka Moishe Tress were in criminal jeopardy for violating 18 U.S.C. 2,aiding and abetting, 18 U.S.C 371, conspiracy, 18 U.S.C 1343 wire fraud, 18 U.S.C 1341 mail fraud, 18 U.S.C 1957 Money laundering, 18 U.S.C 1344 bank fraud, that Defendant eliminated 1180 President Funding as plaintiff, because it was Mark Tress aka Moishe Tress who used 1180 President Funding LLC to steal Plaintiffs $55 million dollars condominium development project.. Defendants Mark Tress aka Moishe Tress and Steve Zervoudis Swindle Plaintiffs out of their $55 million dollars 32 units luxury condominium development project in Harlem New York City.

27. They were aided in the process by the partners of the law firm Kriss & Feuerstein David Kriss, Jerrold Feuerstein, the law firm of Lobe & Lobe, David Satnick, John Piskora, Banco Popular, First American Title Insurance. Judges law clerks, and courts clerks of the New York Unified Court System were bought and owned by Defendant Mark Tress aka Moishe Tress.

28. Although Defendant Mark Tress and his alter ego also known as Moishe Tress and Harlem Contracting LLC does not have title, his first order of business after stealing Plaintiffs property was to

s

obtain a fraudulent first mortgage for more than $24 million dollars. Not one single dime has been invested since 2016 to complete or maintain the project. He has flipped the property more than four times to himself using dummy limited liability companies. Each time he flipped the property the new owner meaning himself will obtain a new line of credit using the property as collateral .EXHIBITs E,F,G,H,I.J.K.L.M.N,O,P.

III.

FEDERAL RULE OF CIVIL PROCEDURE 9[b]BELL ATLANTIC CORP v. TWOMBLY PARTICULARIZE STATEMENT

29. Plaintiffs alleged all the matters set forth in paragraphs 1 through 28 and incorporates by reference herein.

30. Plaintiffs ' complaints are anchored in  a bed of facts that are not freely floating on a sea of bombasts, bald face assertations, periphrasticcircumlocutions, unsubstantiated conclusions, or outright vituperation.

31. Each fact is supported by documentary evidence which are incontrovertible proof supporting their veracity, and  although defendants have not been able  to controvert and  due the defendants fraud upon the court and obstruction of justice within the New York State Unified Court System   has prevented any meaningful adjudication on the merits on fact and law.

32. Defendant Mark Tress and his alter ego also known as Moishe Tress singular objection was to use Plaintiff's condominium development project as collateral in obtaining fraudulent first mortgages, each time he flipped the property to himself using dumming  domestic limited liability companies as straw buyers.

33.   He has obtain  more than $60 million dollars in questionable fraudulent mortgages  but , not a single cent was plow back to complete or maintain Plaintiffs condominium  which was  once the pride of Harlem African- American entrepreneurship,  has now become a monument to Hassidic and Ashkenazi Jews  racketeering influence and corrupt organization act enterprise greed and New York State Unified Court System judicial corruption and unethical conducts.

34.This is an action alleging that the Defendants violated 18 U.S.C. 1961[a], 18 U.S.C 1962 [c][ Racketeering Influence Corrupt Organization enterprise, aiding and abetting 18 U.S.C. 2, conspiracy 18 U.S.C 371 wire fraud 1341, mail fraud 18 U.S.C 1343, scheme to defraud 18 U.S.C 1346, honest service fraud 18 U.S.C 1346, bribery of a public official 18 U.S. 201, 18 U.S.C 1951 [b][2] Hobbs Act,  18 U.S.C 1956 money laundering, 18 U.S.C. 1344 bank fraud, 18 U.S.C. 241, 18 U.S.C 242  criminal civil rights violations.

35. The policy underlying the Rooker- Feldman doctrine which is based on the concept that a litigant should not be able to challenge state court orders in federal courts as aa means of relitigating matters that  that already have been consider and decided by a competent court  does not bar this action. Defendants David Satnick, John Piskora, Loeb & Loeb asserted that neither  New York  State Supreme Court Appellate Division First   Judicial Department nor the New York State Court of Appeals had jurisdiction to hear Plaintiffs   United States Constitution First Amendment Petition Clause and Fourteenth Amendment Due Process and Equal Protection Clause claims in their  dilatory, spacious, perjured, and highly prejudicial pleadings, and the state court agreed, and pass on the claims.

s

36.  The Defendants alsoviolate 18 U.S.C. 241, by agreeing to injured, threatening and intimidated Plaintiffs with judicial sanctions  and  18 U.S.C 242 under the color of law to willfully deprive Plaintiffs United States Constitution  First Amendment Petition Clauses access to the Courts barring Plaintiffs from petitioning  the Courts for redress of injury in violation of Plaintiff Trevor Whittingham United States Constitution Fourteenth Amendment  Due Process and Equal Protection Clauses.

37.   Defendant Mark Tress and his alter ego also known as Moishe Tress, David Satnick, John Piskora, Loeb & Loeb devise  a Scheme to defraud the New York City Department of Finance, New York State Department of Finance, United States Internal Revenue Services by improperly means to avoid paying the appropriate taxes owed on Global Investments Strategies Trust and Trevor Whittingham stolen $55 million condominium development project by devaluing their stolen property to zero equity. EXHIBITs B,C,D,E,F,G,H,I,J,K,L,M,N,O.P.

38. He would alsoinflated the value of the property each time Defendant Mark Tress and his alter ego also  known  Moishe Tress uses one of his dummy shell limited liability companies  Defendant Harlem Contracting LLC   use the property as a collateral to obtain  a fraudulent first mortgage of over $24 million dollars, even though he does not have title, and  in addition to  another $40 or more million dollars  in fraudulent first mortgages loans,  each time he flipped Plaintiffs stolen property to himself using domestic limited liability corporations, which are  post office shell  dummy companies with not a dime in liquid  assets.

39.  Plaintiff Trevor Whittingham is 74 years old African- American of Jamaican descent. On  November 5, 1995, he bought a piece of land from Defendant Steve Zervoudis located at 2201 7th Avenue in the Harlem Section of the  Borough of Manhattan New York City New York State for the sum of $USD125, 000 for the development  of a 32 Units Class A luxurious condominium.

40.  On November 30, 2005,  Plaintiff's Trevor Whittingham obtain a construction loan in the amount of $USD 15.7  million dollars from  Banco Popular N.A. EXHIBIT A, Loan documents.. Plaintiffs Whittingham and his development company 2201 7th Avenue Reality LLC organized under the laws of  New York State entered into a contract with Defendants Steve Zervoudis and Galaxy General contracting corporation as general contractor [GC], for the construction of Plaintiffs condominium development for the sum of $12 million dollars. EXHIBIT A construction loan from Defendant Banco Popular N,A, EXHIBIT B construction contract

41.    The contract specifically   demanded that Defendants Steve Zervoudis and Galaxy General Contracting Corporation must  finish construction of a turnkey  condominium  development project on the -day of—20---.  But both Defendants  Galaxy General Contracting Corporation were in breach of contract, in view of the fact they were 12 months behind the agreed date to complete   Plaintiff's Turnkey Condominium Project.

42.  In 2002, the New York  legislature passed the Prompt Pay Act, whose stated purpose is to promote timely payment to construction industry contractors and sub-contractors. N.Y. General. Business. Law Section 756-a [McKinney. 2009]. The Prompt Pay Act applies to "all contracts exceeding $150,000 to construct, reconstruct, alter, maintain, move or demolish  any building, structure or improvement, or otherwise excavate, develop or improved land within New York ." [ N.Y. Gen. Bus. Law Section 756 [McKinney 2009].

43.   The Prompt Pay Act, when read together with the New York Lien Law, facilitates prompt payment to contractors. The act's ,legislative purpose is "to promote business in New York by attempting to avoid

s

undue delays of payment for approved services." [2002. N.Y.S.N. 7724 Section 1]. See EXHIBIT,Cwire transfer in the total amount of  more than $9.85  million dollars made payable to Defendants Steve Zervoudis and Galaxy General Contracting Corporation..

44.  The Prompt Payment Act generally provides that "the terms and conditions of a construction shall supersede the provisions of the article and govern in the conduct of the parties thereto." [N.Y. Gen. Bus. Law Section 756. [McKinney 2009]. However, certain provisions of construction contracts, particularly those that  relate to payment, are void and unenforceable to the extent that they are inconsistent with the provisions of the Prompt Pay Act.

45.  Plaintiffs were not in contract with Defendants  Galaxy General Contracting Corporation and Steve Zervoudis, and it was the responsibility  of the general contractor to pay its own chosen sub-contractors which  Defendants Galaxy General Contracting Corporation and Steve Zervoudis constantly  failed to do which was responsible for the delays in construction and breach of contract. See EXHIBIT D, which is Spector group  the Project Architect report  dated October 30, 2009, supporting the veracity of Plaintiffs claim that Defendant Steve Zervoudis and Galaxy General Contracting  Corporation was  in default and in breach of contract.

46.  For example, Section 756-a [2] sets forth the default standard that governs invoices related to construction contracts. While an owner, or general contractor is not obligated to pay disputed bills, the act requires these parties to approved or disapproved all or a portion of an undisputed invoice within twelve business days of receipt of such invoice and all contractually required documentation, [N.Y. Gen. Bus. Law. Section 756-a[2][[a][I] [McKinney 2009].

In the event that an  owner or general contractor disapproves all or a portion of an invoice, they must prepared and issue a written statementdetailing any disapproved items, utilizing one of the enumerated reasons under the provisions to justify their disapproval. [N.Y. Gen. Bus. Law Section 756-a[2][a][I]. [McKinney 2009].Neither Defendants Steve Zervoudis nor  Galaxy complied with N. Y. Gen. Bus. Law Section 756-a[2][a][I]. What Defendants were doing was to use every payment made by the Plaintiffs to finance  their other construction projects thus delaying completion of the Plaintiffs condominium development projects.

47.  An owner may decline to approve an invoice or a portion thereof for the following reasons: [1] unsatisfactory or disputed job progress; [2] defective construction work or material not remedied; [3] disputed work materials; [4] failure to comply with other materials provisions of the construction contracts; [5] failure of the contractor to make timely payment for labor; [6] failure of the owner architect to certify payment for any or all of the reasons set forth in this section so long as the reasons are included in the owner's written statement of disapproval. N.Y. Gen. Bus. Law Section 756-a[2][a][I].

48.  Defendants did not provide Plaintiffs with any plausible explanation as to why Zervoudis was not paying his subcontractors for materials supplied or to correct any deficiencies. [ N.Y. Gen. Bus. Law. Section 756-a[3][b][iii] [McKinney 2009].  However, the act mandates that in such an instance, a contractor must provide  the sub-contractor or material supplier with written notice of any withholding. [N.Y. Gen. Bus. Law. Section 756-a[3][b][iv][3].

49.  But according to lies told  by  Defendants David Satnick,  John Piskora, Loeb & Loeb, Harlem Contracting LLC, and Mark Tress and his alter ego also known as Moishe Tress, Kenneth Horowitz, Kriss & Feuerstein,  1180 President Funding LLC et alPlaintiffs Whittingham and 2201 7th Avenue Realty LLC, were responsible for paying Galaxy General Contracting Corporation Subcontractors. See EXHIBITs E, I, J

s

50.   Statnick, Piskora, Loeb & Loeb dilatory, spacious and perjured affirmation filed on May 23, 2022, in the Supreme Court of the State of New York Appellate Division First  Judicial Department which was a plethora of bold face lies presented as alternative new facts that dehored EXHIBIT B the construction contract.   DefendantsDavid Satnick, John Piskora, Loeb & Loebmemorialized his bold face lies in his dilatory, perjured  and spacious affirmation in opposing Plaintiffs motion to vacate the fraudulently obtain Judicial referee deed auction of Plaintiffs Trevor Whittingham and  Global Investment Strategies Trust Condominium.  Both Defendants, Susan Molinas Rojas Clerk of the Court New York State Supreme Court Appellate Division First Judicial Department, Debora Baker Chief Clerk, Kevin Badskhan Law Clerk Commercial Division, Tyler Evans Principle Clerk, Joshua Kelly Assistant law clerk for Defendant Melissa Ann Crane Justice  New York County Supreme Court Civil Term,     glossed over the fact that  David Satnick et al violated American Bar Association Model Rule 3.3 candor to the tribunal. See EXHIBITS A, B,C,D,E.

51.    The Act states that when a subcontractor has performed its obligations under a contract shall remit, and each contractor shall in turn pay to its subcontractors, the funds received from the owner no later than  "seven days after receipt of good funds each interim or final payment, precontractual required  documentation  and  waivers  are  received." [See  N.Y.Gen.  Bus.  Law  Section  756-a[3][][b][ii].Defendants Galaxy and Zervoudis did not complied with the Prompt Pay Act by not disclosing to their subcontractors the due date for receipts of payments stated in  the time  construction subcontract is entered into.

52.   In view of the fact Defendants failed to disclose this information, they were and not the Plaintiffs responsible and obligated to pay the subcontractors as though the due dates were met by the owner. [Gen.. Bus. Law. Section b756-a[4][McKinney 2009].Trevor Whittingham was a very successful entrepreneur in  New York City.  From 2005 to 200owned and operated several lucrative parking lot garages in Manhattan where he employed more empyema's ownedrestaurants-lounges in Harlem, locksmiths, and a real estate development company and owned several multi-units rental apartment buildings, which provided high wages in an economic depressed and neglected Harlem section of Manhattan.

53.   His world as he knows came crashing down due to the negligence of his accountant to pay a $251,265, In withholding taxes50.   Whittingham is a visionary who predicted that Harlem would become the " New Manhattan Gold Coast, and there would be a need for the sort of luxurious condominium  selling like hot cakes in Manhattan upper east and west side, Chelsea,  Soho,  Tribeca FiDi etc. Defendant Zervoudis, several carpet baggers including Defendant Mark Tress and his alter ego also known as Moishe Tress coveted 2201 7[th]  Avenue condominiumdevelopment in Harlem. Several ridiculous low offers was made to Whittingham to relinquished his ownership, which he rebuffed.

54.   A concerted devious   scheme to deprived Whittingham. EXHIBIT F rendering of  Plaintiffs condominium development project. It was neither a coincidence nor happenstance, that Whittingham suddenly   became a  target of multiple   federal   law enforcement agencies who investigated Whittingham on false information provided by unnamed informants, which lied that he was involved in criminal illegal activities which allegedly was the sources of his wealth.  No illegality was found nor incontrovertible evidence supporting the bold face lies of the informants.

55.  On January  3, 2013 Preetinder  Singh Baharara United States Attorney Southern District of New York and Toni Weirauch Special Agent-in-Charge of the Internal Revenue Services Criminal Investigation

s

New York City Field Office announced the indictment and arrest of Plaintiff Trevor Whittingham for failure to pay his employees withholding taxes.

56.   The government was very disingenuous. Whittingham did not buy a Ferrari, the automobile was leased, and it was surrendered and neither did he live a lavish lifestyle on a quarter of a million dollar. Whittingham had a very comfortable lifestyle prior to his indictment from the proceeds of his various business ventures which he earned the old fashion way through honest hard work. The government indictment caused him to lost a 250 unit rental apartment complex and several other real estates in Harlem.

57.   He lost his Lucrative Parking Garages, including restaurant bar and lounges and a lock smith shop , because he is not the son of a United States President. It would strain incredulity to a breaking point, that not even the proverbial village idiot would believe that Whittingham who had a Certified Public Accountant was personally responsible for not paying the IRS his employees withholding taxes but paid his personal taxes.

58.   Regardless of his CPA perfidy and mendacity who threw him under the bus, on advice of counsel Whittingham accepted responsibility for a crime he did not commit, because he could not fight a very powerful government, and the deck was stack against him in a court hostile to African- Americans regardless of guilt or innocence.

59,     Whittingham paid his personal and corporate taxes but was arrested and charged the InternalRevenue Service [IRS]  for failure to pay to the government his employees Social Security withholding taxeswhich was the responsibility of his business accountants. On December 20, 2012, a federal grand jury indicted Whittingham with thirteen counts of willful failure to collect, account for and pay over to the IRS his employees'payroll taxes in violation of 26  U.S.C. 7202.On July 8, 2013, Whittingham pleaded guilty to one count of the indictment. He was sentenced on May 12, 2014, by Hon. Richard Sullivan United States District Judge Southern District of New York, to one year and a day imprisonment and ordered to pay restitution in the amount of $251,265 which represented the amount owed to the IRS. His term of supervised release expired on May 20, 2018.

60.     It was highly unusual for the most prominent United States Attorney in the nation representing the most prestigious prosecutor's office to take personal interest in a pedestrian mundane  a quarter of a million withholding tax case, and to announce Trevor Whittingham indictment in a full court press conference before the nation. Special interest groups who coveted Plaintiffs lucrative luxurious condominium development project unclean hands was responsible. Defendant Mark Tress and his alter ego  also known as Moishe Tress, and Steve Zervoudis were among those who wanted to steal Plaintiffs property.

61.     Members of the bar and bench including ordinary John and Jane Doe citizen knows that both the Federal Bureau of Investigation, Main Justice [DOJ], and United States Attorneys often weaponized the IRS or abuse 18 U.S.C. 1001 with impunity in a CYA strategy  where there was no probable cause in the first place in going after a target.

62. Regardless of the fact hisCertified Public Accountant whose responsibility it was to pay the government, Whittingham took responsibility. Regardless of the fact Whittingham did not have a prior, even ma moving vehicle parking ticket violation, support from the Harlem  community, business, political and religious diaspora testaments of his good moral character, he was sentence to one year and a day imprisonment, because his  neither a Caucasian or Jew, who have been slapped on the wrists with

s

fines and community services for serious felonies which were more egregious than none remittance to the government employees Social Security withholding taxes.

63.    Ironically on  June 20, 2023, David Weiss United States Attorney for the District of Delaware announced that Hunter Biden agreed to plead guilty to two "misdemeanor" tax crimes of  willfully failing to pay income taxes and reached an agreement on a gun- related offenses that would allow United States President  Joe Biden cocaine addict son to avoid a conviction and prison sentence for illegal purchase of a firearm and failure to pay millions of dollars in personal income taxes. Was it an equal justice for all under the United States Constitution Fourteenth Amendment Equal Protection Clause.

64. 2201 7th Avenue condominium development was  in 2012 a substantial commercial construction project ["a project"] which went wrong in many ways. One of the many of reasons was because the general contractor ["the   GC"]    Defendant Galaxy General Contracting Corporation [Galaxy]and Defendant Steve Zervoudis trips and falls on its own fraud, and could not finish the project, which placed Plaintiffs in an unattainable situation, which has caused and continue to cause irreparable financial damages, and extreme emotional distress.

65.  Plaintiffs engage Galaxy that agrees to build the Project for a fixed fee. The GC agrees tobear the responsibility of paying the sub-contractors and material suppliers [collectively, "vendors." Galaxy dropped the ball and beach the contract [defaulted]. Plaintiffs were not cognizant of the fact that Galaxy was not paying its vendor everything due to them. The GC should have funded these payments from money that Plaintiffs gave GC to pay for the Project. EXHIBITs  B,C,D,E,F,G,H,I,J.

66.  The nonpayment of Galaxy  to it  vendors lead to the delay of the project competition, because Defendants Steve Zervoudis and Galaxy used the funds from the Project to pay other debts and clean up similar messes on previous and other ongoing projects. It was a cold comfort the Galaxy remains liable to the unpaid vendors. As a practical matter, unless someone pays vendors, they won't keep on working.

67.  Although Plaintiffs conceivable could conceivably finish the  Project with replacement vendors, that process will cause huge cost overruns, disruption and delays. Moreover, some of the unpaid vendors were so vital that Plaintiffs could not replace them. Galaxy violated Lien Law Article-3-a which prohibits a GC from using funds from one project to pay debts of another unless GC has paid certain Vendors at the First Project. See N.Y Lien Law sections 70-79 [McKinney 2007]. EXHBITs  H, and I.

68.  In New York, Owner may  also face direct claims against Project and real property on which it sits [together, the "site" from unpaid Vendors, as a result of New York's "floridly complicated and impenetrably opaque" Lien Law [the "Lien Law"]. The Lien Law gives vendors two possible ways to make claims against the owner or the site, in addition to any direct contractual rights that any particular vendor can asserts.

69.  On  September 20, 2009,Plaintiffs terminated their contract with  Defendants Galaxy General Contracting Corporation and Steve Zervoudis. EXHIBIT G letter terminating contract for cause due to breach of contract.  Defendants retaliated by causing DefendantFirst American Title Insurance to file an exaggerated fraudulent lien against 2201 7th Avenue Realty LLC, the contested  property for the sum of $2,751,106.80 on October 5, 2009. EXHIBIT H, fraudulent exaggerated lien.  Plaintiff Whittingham transferred the contested property to his personal trust Global Investment Strategies Trust on April 10, 2010. See EXHIBITI, transfer document.

s

70.   Defendant Banco Popular N.A was the originator of $15. 7 million dollars in construction loans on June 8, 1996. See EXHIBIT A. Loan Agreement documents. Galaxy General Contracting Corporation completed barely 70% of the construction when it breached the contract with Plaintiffs. Due to the fraudulent exaggerated lien imposed by Defendant American Title Insurance on behalf of Defendants Steve Zervoudis and Galaxy,  Defendant Banco Popular N.A. decided not to release additional funds to Plaintiffs, and refused to have its engineers to   certified the mechanics, electrical components and elevators. Whittingham used $500,000. Of his own personal funds in an attempt to complete his condominium development project.

71.   Due to Defendant American Title Insurance fraudulent exaggerated lien  Defendant Banco Popular N.A. was induced by Defendant Steve Zervoudis and Galaxy to commence foreclosure actions against Plaintiffs Trevor Whittingham and 2201 7th Avenue Realty LLC on the -day of - . in the  New York County Supreme Court See New York County Supreme Court Index Number 102131-2010 as consolidated with Index Number 650956-2010. EXHIBIT H.

72.   Defendant Zervoudis invited Defendant Mark Tress and his alter ego also known as Moishe Tress to buy his   allege construction nonpayment note. But See EXHIBIT I Defendants Steve Zervoudis and Galaxy General  Contracting Corporation indemnification of Plaintiffs Trevor Whittingham and 2201 7th Avenue Realty LLC from any alleged outstanding debt from nonpayment which controverted EXHIBIT E Defendants Statnick, Piskora, Loeb & Loeb perjured and spacious affirmation in opposition filed in the First Department on May 23, 2022.

73.   Defendant Mark Tress and his alter ego also known as Moise Tress entered into a conspiracy with Defendant Steve Zervoudis, and Galaxywhich was aided and abetted by Defendants First American Title Insurance and Banco Popular N.A in a fraudulent conveyance scheme to defraud as a straw buyer using Defendant 1180 President Funding LLC as a front to acquire Plaintiff Global Investment Strategies Trust and Trevor Whittinghamproperty. EXHIBIT J,  Which is the transfer of title and deed to   Global Investment Strategies Trust.

74.   Both Plaintiff and Steve Zervoudis, Galaxy,  Mark Tress and his alter ego Moise Tress 1180 President Funding LLC, Harlem Contracting LLC in a protracted litigation before Hon. Marcia Friedman Justice of the Supreme Court New York County Supreme Court Civil Term Commercial Division [retired]. Defendant  Kenneth Horowitz, Kriss &Feuerstein represented Mark Tress and his  alter ego  also known as Moishe Tress and 1180  President Funding LLC.  Defendants David Satnick, John Piskora, Loeb & Loeb also represented Defendants Mark Tress aka Moishe Tress and Harlem Contracting LLC.

75.   Judge Friedman was a UNICORN, because she was a rarity known for independence, fairness, morality, ethics, legal scholarship, in New York Unified Court System were corruption, fraud upon the court is the norm. It is a court system loaded by dishonorable men and women, who are  political hacks without an iota of moral character masquerading in their black Halloween judicial robe costumes impersonating jurist  of reason. Judge Friedman brought a wealth  of knowledge of commercial realty litigation and was an experienced litigator in the private sector prior to her appointment and election to the bench.

76.   She pierced the corporate vail of both 1180 President Funding and Harlem Contracting LLC. She also exposed  Mark Tress and his alter ego also known as Moishe Tress, and the fraud upon the court that was committed by Defendants John Piskora, David Satnick, Loeb & Loeb, Kenneth Horowitz, Kriss &Feuerstein, Steve Zervoudis, Galaxy, American Title Insurance Banco Popular N.A et al.

s

77.    Judge Friedman also advice  Defendant Kenneth Horowitz to retain counsel because he was in legal jeopardy for his perjury and fraud upon the court. See EXHIBIT, K hearing transcripts  dated May 15, 2017, before Hon. Marcy Friedman J.S.C. New  Part 60 York County Supreme Court Civil Term Part 60 Centre Street New York  New York 10013  in 1180 President Funding LLC v. 2201 7TH Avenue Realty et al.

78.    On June 12, 2017, a sanction hearing against Defendants Kenneth  Horowitz and 1180 President Funding LLC. was schedule by   Judge Friedman. See EXHIBIT L,  sanctions transcripts before Judge Friedman Mark Zauderer of Fleming, Zulack, Williamson, Zauderer appeared on behalf of Defendants 1180 President Funding, Mark Tress and his alter ego also known as Moishe Tress. Warren Estis and Howard Kingsley of Rosenberg & Estis for Defendant Kenneth Horowitz.  See EXHIBIT ZZ

79 Judge Friedman entered an order directing these defendants to issue Plaintiffs with a payout letter. A hearing was scheduled for June 1, 2019 , but Instead of obeying  Judge Friedman's order  Defendants Banco Popular, American Title Insurance, Steve Zervoudis, Galaxy, KennethHorovitz, Kriss &Feuerstein decided 1180 President Funding LLC Mark Tress and his alter ego also known as Moishe Tress decided to terminated their foreclosure action against  2201 7th Avenue  Realty LLC, and Trevor Whittingham upon discovering that 2201 7th Avenue Realty LLC  no longer owns the Condominium Development Project, and that it was legally owned by Global Investment Strategies Trust. See EXHIBIT J.

80.Joseph Sanchez a sole practitioner in  Great Neck New York was Plaintiff's counsel. As with his normal corrupt and unethical manner of conducting  his racketeering activities Mark Tress and his alter ego  also known as Moishe Tress bribed  contaminated Sanchez by extraneous influence to coerce Whittingham to give up the title of his $55 million dollars condominium project in exchange for $100,000. Whittingham was incarcerated at that time after pleading guilty to not paying his staff  social security withholding taxes. In view of the fact that Joseph Raymond Sanchez was suffering from actual conflict of Interest, he was sacked by Plaintiffs. Sanchez filed a motion to withdrew as counsel, and it was granted by Judge Friedman. EXHIBITs M and N.

81.    Sanchez left no forwarding address and Plaintiff could not obtain the originals of their case files. Had it been Whittingham did not have the common sense to request copies none of the exhibits attached to this complaint would have been available. In response to his inquiry  Christopher Disit the United States Postal Services Postmaster whose station was serving Sanchez law office which was located at 295 Northern Boulevard Suite 301 Great Neck New York 11201 state beginning from the winter of 2014 every mail sent to Sanchez law office was return to sender. See EXHIBIT M.

82.   Unbeknownst  to Judge Friedman Defendants Mark Tress and his alter ego also known as Moishe Tress, 1180 President Funding LLC, Kenneth Horowitz, David Kriss, Jerold Feuerstein, Kris &Feuerstein, David Satnick, John Piskora, Loeb & Loeb bifurcated the foreclosure against Plaintiff 2201 7th Avenue Realty LLC and Trevor Whittingham and made an application for a judicial sale referee deed auction of Plaintiff's Global Investment Strategies Trust Condominium. See EXHIBIT, J Transfer of title document executed by Whittingham transferring ownership from 2201 7TH Avenue Realty LLC to Global. EXHIBITs P and Q.

83.    Judge Carol Emeade granted the order and appointed Defendant Roberta Ashkin as Referee. Global Investment Strategies Trust Condominium is located at 2201 7th Avenue in Harlem Manhattan Borough  New York City, State of New York. Defendants Ashkin, Mark Tress aka Moishe Tress, David Kriss, Jerold Feuerstein, Kriss &Feuerstein, John Piskora, David Satnick, Loeb & Loeb violated NY Real Property Actions and Proceedings Section 231 by deliberately rendering a sewer service of process on

s

Joseph Sanchez and by not publishing the auction in the New York Amsterdam News. Referee fees is generally governed by Rule 8003 of the New York Civil Practice law and Rules.

84.CPLR 8003[a] provides that: referee is entitled, for each day spent is the business of the reference, to three hundred and fifty dollars unless a different compensation is fixed by the court or by the consent in writing of all parties not in default for failure to appear plead. According to Defendant's David Satnick, Defendant Roberta Ashkin was paid $80,000.00 by Defendant Mark Tress aka Moishe Tress. Eighty thousand dollars for less than one hour ? EXHIBIT N.

85. We guess for rigging the auction of a stolen property.75. Whittingham resides in Harlem, and he is a member of the Harlem Chambers of Commerce. The publishers and journalists are his acquaintances, who could have notified him of the theft and fraudulent rigged auction of Global Investment Strategies Trust condominium. EXHIBIT N , Referee deed auction was on February 8, 2016, two years after Joseph Raymond Sanchez closed down his law office and left no forwarding address. See EXHIBIT M.

86. It was due to the fraud committed upon the court that compelled Judge Friedman decision to conduct a sanction hearing .See also EXHIBITS K and L. Mark Tress and his alter ego also known as Moishe Tress and 1180 President Funding LLC placed Global Investment Strategies Investment Trust condominium on the auction block. Mark Tress and his alter ego also known as Moishe Tress and Harlen Contracting LLC were the only participants in the rigged auction conducted by Defendant Roberta Askins. See EXHIBIT O, New York City Department of Finance Office of the City Register. EXIHIBIT O.

87. Defendants Banco Popular N.A, First American Title Insurance, Galaxy General Contracting Corporation, Steve Zervoudis, 1180 President Funding LLC, Kenneth Horowitz, David Kris, Jerold Feuerstein, Kriss &Feuerstein, Mark Tress aka Moishe Tress decided to terminated their fraudulent foreclosure action against 2201 7th Avenue Realty LLC, which does not own the condominium which was before Judge Friedman.

88. At the same time Defendants David Satnick, John Piskora, Loeb & Loeb, Harlem Contracting LLC, Mark Tress aka Moishe Tress were gaslighting an unwitting or willing Judge Emead with an order to show cause objecting to the termination of the foreclosure action against 2201 7th Avenue Realty LLC which does not own the property , See EXHIBIT J.

89 Even a moron who is a certified village idiot could see through Mark Tress and 1180 President Funding aka Moishe Tress and Harlem Contracting LLC carnival dog and pony freak show which is a farce. See EXHIBIT, P Defendant David Satnick Memorandum letter to Judge Emead dated Jaune 2, 2017 which was controverted by Plaintiffs' counsel Andre Ramon Solie. EXHIBIT Qdated June 2, 2017.AndreRamon Soile was retained as new counsel and was counsel of record when the Defendants rigged their fraudulently obtain judicial referee deed auction sale order.

90. In his arrogancy and delusion of grandeur Mark Tress aka Moishe Tress due to the fact that his New York State Unified Court system judges, court clerks and law clerks when he has bought and paid for, in his back pocket, respected law firms attorneys who are willing conspirators and have aided and abetted him in his various scams and his ethnicity as a Hasidic Jew, he is above the law he has gotten away with the commission of the perfect crime andcannot be held accountable.

91. Mark Tress aka Moishe Tress is a very experience real estate developer albeit a scam artis, his battalion of unethical, unscrupulous, deplorable attorneys, who does not have an iota of moral compass, whose names would have been stricken from the roll of attorneys in good standing, if

s

theywere not Jewish, and political connected, are experience real estate litigators, so it would strain incredulity to a breaking point, and not even the proverbial village idiot, would believe, that they had neglected to conduct, a title search, in other to find out who was the legal bona fide owner of the property, they have stolen. See EXHIBITs I and J.

92.  Defendant Mark Tress aka  Moishe Tress also comprised Plaintiffs new counsel by extraneous influence by bribing him. Andre Ramon Soleil did not disclose to Plaintiffs that he had a prior business relationship with Defendant Mark Tress aka Moishe Tress, or that he has been investigated by the New York State Supreme Court Appellate Division First Judicial Department Attorney Grievance Committee prior to his subsequent disbarment on  May 20, 2019 in absentia  after  he did not responded to the committee November 9, 2018, because he had fled overseas to avoid possible criminal prosecution on an unrelated matter. In response to Plaintiff's complaint dated  March 30, 2020, See EXHIBITU.  On June 19, 2020, Mark F. DeWan Deputy  Chief Counsel responded with the information regarding the Soile disbarment. EXHIBITV. Soleil left Plaintiffs in a lurch. See all so EXHIBITs R and S,T.

93.Plaintiff Trevor Whittingham was duped out of his life savings by Joseph Sanchez and Andre Ramon Soleil his two perfidious mendacious, unethical, unscrupulous and immoral retain counsels. In view of the fact  that Social Security retirement benefit became his only source of income, he decided to proceed prose. On August 28,2020 Whittingham  filed a  New York Civil Practice Law &Rules [CPLR] Section 5015[a][1][2][3][4]5] motion pleading fraud upon the court, obstruction of justice, and perjury. 1180  President Funding LLC and Harlem Contracting LLC  were named as Plaintiffs. See EXHIBIT W.

94.    In view of the fact Defendants Jerold Feuerstein, David Kriss, Kenneth Horowitz, Kriss &Feuerstein, David Satnick, John Piskora, Loeb & Loeb could not contaminated her honor Marcia Friedman by extraneous influences to commit fraud upon the court, by suborning  their perjury, and obstruction of justice, and given the fact that Judge Friedman had previously place Defendant Kenneth Horowitz on notice of his legal jeopardyexposures, Defendants decline to file a responsive answer to Plaintiffs motion. Unfortunately for the Plaintiffs, Judge Friedman decided to retire from the bench.

95.  After her retirement Defendant Melissa Ann Crane was reassigned to Plaintiffs CPLR 5015 [a] [1][2][3][4]5] motions  to Defendant Melissa Ann Crane.84.    At no time during the seven months that Plaintiffs motion was pending before Judge Friedman did Defendants Kenneth Horowitz, David Kriss, Jerold Feuerstein, Kriss & Kriss, 1180 President Funding LLC filed a motion requesting an extension of time CPLR 3012[d]. But  immediately Defendant Crane was Judge shopped  upon the retirement of and reassigned Defendants Piskora, Satnick, Loeb & Loeb, Harlem Contracting LLC, Mark Tress aka Moishe Tress filed a dilatory, spacious and perjured affirmation in opposition.

96.  Plaintiffs replied on-day- with a CPLR 3215 Motion demanding default judgement See EXHIBIT X.85. A Review of Defendant Crane profile on the Robing Room will show that members of the bar have nothing but contempt for her, because she is a political hack who is a beneficiary of New York infamouscorrupt  political "I owe you favor bank." Nepotism [ NEPO BABY], who is not only incompetent, inexperience, unethical, and biased, and not known for her legal scholarship or intelligence.

97.    Defendant Mark Tress aka Moishe Tress are among members of the New York Real Estate Board and law firms  who have e special interest that normally  invest generously  on  candidates running for or rerunning judicial elections in New York State.

s

98.    Elections and campaigns are very expensive, and the average John or Jane Doe does not donate funds for judicial campaigns. Defendant Melissa Ann Crane was bought and paid for by Loeb & Loeb, David Satnick John Piskora, Kriss & Feuerstein, David Kriss, Jerold Feuerstein, Kenneth Horowitz, Mark Tress aka Moishe Tress.  Loeb and Loeb  dilatory, spacious and perjured affirmation in opposition  to Plaintiffs CPLR 5015 was filed on ---------- less than five days after the matter was reassigned to Defendants Crane, Baker, Badskhan, Evans, and Kelly.

99.   Defendant Crane depends very heavily on Defendants Debora Bakar, Kevin Badskhan, Tyler Evans, and Joshua Kelly in the drafting of her  memorandum decisions and orders entered on June 1, 2021, which was not adjudicated on the merit of fact and law. It simply regurgitated the Defendants perjured and spacious affirmation in opposition. It was the second edition of Defendants pleading. See EXHIBITYDefendant's Crane purported memorandum decision and order denying Plaintiffs CPLR 5015 [a][1][2][3]4][5] and CPLR 3215 Motions EXHIBIT W.

100.    On the caption of her frivolous and fraudulent order, Defendant Melissa Ann Crane eliminated 1180 President LLC as the plaintiff in Harlem Contracting LLC v. 22017TH Avenue Realty LLC  CPLR 5015 due to the criminal jeopardy Defendants Mark Tress and his alter ego also known as Moishe  Tress, Kenneth Horowitz, David Kriss, Jerold Feuerstein, David Satnick, John Piskora, Loeb & Loeb, Roberta Ashkin were facing for using the United States Postal Services to render  a sewer process of service of the notice of auction, in violation of mail fraud 18 U.S.C 1341 wire fraud, 18 U.S.C. 1343 mail fraud.

101.    The RICO co- conspirators also,violated 18  U.S.C. 371  conspiracy to commit, 18 U.S.C 2 aiding and abetting in violation 18 U.S.C 1962 [d] predicate acts. See EXHIBIT M.89.  Defendants Crane, Baker, Badskhan, Evans, and Kelly first fraudulent decision was to eliminate Defendants 1180 President Funding LLC,  as a litigant, because Defendants Kenneth Horowitz, Jerold Feuerstein, David Kriss, Roberta Ashkenazi, Mark Tress aka  Moishe Tress violated 18 U.S.C 1343 wire fraud, 1 U.S.C. 1341 mail fraud, 18 U.S.C. 1346 honest service fraud, 18 U.S.C 1346 scheme to defraud, 18 U.S.C 371 conspiracy, 18 U.S.C 2 aiding  and abetting, by unitizing the United States post office and communicating by phone with each order in rendering a sewer service of process to prevent Plaintiffs from attending Defendant Roberta Ashkenazi rigged auction of Global Investments Strategies Trust stolen Property.See EXHIBIT M.

102.    It took Defendant Crane less than ten business days to read a dozen year worth of court files, hearing transcripts, exhibits before rendering her fraudulent order EXHIBIT Y,  denying  Plaintiffs CPLR 3215 and CPLR 5051 [a][1][2][3][4][5] motions. Compare Defendants Piskora, Satnick, Loeb & Loeb affirmation in opposition EXHIBIT Ewith  Defendant Crane's order EXHIBITY, you don't have to be a Clarence Darrow or Thurgood Marshal to discern that both was drafted by Defendant Loeb & Loeb, Piskora, Statnick et al.EXHIBITs E, W,X,Y.

103.    On June 14, 2021, Plaintiffs filed a timely notice of appeal in with the Court Clerk Office of the New York County Supreme Court Civil Term located at 60 Centre Street New York New York 10013. See EXHIBITZ,  annexed to anotarized affidavit of service See EXHIBITAA which was deliver by Federal Express See EXHIBITBBFederal Express Air bill . EXHIBITs Z, AA,BB,,CC,DD,EE,,FF,GG,HH

104.    It was delivered on June 15, 2021, at 10.50 AM and signed for by C. Ward and an employee of the Court see EXHIBITCC.  Each time Plaintiff Trevor Whittingham requested a certified copies of his file so he could prepare his record on appeal the courts employees would lie to him that he did not have any

s

pending in the court any  matter that was recently adjudicated, and this was during the height of the COVID pandemic.

105.   Trevor Whittingham was compelled to execute and  file a second notice of appeal before New York County Clerk would certify his record on appeal. Second notice of appeal EXHIBIT HH. See Record on appeal EXHIBIT JJ. The demand for a second notice of appeal was a  fraudulent scheme to procedurally time bar Plaintiffs from taking and perfecting their appeal, which was exactly what Defendants John Piskora, David Satnick, Loeb & Loeb, Mark Tress aka Moishe  did with their fraudulent, frivolous and perjured motion EXHIBIT LL did on April 20,2022 demanding dismissals of Plaintiffs appeal as time barred.

106.    At his age and his compromised immune system, he took the subway more than half a dozen times to the Courthouse only to be lied to over and over again. Regardless of the fact he was proceeding pro se, and on appeal prose litigants are not require to E-File their notice on appeal and record on appeal, the county court clerks disingenuously  demanded he  must  E-File his pleading. See EXHIBITDD Memorandum address to Lawrence Marks who then was Chief Administrative Judge New York State Unified Court System.

107.   In New York self-represented pro se litigants are automatically exempted from E-Filing See 22 CRR-NY 1245.4 See CPLR 2111[b][3][A][B] See EXHIBIT EEresponse from the office of court administration. Whittingham was lied to, that since the court could not find his original notice of appeal, he must file a second one before the record on appeal is certified. See EXHIBIT FF  Rider of the record on appeal. EXHIBITGG Hon New York County Clerk certification of the record on appeal on the –day of –.

108. PlaintiffWhittingham is a lay person proceeding pro se, but the court held him at a higher standard than Defendants Piskora, Satnick, Loeb & Loeb. Regardless of the fact that Defendants did not abide by N.Y Civil Practice Law and Rules and New York State Supreme Court Appellate Division First Department local rules, and judges shop for a particular term and panel, they had the audacity to move for the dismissals of Plaintiffs Notice of Appeal as untimely. See EXHIBIT LLDefendant John Piskora Notice of Motion and Affirmation in Opposition dated April 20,  2022.97.

109.    The plaintiff was caused mendaciously by the  lower court to execute another notice of appeal before  EXHIBIT FF, his  record on appeal rider will be certified. It was a disingenuous scheme for the same purpose pleaded by Defendant Piskora in his perjured notice of motion and affirmation in opposition to deny Plaintiffs to take and perfected an appeal.

110.    The deep pocket of Defendant Mark Tress and his alter ego also known as Moishe Tress was in play. See EXHIBIT, HHPlaintiffs second notice of appeal dated July 27, 2021.98.    New York State Supreme Court Appellate Division First Judicial Department Principal Motion Clerk Defendant Kam Yuen accepted Plaintiff appeals brief EXHIBT II and Record on AppealEXHIBITJJ.

111.  The following  EXHIBITS K,L.M,T, U, V, W, X, Y, Z, AA, BB,, EE, FF, HH,the  Record on Appeal.In  April 2022. Defendant  Emma Holmes an Appellate Division First Judicial Department Court Attorney sent an email to Whittinghaminforming him Justice Troy Webber has adjourned the appeal to the September 2022 Term.See EXHIBIT KK. Defendants David Satnick, John Piskora, Loeb & Loeb answer was due on May 6, 2022. Reply if any May 13, 2022, and panel submission  September 6, 2022. See EXHIBIT KK Emma Holmes Email. Defendants did not file a motion requesting an extension of time not file their dilatory spacious and perjured brief.

17

s

112.   Compare the date Plaintiffs file their appellate brief EXHIBIT II, with  the Courts scheduling order EXHIBIT KK, then subtract  the days due to the ennui  of the Defendants they decided to sit on their hands, and when they decided to file an answer EXHIBIT MM with Plaintiffs reject reply to brief EXHIBIT RR, it this was not a blatant fraud upon the court and obstruction of justice, I wonder what it was.99. Defendant John Piskora on April 20, 2022, responded with a frivolous spacious and perjured motion to dismissed Plaintiffs. EXHIBIT LL. Defendant.

113.   Plaintiff's appeal was originally schedule for the 2022 June Term. Defendants Piskora, Satnick, Loeb & Loeb, Mark Tress aka Moishe Tress did not file a motion requesting an expansion of time to file their dilatory, spacious and perjured brief which was supported with a plethora of bald face lies. For example, they lied that Banco Popular N.A decision to foreclose was because Plaintiffs did not pay his sub-contractors, even though it was the responsibility ofDefendants Steve Zervoudis and Galaxy responsibility. See EXHIBITs A, B, C, D,E. F,G,H.I,J,K.

114.   Defendants Harlem Contracting LLC, David Satnick, John Piskora, Loeb & Loeb, Mark Tress aka Moishe Tress also lied in their  appeal brief EXHIBIT MM, filed on --That the winning bid paid by Mark Tress aka Moishe Tress was $4.1 million dollars but see EXHIBIT N referee deed, and EXHIBIT O New York City Department of Finance Office of the New York City Register where Mark Tress aka Moishe Tress stated he paid $400,000.

115.   But see EXHIBITs JandTTwhichthe result of  the most recent title search is  indicating that Mark Tress aka Moishe Tress and Harlem Contracting LLC does not owned Global Investment Strategies Trust property. EXHIBI J.101.   On  August 18, 2022, Plaintiff requested an expansion of time to file  a reply the defendant David  Satnick. John Piskora, Loeb  & Loeb, Harlem Contracting LLC dilatory, spacious and perjured brief. See EXHIBIT NN.

116.   The court rejected Plaintiff's motion instead  demanded that plaintiff should use the Courts own interim summary statement on application for expedited services and interim relief. EXHINIT OO. Plaintiff complied.  See EXHIBIT PP [I], September 13, 2022, PP[ii],  September 14, 2022, PP [iii] September 20, 2022, PP [iv] September 2022 emails from Defendant Kam Yuen .

117.   But Defendant Kam Yuen always find none existing bogus defect while the clock was ticking because  Defendants Satnick, Piskora, Loeb & Loeb, Harlem Contracting LLC, Mark Tress aka Moishe Tress, Melissa Ann Crane, Debora Baker, Kevin Badskhan, Tyler Evans, Joshua Kelly , Susan Molina Rojas did not wanted Plaintiff who were demand sanctions for any willful violation of the America Bar Association Model Rule 3.3.

118.On  September 19, 2022, Defendant Victoria Duncan informed Plaintiff by email that his reply brief was rejected because it was allegedly untimely EXHIBIT QQ. But see Defendant Emma Lauren Holmes April 20, 2022, Email EXHIBIT KK. Requiring opposition submission by May 6, 2022. At no time did the defendants file a motion requesting an expansion of time. See EXIBIT RR Plaintiffs reply brief.

119.   The court unarticulated, silent, fraudulent, frivolous, post card Memorandum Decision and order affirming Defendant's Crane fraudulent Order EXHIBITY, which was drafted by Defendants Piskora, Satnick, Loeb & Loeb. Plaintiffs Filed a notice of appeal and affidavit in support for leave to appeal to the New York State Court of Appeals. EXHIBIT RR on the -----. See Defendants affirmation in opposition EXHBIT SS.  The Courts Order denying leave EXHIBIT Plaintiff's memorandum of law. EXHBIT TT.

s

120.   Plaintiff's memorandum of law which was not accepted EXHIBIT UU.    Although Defendants Harlem Contracting LLC, Mark Tress aka Moishe Tress does not have title EXHIBITS I, J, K, L, M, ,N.O,,P, Q, TT, he used Global Investment Trust property to obtain $28 million dollars fraudulent first mortgage, and not a single dime has been invested to complete or maintain the building. See   EXHIBIT V.V Title search

121.  Plaintiffs' Counsel EXHIBIT Q Andre Soile  in his June 2, 2017, memorandum to Judge Carol Emead unmasking Mark Tress aka Moishe Tress as one and the same person controlling both 1180 President Funding LLC  and Harlem Contracting LLC. AndreRamon Soile June 2, 2017, EXHIBIT P, email also exposed the fact, that Mark Tress aka Moishe Tress violated N.Y General Business Law Section 349, 340, and N.Y penal Law Sections 170.10,  170.20, Section170.20, Section 170.35 and did not pay a single dime for Global Investment Strategies Trust property when he register plaintiffs stolen deed as belong to Defendant Harlem Contracting  LLC, as paying $400,000 with New York City Department of Finance New York City  Register Office.

122 Each time he uses one of his dummy limited liability companies to flip Plaintiffs Property to himself, he would obtain another fraudulent first mortgage. Ge is believed to have obtain more than $60 million dollars. Signature and First Republic Banks are believed to be holding his worthless notes. See EXHIBITS T and Q.. Both 1180 President Funding LLC and Harlem Contracting LLC the vehicle used to swindle Plaintiffs are both owned by Mark Tress and his alter ego also known as Moishe Tress. Plaintiffs Condominium Development is a monument of America greed and fraud and judicial corruption.

123.   Mark Tress aka Moishe  Tress has flipped Plaintiffs property several times to himself using shell dummy limited liability companies. Each time he flipped the property he would use it as collateral to obtain new fraudulent mortgages. Signature and First Republic Banks are holding more than $60 million dollars in bad fraudulent loans obtained by Mark Tress aka Moishe Tress.

124.Lien Law Article 2 allows an unpaid vendor to file a mechanic's lien against the "Site" [a "Lien" and enforced that Lien. Second, Lien Law Article 3-A create a separate trust fund regime to protect the GC and vendors. 3-A makes the Owner a statutory trustee over certain funds available for a Project. If the owner divest assets from that trust, then Owner may incur liability to any vendors that holds Liens or contracted directly with Owner

125Over the years defendants Zervoudis and his partner Mark Tress aka Moishe Tress having  moaning and wringing their unclean hands in despair pleading with courts to bar  to order Plaintiffs to walk away from their $55 million dollars condominium which they stole with assistance from unethical attorneys and corrupt judges whose names should have been stricken from the roll of attorneys in good standing.109.    Defendants Galaxy and Steve Zervoudis finished only 70% of the  Project when it defaulted.,

126.Defendant Zervoudis decided to  with the intent to defraud knowing and willfully sabotage Plaintiffsattempt to finished the  Project by lying that Galaxy and its Vendors did not received payment due, afterPlaintiffs decided and  attempted to minimize their  Article 2-A Article 3-A exposures in view of the fact that  2201 7th Avenue A Condominium Project has already gone bad due to Galaxy default, breach of contract and otherwise. Plaintiff [1]could have completed  the Project [2], do it on time [3] do it so on budget.

127.  Plaintiffs decided to finish the project on their own, by using half a million dollars of Whittingham own personal funds to pay for work such as the elevator shaft, electrical wiring, carpentry, interior

s

masonry including marble floors,  bathrooms and toilet fixture, window casement and windows, and other fixture.

128. Defendants  Galaxy and Zervoudis caused  Defendant First American Title Insurance and other Vendors to attached an exaggerated  Mechanical lien against Plaintiff  Whittingham and 2201 7th Avenue Realty LLC, which was the proximate causation of the refusal of  Defendant Banco Popular refuse to release additional funds from the original $15.7 million dollars construction loan, and as a result, Plaintiffswould have counted themselves  lucky to achieve even the first goal in view of  Galaxy and Zervoudis intentional fraud. EXHIBITS B, C, D, E. F, G,H , I, J.First American Title Insurance Mechanic Lien. See EXHIBIT H.

139. As aways, the legal obligations and rights for any Project will depend on facts and circumstances of that Project. that holds  particularly true for the  Lien Law. Application of Lien Law to any set of facts usually amount to a difficult exercise, given [a] the opacity of the Lien Law; [b] the limited scope of cases interpretating the Lien Law; [c] the fact-intensive nature of the scant case law that does not exist; and [d] the history of surprises in the area, particularly in Article 3-A. Seen generally New York. Lien Law Section 79 [ noting in Article 3-A PREVENTS ENFORCEMENT OF Lien under Article 2-A or 3; and neither such Lien nor nits satisfaction amount to diversion of trust assets or unauthorized preference ].

131.    Defendant First American Title Insurance filed an exaggerated lien which in New York impose an undue financial strain on property owners and legitimate  honest contractors alike, wasting time and resources defending against frivolous claims. The shortcoming of New York's statutory provisions addressing willfully exaggerated mechanic's liens  section 39 of the New York Lien Law coupled with courts narrow interpretations of the provisions, allow abusive general contractors subcontractors suppliers, and other individuals entitiesto file willfullyexaggerated liens with small risk of repercussion.

132.    New York courts hold that the question whether a mechanic's lien is willfully exaggerated must be determined at a trial or on a motion for summary judgement after the closure of discovery, or motion for vacatur  due to fraud on the court in obtaining a judicial or of foreclosure or referee deed auction. As the high volume of litigation in New York caucus wheel of justice to run slowly, it can take years before a New York Court decides on the merits of a lien claim.  The onus is on the Lienee to defend against such claims, and to do so,  the lienee must dedicate time and financial resources throughout a lengthy litigation process to attack the claim and clear the property of the encumbrance.

## IV.

## THE PARTIES.

133. Plaintiff Trevor Whittingham is Jamaican- American naturalized United States citizen, who is an entrepreneur and real estate developer with his principle place of business 119 Street # 2A New York New  York 10026.Plaintiff Global Investment Strategies Trust is an irrevocable trust organized and existing under the laws of the state of New York with its principle place of business located at 132 West 119 Street New York New York  Apartment 2A 10026.  Global Investment Strategies Trust primary beneficiary is Trevor Whittingham, who is also the sole trustee.

134.    Plaintiff  2201 7th Avenue Realty LLC is  a limited liability company organized and existing under the laws of the State of New York with its principle place of business located  at 132 West119 Street Apartment 2A 10026 in Harlem Manhattan  Borough  York City State of New York.118.      Defendant

s

Mark Tress and his alter ego also known as Moishe Tress, a resident of Lakewood Ocean County New Jersey 130 Forest Drive Lakewood Township, NJ 08701.

135.    Mark Tress aka Moishe Tress has more than a dozen dummy shell limited Liability companies. He is the sole equity owner of two shell limited liability companies 1180 President Funding LLC and Harlem Contracting LLC the vehicles, which he used in his pattern of racketeering activities to defraud  Trevor Whittingham and Global Investment Strategies Trust of their condominium development property valued at $USD55 million dollars located at 2201 77th Avenue in the  Boroughof Manhattan, New York City, New York State.

136.    The drafter of this complaint was a barrister & solicitor at law who was on retainer with governments of  offshore tax heaven, sovereign wealth funds, transnational, and corporations, financial institutions, and high net worth entrepreneurs. Unraveling and piercing  Defendant Mark Tress aka intertwined  companies spider web of dumming shell domestic  limited liability companies, and his offshore holdings was not difficult at all.

137.    Defendant 1180 President Funding LLC is a shell domestic  limited liability company organized under the laws of New York State. It  has no fixed physical address or tangible assets. It is owned by Mark Tress and his alter ego also known as Moishe Tress.  It's Register Agent is VCORP Agent Service Inculcated at2Robert Pitt Drive Monsey New York 10952.120.    Defendant Harlem Contracting LLC is a shell domestic limited Liability  Company organized under the  laws of the  New York State. Its sole equity owner is Mark Tress and his alter ego also known as Moishe Tress with a Radio City Station  P.O BOX 1921  New  York New York 10101, and  VCORP Agent Service Inc as it Registered Agent located at 25 Robert Pitt Drive, Suite 204, Monsey New York 10952.121.

138.    Defendant David Satnick is a partner  and chairman of the real estate and insurance litigation group in the law firm of Loeb & Loeb a limited liability partnership organized under New York State Laws, and the lead attorney of record representing Harlem Contracting LLC, conspired with, aided and aided Mark Tress and his alter ego also known as Moishe Tress and the other defendants in a pattern of racketeering activities and fraud in a scheme to defraud Plaintiffs of their condominium development property. His address is Loeb  & Loeb 345 Park Avenue New York N.Y 10154.

139.    Defendant John Piskora is a an attorney and senior counsel in the real estate and insurance litigation group in the law firm of Loeb & Loeb a limited liability partnership organized under New York State Laws and a member of the team of attorneys of record representing Harlem Contracting LLC conspired with, aided and abetted the other defendants,  Mark Tress and his alter ego also known as Moishe Tress in a  pattern of racketeering  activities and frauds to  defraud Plaintiffs of their Condominium development. His address is Loeb & Loeb 345 Park Avenue New York 10154.

140.    Defendant Loeb & Loeb is  a domestic limited liability law firm partnership organized and existing under the laws of the state of New York, with it principle place of business located  in Manhattan New York City New York State located at 345 Park Avenue New York New York 10154.124.    Loeb & Loeb is one among the political connected law firms in the state of New York employed by Mark Tress and his alter ego also known as Moishe Tress to contaminated by extraneous influences New York State Unified Court System Judges to commit fraud on the court, obstruction of justice, abuse of  process, subordination of perjury in furtherance of the defendants pattern of racketeering activities.

141.    Defendant Kenneth Horowitz  is an attorney admitted to practice law in the state of New York under the employment of the law firm Kriss &Feuerstein LLP,  when he was the attorney of record

s

representing 1180 President Funding LLC, Mark Tress and his alter ego also known as Moishe Tress. Kenneth Horowitz in furtherance of the defendants pattern of racketeering activities, conspired, aided and abetted the defend ants to commit fraud by deliberately rendering a sewer service of process to prevent plaintiffs from attending a  fraudulently obtain judicial referee deed auction sale which was rigged to benefit Mark  Tress and his alter ego also known as Moishe Tress. 360 Lexington Avenue #1200 New York NY 10017.

142.    Defendant David Kriss is an attorney admitted to practice law in  New York State and a co-founder of  Kriss & Feuerstein LLP who were 1180- President Funding LLC, Mark Tress and his alter ego also known as Moishe Tress. 360 Lexington Avenue #1200 New York New York 10017.127.    Defendant Jerold Feuerstein is an attorney  admitted to practice law in New York State and co-founder of Kriss & Feuerstein LLP who were 1180 President Funding LLC, Mark Tress and his alter ego also known as Moishe Tress. 360 Lexington Avenue #1200 New York NY 10017.

143.    Defendant Kriss & Feuerstein LLP is a domestic liability law firm partnership, organized and existing under the laws of the state of New York, with its principal place of business located at 360 Lexington Avenue Suite 1200 New York  New York 10017. Kriss & Feuerstein LLP was Kenneth Horowitz employer, who together with David Satnick, John Piskora, Loeb & Loeb, Roberta  Ashkenazi in furtherance of the defendants pattern of racketeering activities rigged judicial fraudulent referee deed auction sale of plaintiffs condominium development property to benefit Harlem Contracting LLP,  Mark Tress and his alter ego also known as Moishe Tress. 360 Lexington Avenue #1200 New York N.Y 10017.129.

144.Defendant Steve Zervoudis is the Chief Executive Officer of Galaxy General Contracting Corporation, a developer of commercial and residential properties in New York City.  Regardless of the fact that Zervoudis was 12 months behind schedule and in violation of his contract to deliver a completed turnkey condominium development to Plaintiffs Trevor Whittingham, Global Investment Strategies Trust, Zervoudis filed a defective fraudulent Mechanic lien against 2201 7th  Avenue Realty LLC triggering a foreclosure in furtherance of the defendants pattern of racketeering activities.130.

145. Defendant Galaxy General Contracting Corporation was incorporated in 1981 organized and existing under the laws of the  State of New York, with its principal place of business located at 3152 Albany Crescent Suite 2,  The Bronx New York 10463.131.

146. Defendant Susan Molinas Rojas is an attorney Admitted to practice law in the State of New York, who currently is the Clerk of the Court New York State Supreme Court Appellate Division First Judicial Department 27 Madison Avenue New York NY 10010. Molinas Rojas conspired, aided and abetted the defendants to commit fraud by converting New York State Unified Court System Appellate Division First Judicial  Department located at 27 Madison Avenue New York  New York 10010.132.

147. Defendant Melissa Crane is an elected Justice New York State Supreme Court County of New York. She is located at the Courthouse Building 60 Centre Street New York New York 10013. She conspired, aided and abetted the defendants who are her co-participants to violate  [RICO] 18 U.S.C. 1962 [c[[d] enterprise in furtherance of the defendants pattern of racketeering activities.133.

148.    Defendant Debora Baker is Chief Law Clerk for Defendant Crane New York County Supreme Court Civil Term 60 Centre Street New  York NY 10013.134.   Defendant  Kevin Badskhan is the commercial division law Clerk for Defendant Crane. New York County Supreme Court  Civil Term 60 Centre Street

s

New York New York 10013.135.    Defendant Tyler Evans is Defendant's Crane Principal Law Clerk New York County Supreme Court Civil Term 60 Centre Street New York 10013.

149.    Defendant Joshua Kelly is an Assistant Law  Clerk for Defendant's Crane New York County Supreme Court Civil Term 60 Centre Steet New York New York 10013.137.

150.    Defendant Roberta Ashkin is an attorney Admitted  to practice law in New York State, and her principal place of business is in Manhattan New York City located at    East 42nd Street New York New York 10017. She was appointed  by Carol Emead a Justice of the New York County Supreme Court Commercial Division to fraudulently auction Global Investment Strategies Trust  condominium Development property even though the order was against 2201 7th Avenue Realty LLC. She rigged the referee  deed auction sale in furtherance of the defendants pattern of racketeering activities to benefit Mark  Tress  and his alter ego also known as Moishe Tress. She is located at 400 East 70th Street Apt. 2205 New York NY 10021.

151.Defendant First American Title Insurance conspired with Defendants Steve Zervoudis, Galaxy General Contracting Corporation, Mark Tress and his alter ego also known as Moishe Tress, 1180 President Funding LLC, Harlem Contracting LLC, Kriss & Feuerstein , David Kriss, Jerrold Feuerstein, Kenneth Horowitz,  Loeb, David Satnick, John Piskora, Banco Popular N.A. to file a fraudulent exaggerated Lien against 2201 7th Avenue Realty LLC.  American Title Insurance failed in its fiduciary responsibilities and did not provide Plaintiffs with the title insurance and professional settlement services for commercial  real estate developers that was promised Plaintiff is located at 666  3rd Avenue 5th Floor  New York NY. 10017.139.

152.    Defendant Banco Popular N.A. is a financial service conglomerated that has been in business for more than 125 years in Puerto Rico and the Virgin Islands and  in New York State for more than 52 years, with corporate headquarters in Hato Rey San Juan was the originator of the construction loan taken out by Plaintiffs Trevor Whittingham, and 2201 7th Avenue Realty LLC for the development of a 32 units Class A  luxury condominium  in Harlem to be constructed  by Defendant Galaxy General Contracting Corporation.  Banco Popular N.A. primary address is 85 Broad Street 10th Floor New York AN.Y 10004.

153.    Banco Popular  conspired with and was  aided and abetted by  Defendants Steve Zervoudis, Galaxy, Mark Tress aka Moishe Tress, American Title Insurance, 1180 President Funding LLC to initiated a fraudulent foreclosure proceeding and against  Plaintiffs, and impeded Plaintiffs ability to complete their condominium  development project, by refusing  to allow its engineers to certified the  mechanics, electric components, elevators, after Galaxy and Zervoudis breach contract with  Plaintiffs.

154.    Defendant Kam Yuen is a principal motion clerk  Supreme Court State of New York Appellate Division First Department. 27  Madison  Avenue New York New York 10010.142.    Defendant Emma Lauren Holmes is a court attorney with the appellate division first judicial department located at 27 Madison Avenue New York New York 10010.

155.  Defendant Victoria Duncan is a court analyst with the Supreme Court State of New York Appellate Division First Judicial Department   27 Madison Avenue New York New York 10010.This  Court has original subject matter jurisdiction pursuant to 18 U.S.C 1964 [c] and 28 U.S.C 1331 because this action arises in part, under the Federal Racketeer Influenced and Corrupt Organization Act ['' federal RICO''] and 42  U.S.C. 1983  Civil Right ["Constitution Tort"].146.  The Court has subject matter jurisdiction pursuant to 28 U.S.C 132 because the amount in controversy exceeds $55 million dollars, exclusive of interest and costs and there is complete diversity of citizenship between Plaintiffs and  Defendants.

23

s

156.  This Court has jurisdiction over Plaintiffs related state and common law claims0pursuant to the doctrine of supplemental jurisdiction 28 U.S.C 1367148.    This Court has v personal Jurisdiction over Defendant Mark Tress and his alter ego also known as Moishe Tress, Tress and his alter ego Moishe Tress has purposely directed actions at this forum to obtain a series of fraudulent bank loans and first mortgages by flipping Plaintiffs condominium development using several shell domestic limitedliability companies with no tangible assets.

157.    The exercise  of Jurisdiction  over Mark Tress aka Moishe Tress is reasonable at least because Mark Tress aka Moishe  Tress conspired with defendants David Satnick, John Piskora, Loeb& Loeb, Kenneth Horowitz, David Kriss, Jerrod Feuerstein, Kriss &Feuerstein, Steve Zervoudis, Galaxy General Corporation, Susan Molinas Rojas, Melissa Crane, to defraud Plaintiffs.

158.This Court further has personal jurisdiction over Mark Tress and his alter ego also known As Moishe Tress who is a LakewoodOcean County New Jersey re4sident under 28 U.S.C. 1965 [b] because4in any action pursuant to the federal RICO statute in a United States District Court may cause parties residing in another district to be summoned to that district if the "ends of justice require' 'it.

159.    Given these facts, and that no bother district has personal jurisdiction over All defendants, the ends of justice require this Court's exercise personal jurisdiction over Mark Tress and his alter ego also known as Moishe Tress.This  Court has personal jurisdiction has personal jurisdiction over Defendant David Satnick because he has purposely directed his conduct at this forum with respect to the New York State Unified Court System 18 U.S. C 1962 [c] enterprise activities.

160.  This Court has personal Jurisdiction over  John Piskora, because it is reasonable at least that as a senior counsel and a member of  Loeb & Loeb real estate and insurance litigation group that has and continue to represent Harlem Contracting LLC, Mark Tress aka Moishe Tress, John Piskora personally participated in the activities alleged herein.

161.    This Court has personal jurisdiction over Defendant Loeb & Loeb because it has purposefully directed its conduct at this forum with respect to the State of New York Unified Court System 18 U.S.C. 1962[C] enterprise in furtherance of the Defendants pattern of racketeering activities. Defendant Loeb & Loeb conspired with David Satnick, John Piskora and aided and abetted them to contaminated New YORK Unified Court System judges Carol Emead,  Melissa  Crane, Justices of the Appellate Division First Judicial Department, Susan Molinas Rojas John and Jane Doe court law clerks  and pool attorneys by extraneous influences to commit fraud on the court in furtherance of the defendants pattern of racketeering activities.

162.    This Court has personal Jurisdiction over Defendant Kenneth Horowitz because Horowitz has purposefully directed his conduct at this forum with respect to 1180  President Funding LLC, Harlem Contracting LLC,   Kriss & Feuerstein, David Kriss, Jerrod Feuerstein,  Roberta Ashkenazi, David Satnick, John Piskora, Susan Molinas Rojas Steve Zervoudis, Galaxy General Contracting Corporation respect to Mark Tress and his alter ego Moishe Tress scheme in furtherance of the enterprise pattern of racketeering  activities. The exercise of jurisdiction over  Kenneth Horowitz at least because Horowitz was an attorney representing 1180 President Funding LLC, Mark Tress  and his alter ego also known as Moishe Tress, and personally participated in the activities alleged herein.

163.    This Court has personal jurisdiction over David Kriss because he is the co-founder of Kriss &Feuerstein and personally participated in the activities alleged herein in furtherance of the Defendants pattern  of racketeeringactivity.

s

164.   This Court has jurisdiction over Jerrod Feuerstein because  he is a co-founder of Kriss &Feuerstein because  he has purposely conspired, aided and abetted, and directed his conduct at this forum with respect to the Defendants pattern of racketeering activities.

165.   This Court has personal jurisdiction over Defendant Kriss &Feuerstein because Kriss &Feuerstein has directed purposefully its conduct with respect to the Defendants pattern of  racketeering. The exercise of jurisdiction over Kriss &Feuerstein at least because Kriss & Feuerstein conspired, aided and abetted the Defendants to defraud the Plaintiffs out of their condominium development property by authorizing Kenneth Horowitz to render a defective  sewer process services in furtherance of the Defendants pattern of racketeering activities.

166.   This Court has personal Jurisdiction mover Defendant Susan Molinas Rojas because Molinas Rojas has purposely directed her conduct in this forum with respect to the New York State Unified Court system Supreme Court State of New York Appellate Division FirstJudicial Department as  participants in furtherance of  her co-participants pattern of racketeeringactivity. Defendant Molinas Rojas contaminated the justices and court clerks by extraneous influence to commit fraud upon the court, conspired, aided and abettedthe Defendants her co-participants by fraudulently denying plaintiffs access to the court to file a reply to David Satnick, John Piskora, Loeb & Loeb, Mark Tress and his alter ego also known as Moishe Tress perjured and spacious dilatory reply to Plaintiffs appellate brief.

167.   This Court has personal jurisdiction over Defendant Melissa Crane Justice of New York State Supreme Court  New York County Civil Term, because Melissa Crane purposely directed her conduct at this forum with respect to her   to elimination of 1180 President Funding LLC, Kenneth Horowitz, Kris &Feuerstein, David Kriss, Jerrold Feuerstein, from  Roberta Ashkenazi, Mark Tress and his alter ego also known as Moishe Tress,  as plaintiffs due to their violation of United States mail fraud, wire fraud, honest service fraud, and scheme to defraud, because they rendered a sewer process of service David Satnick, John Piskora due their mail and wire fraud from criminal and civil liabilities regarding the use of the United States post office to commit mail fraud by deliberately rendering sewer process of service to prevent Plaintiffs from attending the fraudulently obtain  a judicial order  to auction their property in an auction rigged by Defendant Roberta Ashkenazi  to benefit Mark Tress aka Moishe Tress.

168.   This  exercise of jurisdiction over Melissa Crane is reasonable at least because Melissa Crane converted New York County Supreme Court into a RICO enterprise in furtherance of the defendants racketeering activities.159.   This  Court has personal jurisdiction over Defendant Debora Baker who is the chief clerk of Judge Melissa Ann Crane New York State Supreme Court County of New York Civil Term Commercial Part because she conspired with, aided and abetted Defendants Melissa Ann Crane, Kevin Badskhan, Tyler Evans, Joshua Kelly in the conversion of Judge Crane's courtroom into a  18 U.S.C. 1962 [c]RICO enterprise and violated 18 U.S.C 1962[d] predicate acts in furtherance of Defendant Mark Tress and his alter ego also known as Moishe Tress racketeer activities.

169.    This Court has personal jurisdiction over Defendant Kevin Badskhan the law clerk of Defendant Melissa Ann Crane commercial division New York State Supreme Court County of New York Civil Term, because he conspired with, aided and abetted Defendants Melissa Ann Crane, Debora Baker,  Tyler Evans, Joshua Kelly  in the conversion of Judge Crane's courtroom into a 18 U.S.C. 1962[c] RICO enterprise and violated 18 U.S.C 1962 [d] predicate acts in furtherance of Defendant Mark Tress and his alter ego also known as Moishe Tress racketeer activities.

s

171.    This court has personal jurisdiction over Defendant Tyler Evans who is Defendant Melissa Ann Crane principle clerk New York State Supreme Court County of New York Civil Term, because he conspired with, aided and abetted Defendants Melissa Ann Crane, Debora Baker, Kevin Badskhan, Joshua Kellyconversion of Judge Crane's courtroom into a 18 U.S.C. 1962 [c] RICO enterprise and violated 18 U.S.C. [d] predicate acts in furtherance of Defendant Mark Tress and his alter ego also known as Moishe Tress racketeer activities.

172.    This court has personal Jurisdiction over Defendant Joshua Kelly who is an acting law clerk of Defendant Melissa Ann Crane New York State Supreme Court, County of New York Civil Term, because he conspired with aided and abetted Defendants Baker, Badskhan, Evans, Crane in conversion of judge Crane's courtroom into a 19 U.S.C. 1962 [c] RICO enterprise and violated 18 U.S.C. 196[d] predicate acts in furtherance of Defendant Mark Tress and his alter ego also known as Moishe Tress racketeer activities.

173.    This Court has personal Jurisdiction over Defendant Kam Yuen Principal Motion Clerk Appellate Division First Department, because he conspired with, aided and abetted defendants Susanna Molina Rojas, Emma Lauren Holmes, Victoria Duncan, Melissa Ann Crane, Debora Baker, Kevin Badskhan, Tyler Evans, Joshua Kelly, David Satnick, John Piskora, Loeb & Loeb in violation of 18 U.S.C 1962 [C] In furtherance of Defendants Mark Tress aka Moishe Tress, 1180  President Funding LLC, Harlem Contracting LLC, Steve Zervoudis, Galaxy General Contracting corporation 18 U.S.C 1962[d] predicate acts activities.

174.     This Court has Personal Jurisdiction over Defendant Emma Lauren Holmes Court Attorney Appellate Division First Department because she conspired with, aided and abetted Defendants Susanna Molina Rojas, Victoria Duncan, Kam Yuen , Melissa Ann Crane, Debora Baker, Kevin Badskhan, Tyler Evans, Joshua Kelly, David Satnick, John Piskora, Loeb & Loeb in violation of 18 U.S.C. 1962 [C] in furtherance of Defendants Mark Tress aka Moshe Tress, 1180 President Funding LLC, Harlem Contracting LLC, Steve Zervoudis, Galaxy General Contracting Corporation 18 U.S.C. 1962 [d] predicate acts activities.

175.    This Court has personal jurisdiction over Defendants Victoria Duncan Court Analyst Appellate Division First Department, because she conspired with, aided and abetted Susanna Molina Rojas, Kam Yuen, Emma Lauren Holmes, Melissa Ann Crane, Debora Baker, Kevin Badskhan, Tyler Evans, Joshua Kelly, David Satnick, John Piskora, Loeb & Loeb in violation of 18 U.S.C. 1962[c] in furtherance of Defendants Mark Tress aka Moishe Tress, 1180 President Funding LLC, Harlem Contracting LLC, Steve Zervoudis, Galaxy General Contracting Corporation 18 U.S.C. 1962[d] predicate acts activities.

176.    This Court has personal Jurisdiction over Roberta Ashkin because Ashkenazi has purposefully directed her conduct at this forum with respect to  Mark Tress and his alter ego also known as  Moishe Tress, 1180 President Funding LLC Kenneth Horowitz, David Kriss, Jerrod Feuerstein, Kriss &Feuerstein, David Satnick, John Piskora, Loeb & Loebsewer process service and rigged judicia referee deed auction sale of Plaintiffs Trevor Whittingham and Global Investment Strategies Trust stolen condominiumdevelopment property. In New York referees are frequently  appointed by the courts.

177.    The fees a referee is entitled to for each day spent in the business of the reference, to three hundred and fifty dollars [$350.00 ] unless a different compensation is fixed by the courts or by consents in writing of all parties not in default for failure to appear or pleas. Roberta Ashkin was paid the unheard-of sum of eighty thousand dollars [$80,000].

s

178.    In EXHIBIT DD which Defendants David Satnick, John Piskora, Loeb & Lobe, Harlem Contracting LLC, Mark Tress and his alter ego also known as Moishe Tress appellate brief filed in the New York State Supreme Court Appellate Division First Judicial Department to justified Defendant's Mark Tress aka Moise Tress fraudulent conveyance of Global Investment Strategies Trust condominium development memorialized the exorbitant fee that was paid the Defendant Roberta Ashkin for a five minutes auction for an audience of one Mark Tress and his alter ego also known as Moishe Tress to overlooked the fact that 2201 7th Avenue Realty LLC did not owned the property, and the tile.

179. EXHIBIT DD is an example of Defendants open ended fraud upon the court which continues after more than a dozen years of cover ups, fraud on the courts, obstruction of justice, perjury and subornation of perjury in Plaintiff's Global Investment Strategies Trust name. Defendant also memorialized the fact that although Harlem Contracting LLC does not have title Mark Tress aka Moishe Tress used Plaintiffs property to obtain a $4.1 auction credit in addition to another $24 million dollars in a first mortgage See EXHIBITs J V,V Title Search.  See EXHIBIT N referee deed auction sale winning bid of Defendant Harlem Contracting LLC $400,000, See also EE New York City Department of Finance New York City Register Office where Defendant Mark Tress aka Moishe Tress registered the winning bid as $400,000.

V.

VENUE.

180.  Venue is proper Pursuant to 28 U.S.C 1391 [b][2] because a substantial parts of the events or omission giving rise to Plaintiffs claims occurred within this judicial district. Venue is further proper in this district pursuant to 18 U.S.C. 1965[a] because each defendant is found andor transact his or her affairs in this District given each defendant's participation in the New York State Unified Court System Enterprise as a allege above. First Cause of Action18 U.S.C. 1961[a] Bribery of Public Judicial Official 18 U.S.C. 201.17.

VI.

FIRST CAUSE OF ACTION18 U.S.C 201

Bribery of a Public Official

181.    Plaintiffs realleges all the matters set forth in paragraphs 1 through 180 and incorporated by references herein

182.    Defendant Mark Tress and his alter ego also known as Moishe Tress aided 18 U.S.C.2, and Conspired 18 U.S.C. 371 with his RICO- co- participants Defendants Harlem Contracting LLC, 1180 President Funding LLC, David Satnick John Piskora, Loeb & Loeb, Steve Zervoudis, Galaxy General Contracting Corporation, Kriss & Feuerstein, Kenneth Horowitz,, David Kriss, Jerold Feuerstein , Banco Popular N.A. First American Title Insurance using the wires 18 U.S.C. 1341, mail. 18 U.S.C.1343 in a scheme to defraud Plaintiffs 18 U.S.C. 1346, in violation of honest service 18 U.S.C. 1346, committed the predicate act of bribery, 18 U.S.C 201 [b][1] which is like a wholesale transaction in narcotics, is a secret act.

183.    Both Mark Tress aka Moishe Tress and his RICO co- participants and Defendant Melissa Ann Crane, Debora Baker, Kevin Badskhan, Tyler Evans, Joshua Kelly, Susanna Molina Rojas, Kam Yuen, Veronica Duncan, Emma Lauren Holmeswere the two parties to the bribery which violate the law, just

s

as both parties to the sale of drugs violate the law. The act of bribery, whether foreign or domestic, undermines the practice of good government institutions themselves.

184.  18 U.S.C 201 has two primary subparts :Section 201[b] which criminalizes bribery, and Section 201 [c], which prohibits the payment or receipt of gratuities.172.   The primary differences is that Section 201 [b] requires proof of a quid pro quo, while the gratuities provision does not.

185.   Judicial election political campaign contribution and promises of future employment is something of value given, offered or promised to  Defendant Melissa Ann Crane 18 U.S.C. [2][b] to influence her as a   public judicial official to commit fraud upon the court, obstruct justice, suborn the perjury of Defendants Satnick, Piskora, Loeb & Loeb, by  corruptly eliminating  Defendant 1180 President Funding LLC as a litigant, because 1180 President Funding LLC violated both mail and wire fraud statutes when it render the sewer process of service to prevent Plaintiffs from attending the referee deed auction sales that was rigged by Defendants Mark Tress aka  Moishe Tress, Kenneth Horowitz, David Kriss, Jerold Feuerstein, Kriss &Feuerstein, John Piskora, David Satnick, Loeb & Loeb,  Roberta Ashkin  et al

186.   Defendants Mark Tress aka Moishe and 1180 President Finding LLC also were the two primary defendants    that stole Plaintiffs Condominium   Development. Mark Tress aka   Moishe Tress contaminated Defendant Melissa Ann Crane by bribery to influence an official act. Section 201[b][2] shows that defendants accepted, solicited or agreed to accept anything of value corruptly in return for being influenced in the performance of an official act.

187.   Defendant Mark Tress aka  Moishe Tress knowingly or willfully offered or given Campaign contribution to Defendant Crane for or because of any official act rather than corruptly to influence the official act/. See Section III FRCP 9[b] statements paragraphs--------page----

Defendant David Satnick conspired with, aided and abetted Defendants Loeb  and Loeb,  Mark Tress aka Moishe Tress, Harlem Contracting LLC, 1180 President Funding LLC, Stee Zervoudis, Galaxy General Contracting Corporation, Jerold Feuerstein, David Kriss, Kenneth Horowitz, Kriss and Feuerstein , Banco Popular N.A, First American Title Insurance financial might and political influence committed the worst break of the public trust in our judiciary by bribing Defendants Melissa Ann Crane   with political judicial election campaign finance donations.

188.   Upon information and belief Defendant David Satnick, John Piskora, Loeb & Loeb, David Kriss, Jerold Feuerstein, Kenneth Horowitz, First American Title Insurance Company, Banco Popular N.A and guaranteed promises of employment for Defendants  Debora Baker, Kevin Badskhan, Tyler Evans, Joshua Kelly, Molina Rojas, Kam Yuen, Emma Lauren Holmes, Victoria Duncan, and in doing so harm the community's confidence in our judiciary system in violation of 18 U.S.C. 201[c[[1][A] offering of gratuities which was accepted by their RICO co-participants 18 U.S.C 201[c][1][B],  Defendants Crane, Baker, Badskhan, Evans, Kelly, Molina Rojas, Yuen, Duncan, Holmes.

189.   Defendants Mark Tress aka Moshe Tress,  First American Title  Insurance Company, Banco Popular N.A conspired with 18 U.S.C. 371, aided and abetted 18 U.S.C. 2 the   political influences and financial might of Defendants Loeb & Loeb,  David  Satnick, John Piskora, David Kriss, Jerold Furstein, Kenneth Horowitz,  Kriss & Feuerstein, Mark Tress aka Moishe Tress to commit fraud upon the court, obstruction of justice and perjury  to tip the scale of justice and knock it over in favor of defendant Mark Tress aka Moishe Tress who had stolen Plaintiffs condominium  development project, which has and continue to use as collateral to defraud millions of dollars in questionable mortgages from banks and financial institutions in furtherance of his  Defendant  Mark Tress aka  Moishe Tress RICO activities. See section II

s

nature of the case and section III FRCP 9[b] particularized Defendant First American Title Insurance Defendant Banco Popular N. A

VII.

SECOND CAUSE OF ACTION 18 U.S.C 1962[c]

Racketeering Influence and Corrupt Organization Act Enterprise .

190.    Plaintiff realleges all the matters set forth in paragraph 1 through 189 and incorporates by references herein.

191.    Partnership in crimes poses a greater potentialthreat to society that do individual offenses of Defendant Mark Tress aka Moishe Tress . The defendants as a group made use of Defendant Harlem Contracting LLC as the RICO enterprise to undertake large and more complex violation of RICO predicate acts and strengthen the resolve of associates, capitalize on opportunities to diversify their RICO operation and sometimes cover their tracks more effectively.Group crimes also presents special problems for either criminal prosecution or civil litigation, particularly in proving substantive offenses but not in Whittingham et al vs. Mark Tress aka Moishe Tress et al.

192.    Defendant Harlem Contracting LLC which is the 18 U.S.C 1962[c] enterprise is  a continuing organization in  operation, and Plaintiffsexhibits shows the various units function as a continuing unit in a pattern of racketeering activities 18 U.S.C 1962[b] which are separate and distinct transactions as part of the scheme 18 U.S.C 1346  to defraud Plaintiffs by using their stolen condominium development project property  as collateral to obtain fraudulent  first mortgages and other loans in violation of 18 U.S.C 1344 from various financial institutions., See 18  U.S.C 1962[d].

193.    Defendant  Mark Tress aka Moishe Tress conspired to 18U.S.C 371 by using the mail 18 U.S.C 1343 or Wires 18 U.S.C 1341 in a scheme to defraud 18 U.S.C 1346 Plaintiffs by using Plaintiffs stolen property as collateral to defraud several financial institutions 18 U.S.C 1344 which proceeds he laundered 18 U.S.C. 1956 by  reinvested in Harlem Contracting LLC 18 U.S.C 1962[a] and variousreal estate, hospitality, and nursing homes project by Defendant Mark Tress aka  Moishe Tress using dummy limited liability companies with no tangible assets such as  CedarHoldings LLC, Cedar Health Group a purported investment and asset manager firm with no prior experience in healthcare or behavior health, Lakewood Study Square Inc, Windermere LLC.

194.   The  underlying predicated acts of fraud  of Defendant Mark Tress aka Moishe Tress and co-participants form a continuous and interrelated pattern in a single scheme to defraud Plaintiffs, various financial institutions, New York City Department of Finance, New York State Department of Finance, U.S Internal Revenue Services. Since 2015 Defendant Mark Tress aka Moishe Tress has appeared in the New York City Public Advocate gallery of the worst rouge  landlords  watchlist.

195.   Plaintiffs  Whittingham et al have proven all the elementsof thedefendant'scomplex web in each individual defendant conduct and showing the principal responsibility for the predicate act.  Defendant Mark Tress aka Moishe Tress conspired with, aided and abetted Defendants David Satnick, John Piskora, Loeb & Loeb, David Kriss, Jerold Feuerstein, Kenneth Horowitz, 1180 President FundLLC, Harlem Contracting LLC, Steve Zervoudis, Galaxy General Contracting Corporation, Banco Popular N.A., First American Title Insurance,  Roberta Ashkin, Melissa Ann Crane, Debora Bakar, Kevin Badskhan, Tyler Evans, Joshua Kelly, Susanna Molin Rojas, Kam Yuen, Veronica Duncan, Emma  Lauren Holmes to commit

s

the predicate acts, of mail fraud, wire fraud, scheme to defraud, honest service fraud, bribery, extortion. Complicity does not require proof of agreement, but liability isattached but not in Whittingham et at vs. Mark Tress aka Moishe Tress et al where each of the principal defendants actually commits the predicate acts.

196.    The defendants conducts affected interstate commerce18 U.S.C. 1962 [c] makes it unlawful any person employed by or associated with any enterprise engaged in or the activities of which affect, interstate or foreign commerce,  to conduct or participate directly or indirectly, in the conduct of such enterprise's affair through a pattern of racketeering   activity or collection of unlawful debt.   The Defendant Mark Tress aka Moishe Tress participated in Harlem Contracting LLC "Enterprise " which is defined by example to include "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity".

197.    The New York County Supreme Court Civil Term Part is also a victim of the Defendants RICO activities.18 U.S.C. 1964[4]. Defendant  committed two or more of  the following predicate acts of conspiracy, aiding and   abetting, wire fraud, mail fraud, honest service, scheme to defraud, bribery extortion acts of racketeering, one of which occurred after the effective day of this chapter and the last of which occurred in 2022 within ten years after the commission of a prior act of racketeering activity in 2016. 18 U.S.C 1961 [5]. See Section III FRCP 9[b]  particularized statement.

198.    The breath of the enterprise element is evident is noting the array of decisions involving enterprises that are state and local entities. These includes enterprises that are state and local entities such as police departments, local prosecutors offices, the  office of the governor, state administrative agencies, state legislative offices, and even judicial bodies such as  New York County Criminal Court  Civil Term Part---. For the purpose of bringing a RICO action.

199.   Defendant Mark Tress aka  Moishe Tress acted  or omitted to act intended to defraud Plaintiffs of their $55 million dollar condominium  the result of his act [1] when he consciously desires  that result, whatever the likely hood of that result happening from the conduct; and [2] when  he knows that the result is practically certain follow from his conduct what his desire may be as to the result. See section II nature of the case and section III FRCP 9[b] particular

VIII

THIRD CAUSE OF ACTION  18  U.S.C. 1962 [d] .

Criminal RICO Predicate Acts.

200.    Plaintiffs realleges all the matter set forth in paragraph 1 through  199  and incorporated  by references herein.

201.     Plaintiffs realleges all the matter  set forth  I paragraph 1 through--- and incorporated  by reference herein Section 1962[d] of RICO provides that it "shall be unlawful for any person to conspire to violate any of the provision of Subsection [a][b][or[c] of this section." Defendants violated 1962[d] by conspiring to violate 18 U.S.C. 1962[c].The object of this conspiracy has been and is to conduct or participate in directly or indirectly the conduct of the affairs of New York County Supreme Court Civil Term Part – of the 1962[c] theenterprises describe previously through a pattern of Racketeering activities.

s

202.   Defendant Mark Tress ala Moishe Tress,co- conspirators and enterprise participantsagreed to join the conspiracy, agreed to commit  18 U.S.C 2, aiding and abetting, 18 U.S.C. 371 conspiracy, 18 U.S.C. 1341 wire fraud,  18 U.S.C.1343 mail fraud,  18 U.S.C. 1346 scheme to defraud, 18 U.S. C 1346 honest service, 18 U.S.C. 201 bribery, 18 U.S.C. 1951 Hobbs Act,  18 U.S.C  1956 money laundering, 18 U.S.C 241, 18 U.S.C. 242 criminal civil rights violations, the acts described herein, and knew that these acts were part of a pattern of racketeering activity.

203.     Defendants and their co- conspirators have engaged in numerous overt and predicted fraudulentracketeering acts in furtherance of the conspiracy, including material misrepresentations and omissions designed to defraud Plaintiffs.

204.   The nature of the above-described acts, material misrepresentation and omissions in furtherance of the conspiracy gives rise to the inference that Defendant, co-conspirators and Enterprise participants not only agreed to the objective of an 18 U.S.C. 1962[d] violation of RICO by conspiring to violate 18 U.S.C. 1962[c], but they were aware that their ongoing fraudulent acts have been and are part of an overall pattern of racketeeringactivity.

205.     Defendants knew their actions were part of a patten of racketeering activity and agreed to the commission of those predicate acts to further the scheme described above. The conduct constitute a conspiracy to violate 18 U.S.C. 1962[b] and [c] in violation of  18 U.S.C. 1962[d].Aa a direct and proximate result of Defendants overt acts predicates acts in furtherance of violating 18 U.S.C. 1962 [d] by conspiring to violate 18 U.S.C 1962[c].

206.   Plaintiffs have been and  are continuing to be injured in their business and property as Seth forth more fully above. See Section Sections II and in particular  III FRCP 9[b] particularized statements. Defendant 1180

IX.

FOURTH CAUSE OF ACTION. 18 U.S.C 2 .

Aiding and Abetting

207.     Plaintiffs realleges all the matter set forth in paragraphs 1 through paragraphs 206 and incorporated by references herein.

208.     Aiding and abetting and conspiracy have been regarded as closely allied forms of liability. However, a  conspiracy generally requires an agreement as well as an overt act causing damage. Aiding and abetting does not require any agreement, but rather assistance given to the principal wrongdoer. The principle wrongdoers are Defendants Mark Tress aka Moishe Tress and Melissa Ann Crane.

209.     Defendant Mark Tress aka Moishe Tress and his  RICOco-participantsare members and participated in the affairs of Harlem Contracting LLC/1180 President Funding LLC the RICO18 U.S.C. 1962 [c] enterprise.  They conspired with each other 18 U.S.C.aided and abetted one another   in violation of 18 U.S.C. 2.

210.  Defendants the RICO co-participants 1180 President Funding LLC, Harlem Contracting LLC,  David Satnick John Piskora Loeb & Loeb,  David Kriss, Jerold Feuerstein, KennethHorowitz, Kriss &Feuerstein, Steve Zervoudis, Galaxy General Corporation, First American Title Insurance , Banco Popular N.A. Melissa Ann Crane, Debora Baker, Kevin Badskhan , Tyler Evans, Joshua Kelly,  Susanna Molina Rojas,

s

Kam Yuen, Victoria Duncan, Emma Lauren Holmes  aided  Moishe Tress it by knowingly and substantially participating in the RICO  enterprise in  aiding and abetting Defendant Mark Tress aka Moishe Tress and each other to  commits the following predicate acts 18 U.S.C.  1962[d] conspiracy, 18 U.S.C 1341 wire fraud, 18 U.S.C 1343 mail fraud,  18 U.S.C 1346 scheme to defraud, 18 U.S.C. 1346 honest service, 18 U.S.C. 201 bribery, 18 U.S.C. 1951. Hobbs Act, 18 U.S.C. 241, 18  U.S.C. 242 criminal civil rights violation of Plaintiff's Trevor Whittingham civil rights. See Section II nature of the case and  nature and Section  III FRCP 9[b].

X.

FIFTH CAUSE OF ACTION 18 U.S.C. 1962[b]

Pattern of Racketeering Activities

211.  Plaintiff realleges all the matter set forth in paragraph 1 through paragraphs 210 and incorporated by reference herein.

212.    Defendant Mark Tress aka Moishe  Tress, Harlem Contracting LLC, 1180 President Funding LLC, and their RICO co-participants commit a diverse racketeering act and agreed to participate in the affairs of Harlem Contracting LLC  through a pattern of racketeering activity and as such racketeering acts relates to  the same enterprise Defendant Mark Tress aka Moishe Tress, Harlem Contracting LLC, 1180 President Funding and their co-participants knowingly  agreed would commit a violation of one of the substantive  sections of RICO. There no requirement that the defendant himself committee or agreed to commit the two predicateacts. Rather the defendant and his co-participants intended to further the fraud Harlem Contracting LLC which  completed satisfied all the elements of the substantive criminal offense.

213.    Plaintiffs  need  not  established  that  each  of  the  RICO  co-participants  Defendantsexplicitly agreedwith  every  other  conspirator  to  commit  the  substantive  offense;  it  is  only  required  that  the Defendant know the general nature of the   conspiracy and the conspiracy extends beyond his/her/it individual role. See section II nature of the case and Section III FRCP 9[b] particularized state   See EXHIBITS A,B,C,D,E,F,G,,H,I,J,K,L,M,N,O,P,Q,R,S,T,U,V,W,X,Y,Z,AA,BB,CC,DD,EE,FF,G,HH,II,JJ,KK,LL,MM,NN,OO,PP,Q Q,RR,SS,TT,UU,V,V,WW,XX,YY,ZZ.

XI

SIXTH CAUSE OF ACTION18 U.S.C.1343

Mail Fraud.

214.  Plaintiff realleges all the matter set forth in paragraph 1 through paragraphs 213 and incorporates by reference herein.

215.  Defendants Mark Tress and his alter ego also known as Moishe  Tress used United States postal service mail 18 U.S.C.1343 to conspired with 18 U.S.C 371, aided and abetted 18 U.S.C  2, David Satnick, John Piskora, Loeb & Loeb, David Kriss, Jerold Feuerstein, Kenneth Horowitz, Kriss &Feuerstein,, Roberta Askins, 1180 President Funding LLC, Harlem Contracting LLC decided in a scheme to defraud 18 U.S.C 1346 Plaintiffs  of  their$55-million-dollar  condominium  development1]  the  d  Defendants  devise  or

s

intended to devise a scheme to defraud Plaintiffs or to perform specified fraudulent act the existence of a scheme to defraud. See EXHIBIT M

216.   The RICO co-participants use of the mail for the purpose of executing or attempting to execute the scheme for specified fraudulent act such as to prevent Plaintiffs from participating in the rigged auction of Global Investment Strategies Trust condominium development project by Defendant Roberta Askins.  EXHIBIT I Defendants Steve Zervoudis and Galaxy General Contracting Corporation indemnification of Plaintiffs 2201 7th Avenue Realty LLC. EXHBIT J Plaintiff 2201 7TH Avenue Realty LLC and Trevor Whittingham transfer of deed and title to Global Investment Strategies Trust EXHIBIT J.

217.    The elements are [1] a scheme to defraud, and [2] the mailing of a letter.  Defendants intentionally knowingly participated in the scheme, [and the use of United States post office delivered mails in furtherance of the Scheme. EXHBIT N Referee deed, Exhibit O New York City Department of Finance New York City Register Office registration of the deed of Plaintiffs stolen property by Defendant Mark Tress aka Moishe Tress. EXHIBIT D Project architect report regarding Defendants Steve Zervoudis and Galaxy General Contracting Corporation breach of contract. See EXHBIT C wire transfers. EXHIBIT G termination of Defendants Steve Zervoudis, and Galaxy General Contracting Corporation contract with Plaintiffs.

218.   Defendant Mark Tress and his alter ego also known as Moishe Tress, 1180 President funding LLC, Harlem Contracting LLC,  conspired with 18 U.S.C. 371  and was aided and abetted 18 U.S.C. 2,  by Defendants David Satnick. John Piskora, Loeb & Loeb, David Kriss, Jerold Feuerstein , Kenneth Horowitz, Kriss & Furstein, First American Title Insurance, Banco Popular in a scheme to defraud financial institutions and Plaintiffs 18 U.S.C.1346  to  use the mail  18 U.S.C 1343 to apply for fraudulent first mortgageseven though they did not own a clear title to Plaintiff's Global Investment Strategies Trust stolen condominium development. Project See EXHIBIT V.V Title search.

219.   Defendants  John Piskora, David Satnick, Loeb & Loeb, Harlem Contracting LLC, Mark Tress aka Moishe Tress appeals brief filed in New York State Supreme Court Appellate Division First Judicial Department  EXHIBIT MM, where they brazenly memorialized Mark Tress aka  Moishe Tress fraudulent $28 million dollars first mortgage loan and $4.1 million auction bidding loan. EXHBIT H exaggerated mechanic lien, EXHIBIT I identification, EXHBIT J transfer of title  EXHBIT K May 15, 2017 sanction hearing transcripts, June 12, 2017 Defendants willful violation of Judge Marcy Friedman explicit order to issue Plaintiffs a payout letter EXHBIT L, Memorandum from a United States Postmaster supporting  Plaintiffs veracity that Defendants rendered Sewer process of service to prevent Plaintiffs from attending their rigged auction EXHIBIT M, Referee deed EXHIBIT N, New York City Department of Finance New York City Register Office EXHIBIT O.

220.   Defendants who are the RICO co-participants  used the United States post office as a process server when they mailed the rigged referee deed auction notification to Joseph Raymond Sanchez who was no longer Plaintiffs attorney of record in other to prevented Plaintiffs  participation. See EXHIBIT M memo  from  United States postmaster

221    .Unlike the common law fraud pleadings Plaintiff can plead mail and wire fraud as predicate acts without having to show  their own reliance on the fraud. Plaintiffs need not show, either  as an element of its claims or as a prerequisite to establishing proximate causation, that it relied on the Defendants alleged misrepresentation .

s

222.    The Defendants scheme to defraud should be measured by a non-technical standard that should reflect a reflection of moral uprightness, of fundamental honesty, fair play and right dealings in general and business life of members of society. 18 U.S.C. 1340. Defendants David Satnick, John Piskora, Loeb and Loeb also used the United States mail to file their perjured, spacious, and dilatory affirmation in opposition to Plaintiff motions See EXHIBIT E affirmation in opposition demanding dismissals of Plaintiff appeal EXHIBIT LL appellate brief submitted in the New York State Supreme Court Appellate Division First Judicial Department EXHIBIT MM affirmation opposing leave to appeal in the New York State Court of Appeals EXHIBIT SS.

223.    Plaintiffs New York State Court of Appeals Notice and Affidavit in support of leave to appeal, EXHBIT WW.Defendants Melissa Ann Crane, Debora Baker, Kevin Badskhan, Tyler Evans, Joshua Kelly also used the mail on the day to served Plaintiffs with their fraudulent and frivolous memorandum Decision and order which upon information and belief was drafted by defendants David Satnick, John Piskora, Loeb & Loeb as instructed by Defendants Mark Tress aka Moishe Tress, David Kriss, Jerold Feuerstein, KennethHorowitz, Kriss &Feuerstein.

234.    Defendant Steve Zervoudis, Galaxy General Contracting Corporation, First American Title Insurance also committed mail fraud by utilizing United States post office in mailing their fraudulent exaggerated  mechanic lien against Plaintiffs Trevor Whittingham and Global Investment Strategies Trust.

235.    Upon information and beliefcounsel for both Defendants Zervoudis and Galaxy GeneralContracting  corporation also used the mail to contaminated by extraneous influence New York State Unified Court System judges, Court clerks and law clerks to commit fraud upon the court, obstruction of justice, and subornation of perjury, in other to eliminated this Defendants as litigants, and improperly invoking  res judicata and Collateral estoppell as  a frivolous affirmative defense in light of the fact that Defendants Steve Zervoudis and First American Title Company fraud upon the court triggered Defendant Banco Popular fraudulent foreclosure action against 2201 7TH Avenue Realty LLC which no longer owned the contested property.  See EXHIBITs A,B,C,D,F,G,H,I,J.

236.    Upon Information and  beliefDefendants Mark Tress aka Moishe Tress, 1180  President Funding LLC, Harlem Contracting LLC John  Piskora, David Satnick, Loeb& Loeb,  David Kriss,  Jerold Feuerstein, Kenneth Horowitz, Kriss &Feuerstein, Steve Zervoudis, Galaxy General Contracting Corporation, First American Title Insurance Company , Banco Popular N.A. made use of the United States Post Office to deliver bribes thinly disguised as political campaign donations to New York State Unified Court System judges in a quid pro quo exchange for favorable disposition regardless of the egregious nature of the Defendants fraud upon the court.

237.    Defendants Susanna Molina Rojas, Kam Yuen, Victoria Duncan, Emma Lauren Holmes also made use of the United States post office mail delivery system to commit fraud upon the court, obstruction of justice, surbornation of their co-participants David Satnick and John Piskora. A typical example is their dilatory fraudulent tactics  to reject Plaintiffs  reply brief EXHIBITT RR which was return via United States Post office mail delivery to Plaintiff because it  was a brutal indictment and exposure of Defendants Mark Tress aka Moishe Tress, 1180 President Funding LLC, Harlem Contracting LLC, David Satnick, John Piskora, Loeb & Loeb open ended fraud upon the court. See section II nature of the case  and section III FRCP 9[b] particularized statements.

XII.

34

s

X

Seventh Cause of Action 18 U.S.C. 1341

Wire Fraud.

238.    Plaintiffs realleges all the matter set forth in paragraph 1 through paragraphs 237 and incorporated by references herein.

239.    Wire fraud can involve many different schemes to defraud a person using electronic communications such as telephones, emails, webpages and social media,  radio and television communications.  It also includes  many fraud offenses involving computers and internet The information transmitted can be any writes, signs, signals pictures or sounds use in the scheme to defraud.

240.    Wire fraud occurs when the Defendants  RICO co-participants and Defendant Mark Tress aka Moishe Tress [1] intentionally participates in the scheme to Defraud Plaintiffs of their condominium development project, [2] uses the wires in furtherance of the that scheme. Defendant Mark Tress aka Moishe Tress is a resident of Lakewood Ocean  County New Jersey who made interstate telephone calls to his co-participants.

241.    Plaintiffs have not only established the statutory elements of wire fraud as RICO predicates act that the defendants had a conscious, knowing intent to defraud and that a reasonable prudent person would have been deceived by the defendantsmisrepresentations .

242,    The telephone calls involves Defendant Mark Tress aka Moishe Tress, Steve Zervoudis, Kenneth Horowitz, David Kriss, Jerold Feuerstein, David Satnick, John Piskora, Roberta Ashkin made in furtherance of the scheme to cause Defendant Banco Popular, 1180  President Funding LLC, Mark Tress aka  Moshe Tress, David Kriss, Jerold Feuerstein, Kenneth Horowitz, Kriss & Furstein to initiate a fraudulent foreclosure action against 2201 7th Avenue Realty  LLC .Defendant  Mark Tress aka Moishe Tress, KennethHorowitz , David Kriss, Jerold Furstein, Steve Zervoudis, John Piskora, David Satnick used the wire to conspired with 18 U.S.C. 371, aided and abetted 18 U.S.C. 2 Defendants First American  Title Insurance to file a fraudulent exaggerated Lien EXHIBIT I against Plaintiffs Trevor Whittingham and 2201 7th  Avenue Reality, so that Defendant could use Defendant 1180 President Funding LLC as a straw buyer of  Plaintiff alleged outstanding debt  to  Defendants Steve Zervoudis and Galaxy  General Contracting Corporations.  EXHIBIT

243.    Defendant Mark Tress aka  Moishe Tress   used  telephones and emails 18  U.S.C. 1341 with his co- participants to use Defendants John Piskora, David Satnick, Loeb & Loeb to duped Judge Carol Emead to issue a judicial referee order auction sale of Plaintiff's Global InvestmentStrategies Trust property  EXHIBITS N, O, P, Q, R. S.

244.  Defendants mark Tress aka Moise Tress also used wires  18 U.S.C 1341, to coordinate with Defendants Kenneth Horowitz, David Kriss, Jerold Feuerstein, Steve Zervoudis how he would use Defendant Harlem Contracting LLC to  buy  Plaintiff's Global Investment Trust property stolen by Defendants Steve Zervoudis, Galaxy General Contracting Corporation, 1180 President Funding LLC, Banco Popular N.A, First American Title Insurance Mark Tress aka Moishe Tress.

245.    Defendants Mark Tress aka Moishe Tress, David Satnick, John Piskora, David Kriss, Jerold Feuerstein, Kenneth Horowitz, Roberta Ashkin used the wires conspired 18 U.S.C. 371, aided and

s

abetted 18 U.S.C 2  with each other, aided and abetted 18 U.S.C.2 co-participants  to render a sewer process of service EXHIBIT M upon Joseph Raymond Sanchez 18 U.S.C.1343 see 18 U.S.C 1349 attempted to prevent Plaintiffs from attending Defendant Roberta Ashkin rigged auction of Plaintiffs Trevor Whittingham, and Global Investment Strategies Trust stolen property for the benefits of Defendants Harlem Contracting LLC, Mark Tress aka Moishe Tress 18 U.S. 1341.

246.    Defendants David Satnick, John Piskora, Loeb & Loeb, Harlem Contracting LLC, Mark Tress aka Moishe Tress and their RICO c0-participants  used the wires 18 U.S.C. 1341 to conspired with 18 U.S.C 371 aided and abetted 18 U.S.C. 2 Defendants Kam Yuen, Veronica Duncan, Emma Lauren Holmes, Susanna Molina Rojas  to frustrated Plaintiffs 18 U.S.C 1346 violation of honest service by committing fraud upon the court, obstruction of justice, surbornation of perjury to prevented Plaintiffs from controvertingDefendants David Satnick, John Piskora, Loeb & Loeb, Harlem Contracting LLC, Mark Tress aka Moishe Tress perjured  and spacious appellate brief EXHIBIT MM due to Defendant Satnick and Piskora exposure to the possibility of disbarment for  violation of American Bar Association Model Rule 3.3.

247. The RICO co-participants Defendants Molina Rojas, Yuen, Duncan, Holmes  rejection of Plaintiffs P reply brief which was a very brutal indictment of the co-participants  EXHIBIT RR as time bared was in furtherance of the RICO co- participants  enterprise activities.. Defendant Kam Yuen emails  EXHIBITS PP, Defendant  Victoria Duncan emails  EXHIBIT QQ, Defendant Emma Lauren emails EXHBIT XX. Defendants Mark Tress aka Moishe  Tress, 1180 President Funding LLC, Kenneth Horowitz, David, Kriss, Jerold Feuerstein  used the wire 18 U.S.C.1341 to conspired with 18 U.S.C 371, aided and abetted Defendants Melissa Ann Crane, Debora Baker,  Kevin Badskhan, Tyler Evans, Joshua Kelly to violate 18 U.S.C 1346 honest service fraud statute to remove Defendant 1180 President Funding LLC as a litigant in the state action due to Defendants 18 U.S.C 1343 mail fraud criminal jeopardy in rendering a sewer process of service EXHIBIT M to prevent  Plaintiffs from attending Defendant Robert Ashkin  rigged referee deed auction sale of Global Investment Strategies Trust and Trevor Whittingham the Plaintiffs property .

248.    Defendants John Piskora, David Satnick, Loeb & Loeb, Mark Tress aka Moishe Tress, Harlem Contracting LLC, 1180 President Funding LLC, David Kriss, Jerold Feuerstein, Kenneth Horowitz used the wire 18 U.S.C 1341 to conspired with 18 U.S.C 371, aided and abetted 18 U.S.C 2 Defendants Melissa Ann Crane, Debora Baker, Tyler Evans,. Joshua Kelly to violate 18 U.S.C 1346 honest service by coming fraud upon the court, obstruction of justice, and surbornation of perjury by allowing Defendants David Satnick, John Piskora, Loeb  & Loeb to draft EXHIBIT Z June 1, 2021,  in the name of Defendant Melissa Ann Crane as her fraudulent memorandum decision and order denying Plaintiffs motions. EXHIBITS W, and X.

249.    Defendants Melissa Ann Crane, Debora Baker, Kevin Badskhan, Tyler Evans, Joshua Kelly  used the wires 18 U.S.C. 1341 in violation of 18 U.S.C 1346 honest service and scheme to defraud, conspired with 18 U.S.C 371, aided and abetted 18 U.S.C. 2 Defendants  Susanna Molina Rojas, Kam Yuen,  Veronica Duncan, Emma Lauren Holmes, Mark Tress aka Moishe Tress, Harlem Contracting LLC, David Satnick, John Piskora, Loeb & Loeb to commit fraud not to subjected plaintiffs appeal before a panel .

250.  Instead, Defendants Susanna Molina Rojas, Kam Yuen, Veronica Duncan, Emma Lauren Holmes masquerade and impersonated   New York State Supreme Court Appellate Division First Judicial Department  Justice Hon.  Troy Karen Webber and entered a bogus order EXHIBIT XX denying Plaintiffs the right to file  a reply to brief EXHIBIT RR, surbornation of perjury Defendants appellate spacious and

s

perjured appellate brief EXHIBIT MM which did not controverted Plaintiffs pleading in their EXHIBIT II appeal brief . See EXHIBIT YY New York State Supreme Court Appellate Division First Judicial Department frivolous, fraudulent, unarticulated, silent, postcard, boiler plate memorandum decision and order.

251.  The first department fraudulent order EXHIBIT W,W affirming Defendant's Melissa Ann Crane equally fraudulent order drafted for the court by Defendants Satnick, Piskora, Loeb & Loeb. See sections II nature of the case and FRCP 9[b] particularized statements section III

252. Defendants Mark Tress aka Moishe Tress, 1180 President Funding LLC, Harlem Contracting LLC, Roberta Ashkin, David Kriss, Jerold Feuerstein, Kenneth Horowitz, Kriss &Feuerstein, David Satnick., John Piskora, Loeb & Loeb violated N.Y Real Estate Law to publish in a local newspaper the time, date and place the referee deed auction will take place. Global Investment Strategies Trust stole property is located at 2201 7th Avenue New NY 10027 in Harlem. Plaintiff Trevor  Whittingham resides on West 119 street New York NY 10026 also in Harlem.  Whittingham is a member of the Harlem Chambers of Commerce and  an outstanding prominent member of the community.

253.  The New York Amsterdam News is a must read for Harlemintes.   He also very known by the publishers, editorial staff, marketing and sales, and journalist of the Amsterdam  News The RICO co-participants deliberately refused to publish the auction in the Amsterdam News. Plaintiff as most African Americans in New York dos not read the yellow  rags such as the New York Post, News Day or Daily News, thus Defendants violated from attending the rig both wire and mail fraud by  their deceptive scheme which was to  prevent Plaintiffs from attending the fraudulent auction. See EXHIBIT J

XIII

EIGHTH CAUSE OF ACTION18 U.S.C. 1346

Honest Service Fraud and Scheme to defraud

254.  Plaintiff realleges all the matter set forth in paragraph 1 through paragraphs 253 and incorporated by reference herein.

255.     Upon  information and belief Defendants Mark Tress aka Moishe Tress, David Satnick, John Piskora, Loeb & Loeb, David Kriss, Jerold Feuerstein, Kenneth Horowitz, Kriss &Feuerstein, Steve Zervoudis, Galax General Corporation,  First American  Title Insurance conspired  with 18 U.S.C 371, aided and abetted 18 U.S.C 2 Defendants Melissa Ann Crane in a scheme to violate 18 U.S.C 1346  to commit fraud upon the court, obstruction of justice surbornation of perjury in exchange  monetary bribery thinly disguised a political campaign contribution 18 U.S.C. 201 which is a common practice among  financial institutions, title insurance companies, law firms, real estate developer, general contractors who are major players in New York City real estate industry . EXHBIT Y, EXHBIT WW.

256.    Uponinformation and Belief Defendant Melissa Ann Crane is not an heiress who has inherited millions of dollars or the beneficiary of a trust fund despite her political status as a nepotism [nepo baby] who is the beneficiary of New York insidious 'I owed you political patronage favor bank" which is more corrupt than  the infamous "Tammany Hall of Boss William Magear Tweed era. Judicial campaign for election to the New York  State Supreme Court is very expensive, and the average John  and Jane Doe citizens do not contribute. Judicial candidates rely very heavily  on members of the real estate board, corporate,  financial institutions , contractors, developers and law firm contribution in exchange for favorable rulingsagainst litigants who are not politicallyconnected.

s

257.    Defendant Mark Tress aka  Moishe Tress is an equity partner  of Cedar Health  Holdings a New Jersey purported Asset Management & Private Equity Firm. In April 2022 for example Cedar Health made headlines when  its Louisiana subsidiary Intensive Specialty Hospital made a controversial $10,000 donation to Cook County, IL judicial candidate ShawnTe Raines- Welch, wife of the Illinois House of Representatives Speaker Chris Welch. Raines-Welch was ordered to return the donation, which violated state law banning out-of-state financing of judicial candidates in Illinois.

258.    The year before, Cedar Health received approval from the state to acquire the shuttered Woodlake Hospital in Melrose Park IL and reopened it.Mark Tress aka Moishe Tress has a long and sordid history of duping financial institutions and  18 U.S.C 1344 bank loan frauds. In November 2022 Cedar Health acquired a portfolio of assisting living facilities in South Florida. It paid $ 39 million for one facility, using  million bank loan to finance the deal-97% of the total value which has become a bedrock of Medicaid- Medicare  fraud.

259.   Mark Tress aka Moishe Tress a new investment firm without an established track record in quality healthcare investing Cedar Health's acquisition of Prospect Medical Holdings which shuttered Nix Health System a year  ago after its private equity owner paid itself a $457 million debt-funded dividends raises concerns about assets managers  like Mark Tress aka Moishe Tress that operates in the shadow.

260.   Upon information and beliefDefendant Susanna Molina  Rojas  conspired with 18 U.S.C. 371, aided and abetted 18 U.S.C. 2,  by using the wires 18 U.S.C, 1341  to violate18 U.S.C 1346 which  defines the term scheme or artifice to defraud, as used in the general statute Prohibiting the use of the mails 18 U.S 1343 or wires 18 U.S. 1341   to commit fraud to include the intangible  right of honest service by committing fraud upon the court, obstruction of justice and surbornation of the perjury of Defendants David Satnick, John Piskora,, Loeb & Loeb,  in exchange of promises of future employment 18 U.S.C 201 bribery from Defendants Loeb & Loeb, Kriss &Feuerstein, First American Title Insurance, Banco Popular N.A, Galaxy General Contracting   Corporation in exchange for find in favor of Defendants Harlem Contracting LLC et al. See section II and section III FRCP 9[b] particularized statement.

XIV.

NINETH CAUSE OF ACTION 18  U.S.C. 1951 HOBBS ACT.

Extortion and Bribery.

261.  Plaintiff realleges all the matter set forth in paragraph 1 through paragraphs 260 and incorporate by referencesherein.

262.    Upon  information  and  beliefDefendant  Melissa  Ann  obstructed  interstate  commerce  by conspiring 18 U.S.C 371 and abetting 18 U.S.C 2 in a   scheme  to defraud  Plaintiffs and violation of honest service  18 U.S.C 1346 by using the mail 18 U.S.C 1343  or wire 18 U.S.C 1341   to extort bribes 18 U.S. C 201 thinly disguised as political campaign donations from Defendants Mark Tress aka Moishe Tress, Harlem  Contracting LLC, 1180 President Funding LLC, Steve Zervoudis, Galaxy General Contracting Corporation, David Kriss, Jerold Furstein, Kenneth Horowitz, Kriss & Feuerstein, David Satnick, John Piskora, Loeb & Loeb, First American Title Insurance, Banco Popular N.A in returning    for committing fraud upon the court EXHIBITS , obstruction of justice  and surbornation of perjury.

263.    Upon information and beliefIn exchange of the bribes Defendant Melissa Ann Crane allowed Defendants John Piskora, David Satnick Loeb  & Loeb to draft EXHIBIT Y her fraudulent order denying

s

Plaintiffs motions EXHIBITS W and X. Defendant Crane also contaminated Defendants Molina Rojas, Kam Yuen, Veronica Duncan, Emma Lauren Holmes by extraneous influences to commit their own fraud upon the court . which established the nexus to interstate commerce which in this instant matter is not minimal in view of the fact that the defendants and co-participants conducts were not subtle, it was overwhelming and sufficient to uphold the Hobbs Act violation of the defendants. See section II nature of the case and section III FRCP 9[b] particularized statements.

XV.

TENTH CAUSE OF ACTION 18 U.S.C. 1344

Bank Fraud.

264.    Plaintiffs realleges all the matter set forth in paragraph 1 through paragraphs 263 and incorporated by reference herein.

265.    Defendant Mark Tress and his alter ego also known as Moishe Tress simply use dummy domestic limited liability companies such as Defendants 1180 President Funding LLC and Harlem Contracting LLC t illegally took out more than $60 million of dollars in moneys, funds, first mortgages loans, credits, equities using Plaintiffs stolen condominium development property as collateral by misrepresenting the facts that he owns Plaintiff's Global Investment Strategies Trust property.

266.    Defendants Zervoudis and Galaxyindemnification of Plaintiffs from any alleged outstand debt owed, EXHIBIT J transfer document of 2201 7th Avenue Realty LLC to Global Investment Strategies Trust, EXHIBIT K May 15, 2017 sanction hearing transcripts against Defendants Kenneth Horowitz, Kriss &Feuerstein, 1180 President Funding LLC, Mark Tress aka Moise Tress, EXHIBIT L June 12, 2017 pay out letter order hearing transcripts, EXHIBIT M United States Postal Service Postmaster memo attesting to a sewer process service notification of the referee deed auction, Referee deed auction sale recorded document, Mark Tress aka Moishe Tress registration of Plaintiffs stolen property with the New York City Department of Finance New York City Registered Office.

267.    Defendant David Kriss conspired with 18 U.S.C. 371, aided and abetted 18 U.S.C. 2. Mark Tress aka Moishe Tress, 1180 President Funding LLC, Harlem Contracting LLC, knowingly executed by mail 18 U.S.C. 1343 or wire 18 U.S.C. 1341 ,a devise in 18 U.S.C. 1346 scheme to defraud Plaintiffs and several financial institutions, , or obtain money, funds ,credits, credit, assets,equities and property by false and fraudulent pretense and misrepresentation. 18 U.S.C. 1344, using Plaintiffs stolen property as collateral in a pattern of RICO activities 18 U.S.C. 1961-1964.

268.    Defendant Jerold Feuerstein Conspired with 18 U.S.C. 371, aided and abetted 18 U.S.C. 2Mark Tress aka Moishe Tress, 1180 President Funding LLC, Harlem Contracting LLC, and co-participants knowingly executed by mail 18 U.S.C. 1343 or wire 18 U.S.C 1341 a devise in 18 U.S.C. 1346 scheme to defraud Plaintiffs and several final institutions, or obtain moneys, funds, credits , assets, equities and property by false and fraudulent pretense and misrepresentations 18 U.S.C. 1344, using Plaintiffs stolen property as collateral in a pattern of RICO activities 18 U.S.C 1961-1964.

269.    Defendant Kenneth Horowitz conspired with 18 U.S.C. 371, aided and abetted 18 U.S.C 2, Mark Tress aka Moishe Tress, 1180 President Funding LLC, Harlem Contracting LLC and co-participants knowingly executed by mail 18 U.S.C. 1343 or wire 18 U.S.C. 1341 a devise in 18 U.S.C. 1346 scheme to defraud Plaintiffs and several financial institutions, or obtaining moneys, funds, assets, equities and

s

property 18 U.S.C 1344, using Plaintiffs stolen property as collateral in a pattern of RICO activities 18 U.S.C 1961-1964.

270.   Defendant John Piskora conspired with 18 U.S.C 371, aided and abetted 18 U.S.C. Mark Tress aka Moishe Tress, 1180 President Funding LLC, Harlem Contracting LLC and co-participants knowingly executed by mail 18 U.S.C. 1343, or wire 18 U.S.C. 1341 a devise in 18 U.S.C 1346 scheme to defraud Plaintiffs and several financial institutions, or obtaining moneys, funds, equities, assets,  and property 18 U.S.C. 1344, using Plaintiffs  stolen property as collateral in a pattern of RICO activities 18 U.S.C. 1961-1964.

271.   Defendant David Satnick conspired with 18 U.S.C 371, aided and abetted Defendants Mark Tress aka Moishe Tress, 1180 President Funding LLC, Harlem Contracting LLC and co-participants knowingly executed by mail 18 U.S.C. 1343 or wire 18 U.S.C. 1341 a devise in  18 U.S.C. 1346 a scheme to defraud Plaintiffs and several financial institutions, or obtaining moneys, funds, equities, assets and property 18 U.S.C. 1344 using Plaintiffs property as collateral in a pattern of RICO activities 18 U.S.C. 1961-64.

272.   Defendant Steve Zervoudis  conspired with 18 U.S.C. 371, aided and abetted Defendants Mark Tress aka Moishe Tress, 1180 President Funding LLC, Harlem Contracting LLC and co-participants knowingly, executed by mail 18 U.S.C. 1343 or wire 18 U.S.C. 1341  a devise in 18 U.S.C. 1346 a scheme to defraud Plaintiffs and several financial institution, or obtaining moneys, funds, equities, assets, equities and property 18 U.S.C. 1344 using Plaintiffs property as collateral in a pattern of RICO activities 18 U.S.C. 1961-1964.  See sections 'II nature of the case and section III FRCP 9[b] particularized statements of Plaintiffs complaint.

XVI.

ELEVENTH CAUSE OF ACTION 18 U.S.C. 1956

Money Laundering

273.    Plaintiffs realleges all the matter set forth in paragraph 1   through paragraph 272 and incorporated by reference herein.

274.   Defendant Mark Tress aka Moishe Tress simply put laundered his 18 U.S.C 1344 bank fraud funds from the fraudulent first mortgages and other loans he took using Plaintiffs stolen property as collateral moving them into a prohibited manner.

275.   Specifically,Defendant generates proceeds in the form of money and property, as a result ofcombining  a designated predicate act known as Specified Unlawful Activity [SUA] which is codified in 18 U.S.C. 1956[c][7].Defendant Mark Tress aka Moishe Tress then moves the money, often with the intent to disguise the nature, location,  source, ownership, or control of the funds. Such a movement is known as "concealment money laundering."

276.   The movement can be as simply as handing the money from one party to another party. 18 U.S.C. 1956 [c][4] for the full definition of "financial transaction," which encompasses most forms of transfer, including physical ones.

277.   Defendant also moves the fraudulent first mortgages and other loans and reinvested it in his other questionable  real  estate  and  hospitality  properties  thus  promoting  money  laundering.  See  18  U.S.C

s

1956[a][1], and his objective in the movement of money was to evade taxes, 18 U.S.C. 1956 [a][[1][A][ii] or avoid transactions reporting requirements 18 U.S.C. 1956 [a][1][B][ii].

278. The fraudulent first mortgages and loans are SUA proceeds, and defendant had knowledge that the proceeds are from some type of felony, and  his financial transaction intended to conceal the proceeds or promote an SUA. defendant bid for Plaintiffs stolen condominium development in the rigged auction was $400,000 for a  $55 million dollar project but not a single dime  was deposited  in view of the fact Mark Tress aka Moise Tress  Moishe Tress auction Plaintiffs stolen property to himself and Mark Tress aka Moishe Tress bought the property he stole from Plaintiffs. See EXHIBIT MM Defendants Harlem Contracting LLC John Piskora, David Satnick Loeb & Loeb appellate brief were Defendants memorialized the how and why of Defendant's Mark Tress aka Moishe Tress fraudulent loans. See EXHIBIT N referee deed auction listing $400,000., EXHIBIT O New York State Department of Finance New York City Register office registration of Mark Tress aka Moishe Tress 1180 President Funding LLC [seller] Mark Tress aka Moishe Tress Harlem Contracting LLC [buyer] of Plaintiffsstolenproperty.

279.    Defendant  David  Satnick   wrote  a  fraudulent  memo  to  Judge  Carol  Emead  opposing  the termination of Defendants Banco Popular N.A, First American Title Insurance Company, Steve Zervoudis, Galaxy General Contracting LLC, 1180 President Funding LLC, Mark Tress Aka Moishe Tress fraudulent foreclosure action against Plaintiff  2201 7th Avenue Realty. Plaintiffs attorney Andre Ramon Soile response  basically controverted Defendant David Satnick bald face allegation, and supported Plaintiffs veracity that Defendant Mark Tress aka Moishe Tress did not pay a dime for Plaintiff property at the auction rigged by Defendant Roberta Ashkin, and that Defendant Mark Tress aka Moishe Tress lauder both  the  $4.1  million  dollars  in  auction  credit  and  $24  million-dollar  first  mortgage  taken  against Plaintiffs stolen property.

280.    Defendant David Satnick conspired with 18 U.S.C 371, aided and abetted 18 U.S.C 2, Defendants Mark Tress aka Moishe Tress, Harlem Contracting LLC, 1180 President Funding LLC, John Piskora, Loeb & Loeb, David Kriss, Jerold Feuerstein, Kenneth Horowitz, Kriss & Furstein in a scheme to defraud 18 U.S.C 1346 Plaintiffs, New York City Department of Finance, New York State Department of Finance, U.S Internal Revenue Service's using  the  mail  18  U.S.C.  1343  or  wires  18  U.S.C.  13 41  to  launder  the proceeds 18 U.S.C 1956 of Defendant Mark Tress aka Moishe Tress bank fraud loans 18 U.S.C 1344.

281.    Defendant John Piskora conspired with 18 U.S.C 371, aided and abetted 18 U.S.C 2  Mark Tress aka  Moishe  Tress,  1180  President  Funding  LLC,  Harlem  Contracting  LLC,  David  Satnick,  Loeb  &  Loeb, David Kriss, Jerold Feuerstein, Kenneth Horowitz, Kriss &Feuerstein's  in a scheme to defraud 18 U.S.C 1346 Plaintiffs, New York City Department of Finance, New York State Department of Finance U.S. Internal Revenue Services using the mail 18 U.S.C. 1343, or wire 18 U.S.C. 1341 to launder the proceeds 18 U.S.C. 1956 of Defendant Mark Tress aka Moishe Tress bank fraud loans 18 U.S.C 1344.

282.  Defendant  David Kriss conspired with 18 U.S.C. 371, aided and abetted 18 U.S.C. 2 Mark Tress aka Moishe Tress, 1180 President Funding LLC, Harlem Contracting LLC, David Satnick, John Piskora, Loeb & Loeb, Jerold Furstein, Kenneth Horowitz, Kriss &Feuerstein in a scheme to defraud 18 U.S.C. 1346 Plaintiffs, New York City Department of Finance, New York State Department of Finance, U.S Internal Revenue Services using the mail 18 U.S.C 1343 or wires 18 U.S.C 1341 to launder the proceeds 18 U.S.C 1956 of Defendant Mark Tress aka Moishe Tress bank fraud loans 18 U.S.C. 1344.

283.    Defendant  Jerold  Feuerstein  conspired  with  18  U.S.C.  371,  aided  and  abetted  18  U.S.C.  2, Defendants Mark Tress aka Moishe Tress, 1180 President Funding LLC, Harlem Contracting LLC, David

s

Kriss, Kenneth Horowitz, Kriss &Feuerstein, David Satnick, John Piskora, Loeb & Loeb in a scheme 18 U.S.C. 1346 to defraud Plaintiffs, New York City Department of Finance, New York State Department of Finance, U.S Internal Revenue Services using the mail 18 U.S.C 1343 or wires 18 U.S.C 1341 to launder the proceeds 18 U.S.C 1956 of Defendant Mark Tress aka Moishe Tress bank loans fraud 18 U.S.C. 1344.

284.    Defendant Kenneth Horowitz conspired with 18 U.S.C. 371, aided and abetted 18 U.S.C. 2 Defendants Mark Tress aka Moishe Tress, 1180 President Funding LLC, Harlem Contracting  LLC, David Kriss, Jerold Feuerstein, Kriss &Feuerstein, David Satnick, John Piskora Loeb & Loeb in a scheme to defraud 18 U.S.C 1346 Plaintiffs, New York City Department of Finance, New York State Department of Finance, U.S Internal Revenue Services using the mail 18 U.S.C 1343 or wires 18 U.S.C 1341 to launder the proceeds  m18 U.S.C 1956 of Defendant Mark Tress aka Moishe Tress bank loans fraud 18 U.S.C 1344. See Plaintiffs FRCP 9[b] motion.

XVII

TWELFTH CAUSE OF ACTION 18 U.S.C. 1962[b]

Pattern of Racketeering Activity

285.    Plaintiffs realleges all the matter set forth in paragraph 1 through Paragraphs 284 and incorporated by reference herein.

286.    Defendant Mark Tress and his alter ego also known as Moishe Tress used Defendants 1180 President Funding LLC and Harlem contracting LLC in a pattern of racketeering activity to commit  fraud upon the courts in a scheme to defraud 18 U.S.C. 1346 Plaintiffs, New York City Department of Finance, New York State Department of Finance U.S Internal Revenue service's using the mail 18 U.S.C. 1343, or wires 18 U.S.C 13451 in a  conspiracy 18 U.S.C 271 which was aided and abetted 18 U.S.C 2, by defendants David Kriss, Jerold Feuerstein, Kenneth Horowitz, Kriss & Furstein, David Satnick, John Piskora, Loeb & Loeb, Steve Zervoudis, Galaxy General Contracting Corporation, Banco Popular N.A, First American Title Insurance, Melissa Ann Crane, Debora Baker, Kevin Badskhan, Tyler Evans, Joshua Kelly, Susanna Molina Rojas, Kam Yuen, Veronica Duncan, Emma Lauren Holmes.

287.    Defendant Mark Tress aka Moishe Tress was aided and abetted by his  RICO co-participants to violate 18 U.S.C 1344 bank fraud loans using Plaintiffs stolen condominium property as collateral, and launder the proceeds 18 U.S.C 1956 which he reinvested 18 U.S.C 1962[a] in Harlem Contracting LLC 18 U.S.C 1962[ c] which was the RICO enterprise as defined by Section 1961[4] in a pattern of racketeering activity which violated 18 U.S.C  2, 18 U.S.C 371, 18 U.S.C 1341, 18 U.S.C 1343, 18 U.S.C 1344, 18 U.S.C 1346, 18 U.S.C 1956, 18 U.S.C 241, 18 U.S.C. 242 predicate acts which affected interstate commerce. See Section 1961[5] which defines "pattern of racketeering" as requiring at least two acts of racketeering, one which occurred within ten years ,see  Section 1961[1], see also Section 1961[1][b][d]. See Plaintiffs FRCP 9[b] particularized statements Defendants.

288. The RIC0 co-participants Susanna Molina Rojas, Kam Yuen, Victoria Duncan pattern of Racketeering occurred in  2022-2023. See EXHIBITS AA notice of appeal, BB  Federal Express air bill,  signature of C. Ward an employees of the Court who signed and accepted Plaintiffs notice of appeal  and  his memo  to Lawrence Marks former chief administrative judge New York State Unified Court System regarding Defendants fraud upon the court and obstruction of justice, previously identified as EXHIBIT DD  Unified Court  System Office of Court Administration response,  record on  appeal,  GG certification of the record on appeal by New York County Clerk,  responded with a flyer second notice on appeal,  EXHIBIT II,

s

Plaintiffs appeal brief, KK  Defendant Holmes email,  EXHIBIT LL Defendants Piskora, Satnick, Loeb& Loeb, Harlem Contracting  motion to dismiss Plaintiffs appeal,  EXHIBIT MM defendants appeal brief, EXHIBIT NN Plaintiffs motion for an expansion of time to file a reply brief, OO  summary statement on application for an expedited  service of interim relief, EXHIBIT PP Defendant Kam Yuen Emails, QQ Defendant Victoria  Duncan emails, EXHIBIT XX defendant  Emma Lauren Emails,  EXHIBIT RR Plaintiffs reply brief,   EXHIBIT YY   New York Supreme Court Appellate Division First Judicial Department Memorandum Decision and Order dismissing appeals. See Plaintiffs FRCP 9[b] particularized statements.

289.  Defendants Melissa Ann Crane, Debora Baker, Kevin Badskhan, Tyler Evans, Joshua Kelly pattern of racketeering activities began on the date Defendant  frivolous Memorandum Decision and Order was entered denying Plaintiffs Motions. EXHIBITS Y June 1, 2022, order,  EXHIBITS W Plaintiffs CPLR 5015 and motion to vacate  EXHIBIT N Referee deed auction due to  Defendants David Kriss, Jerold Furstein, Kenneth Horowitz, Kriss &Feuerstein, , David Satnick, John Piskora, Loeb & Loeb, Roberta Ashkin, Steve Zervoudis, Galaxy General Contracting Corporation, Banco Popular, First American Title Insurance See EXHIBIT B contract, C wire transfers, D Spectrum Group Architect  progress report,

290.  The RICO co-participants Defendants Piskora, Satnick, Loeb  & Loeb, Harlem Contracting LLC, Mark Tress aka Moise Tress affirmation in opposition to CPLR  3215 EXHIBIT X default judgement  EXHIBIT E. Defendants David Kriss, Jerold Feuerstein, Kenneth Horowitz, Kriss & Furstein began in--- See EXHIBITS G Termination of contract, H  exaggerated mechanic lien, Defendant Steve Zervoudis and Galaxy General Contracting  Corporation identification, J Transfer of title to Global Investment Strategies Trust, May 15 2017 sanction hearing transcripts, L  June 12, 2017 payout letter .

291.   When order by Judge Friedman to issue Plaintiff 2201 7th Avenue Realty LLC a payout letter, Defendants willfully and knowingly dis obey a judicial order, because they knew Judge Friedman had sandbag them, because she was cognizant of the fraudulent nature of the foreclosure initiated by Defendants Banco Popular N.A, First An=American Title Insurance Company, Steve Zervoudis, Galaxy General Contracting Corporation, Kenneth Horowitz , David Kriss, Jerold Feuerstein, Kriss & Feuerstein who were conspiring with, aiding and abetting Mark Tress aa Moise Tress to defraud Plaintiffs. EXHIBITs K, L hearing transcripts,

292.Instead, Defendant Mark Tress aka Moishe Tress order Defendants David Satnick and John Piskora, to bifurcated their fraudulent foreclosure and terminate the proceedings  after obtaining a fraudulent referee dee auction sale judicial order. EXHIBITs M United States postmaster memorandum supporting the veracity of Plaintiffs claims regarding sewer process service  upon Joseph Sanchez See EXHIBTS S and To prevented them from attending Defendant Roberta Ashkin rigged auction sale, N referee deed, O New York City Department Of Finance New York City Register Office registration of Plaintiffs  stolen property by Defendant Mark Tress aka Moishe Tress, . EXHIBITS S, and T Department Attorney Grievance Committee Appellate Division Second Judicial Department complain, opinion and order against Sanchez suspending his law license.

293.    Defendants John Piskora, David Satnick Loeb & Loeb Pattern of racketeering activities .Defendants Steve Zervoudis and Galaxy General Contracting Corporation f predicate act was committed on th to be flowed with more predicates acts have been memoralizeded byPlaintiffs in their FRCP Rule 9 particularized statements.

294.  The RICO co-participants  defendants  conspired with 18 U.S.C 371, aided and abetted 18 U.S.C 2 Defendants First American Title Insurance to file an exaggerated fraudulent lien and Banco Popular,

s

Mark Tress aka Moishe Tress, 1180 President Funding LLC, Harlem Contracting LLC, Kriss & Feuerstein, David Kriss, Jerold Feuerstein, Kenneth Horowitz, David Satnick, John Piskora ,Loeb & Loeb  a fraudulent foreclosure against Plaintiffs  2201 7th Avenue Realty LLC,   and Trevor Whittingham. It continues with the offering or offer of campaign finance donations to defendant Melissa Ann Crane and promises of future employment opportunities offer to Defendants Debora Baker, Kevin Badskhan, Tyler Evans, Joshua Kelly, Kam Yuen,  Veronica Duncan, Emma en  Holmes, Susanna Molina Rojas.

295.    Defendant Banco Popular N.A. committed it first predicate act  of a pattern of racketeering activity on- day of -   when it filed a bogus foreclosure action against Plaintiff 2201 7th Avenue Realty LLC and Trevor Whittingham. Defendant Banco Popular N.A. It continues with the aiding and abetting 18 U.S.C 2, conspired with 18 U.S.C 371 Defendants Mark Tress aka Moishe, 1180 President Funding LLC, Harlem Contracting LLC,  First American Title Insurance Company, David Kriss, Jerold Furstein, Kenneth Horowitz, Kriss & Feuerstein, David Satnick, John Piskora, Loeb & Loeb using the mails 18 U.S.C. 1343 or wires  18  U.S.C  1341  in  a  scheme  to  defraud  Plaintiffs  b18  U.S.C  1346   of   their condominium development project property.

296.   Defendant First American Title Insurance Company N.A. committed it First  predicate acts of 18 U.S.C 2,  adding and abetting, and conspiring with 18 U.S.C 371,  Defendants Mark Tress aka Moishe Tress, Harlem Contracting LLC, 1180 President Funding LLC, Steve Zervoudis, Galaxy General Contracting Corporation,  Banco  Popular  N.A,  Kriss  &Feuerstein,  Kenneth  Horowitz,  David  Kriss,  Jerold Feuerstein,David Satnick, John Piskora, Loeb & Loeb to file an exaggerated fraudulent mechanic lien against Plaintiff 2201 7thAvenue   Realty LLC  and Trevor Whittingham, and Global Investment Strategies Trust  using the mail 18 U.S.C 1343, or wire 18 U.S.C. 1341 in a scheme to defraud Plaintiffs out of their condominium development project property.

297.  The pattern of RICO activities 18 U.S.C. 1962 [b] continue with promises of future employment opportunity or donations of election campaign contribution to DefendantMelissa  Ann Crane and promises of future employment opportunities for Defendants Susanna Molina Rojas, Kam Yuen, Victoria Duncan, Emma Lauren Holmes, Debora Baker, Kevin Badskhan, Tyler Evans,  Joshua Kelly.

298.  Each of the co-participants predicate acts [crimes] are "related" to  both to each other and to the RICO Enterprise Harlem Contracting LLC as a whole. The defendants were each able to commit the predicate acts solely because of his[hers/its position or involvement in control over the enterprise affairs, or because the offenses related to the activities of the enterprise. See  Plaintiffs  FRCP  9[b] particularized Statements

XVIII

THIRTEENTH  CAUSE  OF ACTION 42 U.S.C 1983, 42 U.S.C 1985.

United States Constitution First Amendment Petition Clause

299.    Plaintiffs  reallege  all  the  matter  set  forth  in  paragraph  1  through  paragraphs  298  and incorporated by reference herein.

s

300.    Defendant Melissa Ann Crane who is a justice of the New York2021,nty Supreme Court Civil Term commercial division was aided and abetted 18 U.S.C 2 and conspired 18 U.S.C 371 using wires 18 U.S.C. 1341 and mail 18 U.S.C 1343 with  Defendants Debora Baker, Kevin Badskhan, Tyler Evans, Joshua Kelly, Mark Tress aka Moishe Tress, David Satnick, John Piskora, Loeb & Loeb violated 18 U.S.C 241, 18 U.S.C 242Plaintiff'sTrevorWhittingham United Constitution First Amendment Petition Clause right access to the court to redress the injury caused by her and her  RICO co-participants by committing fraud upon the court, obstructed justice and suborn the perjury of Defendants Mark Tress aka Moishe Tress, David Satnick, John Piskora, Loeb & Loeb 18 U.S.C 1246 honest service and scheme to defraud who contaminated her by extraneous influences which includes donations and promised of political donations to deny  Plaintiff CPLR 5015  [a][1][2][3][4][5] EXHBIT W, and CPLR 3215 EXHIBIT X motions EXHIBIT Y.

301.    Defendants John Piskora, David Satanic, Lobe & Loeb  drafted EXHIBIT Y for Defendant Melissa Ann Craneher  fraudulent memorandum decision and order entered on June 1, 2021, in her name denying Plaintiffs motions EXHIBIT s W and X in furtherance of the RICO co- participants enterprise 18 U.S.C. 1962 [c] pattern 18  U.S,C .1962[b] of  activities 18 U.S.C. 1962 [d[. Defendants John Piskora, David Satnick, Loeb & Loeb in furtherance of her co-participants RICO activities to defraud Plaintiffs of their condominium development project. See EXHIBIT E.

302.    Defendant Debora Baker  who is Defendant Melissa Ann Crane Chief Law Clerk conspired with, aided and abetted Defendants Melissa Ann Crane, Kevin Badskhan, Tyler Evans, Joshua Kelly to violate Plaintiff Trevor 2021,tingham United States Constitution First Amendment Petition Clause 18 U.S.C 241, 18 U.S.C 242 right access to the court to  redress the injury caused by her andher RICO co-participants activities  fraud upon the court ,obstruction of justice, and suborn the perjury of Defendants Mark Tress aka Moishe Tress, David Satnick, John Piskora, Loeb & Loeb who contaminated her  by extraneous influences with the promises of future employment in violation of 18 U.S.C 1346 honest service and scheme to defraud fraud  to  violate 18 U.S.2, and  18 U.S.C. 371 to deny Plaintiffs CPLR 5015[a][1][2][3][4][5]   and CPLR 3215  motions with a fraudulent memorandum decision and order drafted  and entered on June 1, 2021 in the name of Defendant Melissa Ann Crane  by Defendants David Satnick, John Piskora, Loeb & Loeb.

303.    Defendant Kevin Badskhan who is the commercial division law clerk for  Defendant Melissa Ann Crane, conspired with 18 U.S.C 371, aided and abetted 18 U.S.C.2  using the wires 18 U.S.C 1341 and mails 18 U.S.C 1343 with  Defendants Debora Baker, Tyler Evans, Joshua Kelly, Melissa Ann Crane , Mark Tress aka Moishe Tress, David Satnick, John Piskora, Loeb & Loeb violated Plaintiff Trevor Whittingham United States Constitution First Amendment Petition Clause 18 U.S.C. 241, 18 U.S.C 242 right access to the court to redress the injury caused his and  his RICO co-participants activities fraud upon the court, obstruction of justice and  stubborn the perjury of Defendants Mark Tress aka Moishe Tress, David Satnick, John Piskora, Loeb & Loeb who contaminated him by extraneous influences with the promise of future employment in violation of 18 U.S.C. 1346 honest service and scheme to defraud fraud  in aiding Defendant Melissa Ann Crane to deny Plaintiffs CPLR 5015 [a][1][2][3][4][5]  and CPLR 3215 motions with a fraudulent memorandum decision and order drafted and entered on June 1, 2021 in the name of Defendant Melissa Ann Crane  EXHIBIT Y , by Defendants David Satnick, John Piskora, Loeb & Loeb.

304.    Defendant Tyler Evans is the principal law clerk of Defendant Melissa Ann Crane, conspired with 18 U.S.C 371, aided and abetted 18 U.S.C 2   using the wires 18 U.S.C 1341 and Mails 18 U.S.C 1343 Defendants Debora Baker, Kevin Badskhan, Joshua Kelly, Melissa Ann Crane, David Satnick, John Piskora,

s

Mark Tress aka Moishe Tress violated  Plaintiff Trevor Whittingham United States Constitution First Amendment Petition Clause right 18 U.S.C. 241, 18 U.S.C 242 access to the court to redress the injury caused by his and his RICO co-participants  activities fraud upon the court, obstruction of justice and suborn the perjury of Mark Tress aka Moishe Tress, David Satnick, John Piskora, Loeb & Loeb who contaminated him by extraneous influences with the promise of future employment in violation of 18 U.S.C 1346 honest Service and Scheme to defraud in aiding Defendant Melissa Ann Crane to deny Plaintiffs CPLR 5015 [a][1][2][3][4][5] EXHIBIT W and CPLR 3215 EXHIBIT X motions with a fraudulent memorandum decision and order  drafted and entered in the name of Defendant Melissa Ann Crane on June 1, 2021 by Defendants David Satnick, John Piskora, Loeb & Loeb.

305.    DefendantJoshua Kelly is an assistant law clerk of Defendant Melissa Ann Crane, conspired with 18 U.S.C 371, aided and abetted 18 U.S.C  using the wires 18 U.S.C 1341 and Mails 18 U.S.C 1343 with Defendants Debora Baker, Kevin Badskhan, Tyler Evans, Melissa Ann Crane, Mark Tress aka Mo2021, Tress, David Satnick, John Piskora to violate Plaintiff Trevor Whittingham United States Constitution First Amendment Petition Clause right 18 U.S.C. 241, 18 U.S.C 242 access to the court to redress the injury caused by his and his RICO co-participants activities  fraud upon the court, obstruction of justice suborn the perjury of Defendants Mark Tress aka Moishe Tress, David Satnick, John Piskora, Loeb & Loeb who contaminated him by extraneous influences with the promise of future employment in violation of 18 U.S.C 1346 honest service and scheme to defraud in aiding  Defendant Melissa Ann Crane to deny Plaintiffs CPLR 5015[a][1][2][3][4][5] EXHIBIT W and CPLR 3215 EXHIBIT X motions with a fraudulent memorandum decision and order drafted and entered EXHIBIT Y in the name of Defendant Melissa Ann Crane on June 1, 2021 by Defendants David Satnick, John Piskora, Loeb & Loeb. See EXHIBIT E.

306.   Defendant  David Kriss  using the wires 18 U.S.C 1341 and mail 18 U.S. C. 1343 contaminated by extraneous influence, conspire 18 U.S.C. 371 with, aided and abetted 18 U.S.C. 2 Defendants Melissa Ann Crane, Debora Baker, Kevin Badskhan, Tyler Evans, Joshua Kelly to violated  Plaintiff Trevor Whittingham  United States Constitution First Amendment Petition Clause rights 18 U.S.C. 241, 18 U.S.C 242 to petition the courts to redress the  injury cause by him and  his RICO co- participants in violation of 18 U.S.C 201 offering  or promise to  offer bribes to Defendant Melissa Ann Crane thinly disguised as political campaign donations and promises of future employment opportunities for Defendants Debora Baker, Kevin Badskhan, Tyler Evans, Joshua Kelly in exchange for removing Defendant 1180 President Funding LLC, Mark Tress aka Moishe Tress who were represented by Defendant Kriss &Feuerstein in Plaintiffs CPLR 5015[a][1][2][3][4][5]  motion EXHIBIT W due to their fraud upon the court 18 U.S.C 1346 scheme to defraud Plaintiffs by rendering a sewer process of service EXHIBIT M to prevent Plaintiffs from participating in  Defendant Roberta Ashkin rigged referee deed auction EXHIBIT N.

307. Defendantsdefaulted on EXHIBIT X by not responding to EXHIBIT W.  As a result, Defendants  Steve Zervoudis, Galaxy General Contracting Corporation, Banco Popular N.A, First American Title Insurance company culpability was not litigated by Plaintiffs. See EXHIBITS G, H, I ,J,K,L,M, N,O, P.

308.    Defendant Jerold Kriss using the wires 18 U.S.C 1341 and mail 18 U.S.C 1343 contaminated by extraneous influence, conspire 18 U.S.C. 371 with aided and abetted 18 U.S.C 2 Defendants Melissa Ann Crane, Debora Baker, Kevin Badskhan, Tyler Evans, Joshua Kelly to violated Plaintiff Trevor Whittingham United States Constitution First Amendment Petition Clause rights 18 U.S.C 241, 18 U.S.C.242 to petition the courts to redress the injury cause by him and his RICO co-participants in violation of 18 U.S.C 201 offering  or promised to offer  bribes to Defendant Melissa Ann Crane thinly disguised as political campaign donations and promises  of future employment opportunities for Defendants Debora Baker,

s

Kevin Badskhan, Tyler Evans, Joshua Kelly in exchange for removing Defendants 1180 President Funding LLC, Mark Tress aka Moishe Tress as litigants who were represented by Defendant Kriss &Feuerstein in Plaintiffs CPLR 5015 [a][1][3][4][5] motion EXHIBIT W due to their fraud upon the court 18 U.S.C 1346 scheme to defraud Plaintiffs by rendering a sewer process of service, to prevent Plaintiffs from participating in Defendant Roberta Ashkin rigged referee deed auction.

309.    Defendants defaulted by not responding to. Plaintiffs motion and as result, Defendants Steve Zervoudis, Galaxy General Contracting Corporation, Banco Popular N.A., First American Title Insurance Company are also culpable as RICO co-participants.

310.    Defendant Kenneth Horowitz using the wires 18 U.S.C 1341, and mail 18 U.S.C 1343 contaminated by extraneous influences, conspire 18 U.S.C 371, aided and abetted 18 U.S.C 2 Defendants Melissa Ann Crane, Debora Baker, Kevin Badskhan, Tyler Evans, Joshua Kelly to violate Plaintiff Trevor Whittingham United States Constitution First Amendment Petition Clause rights 18 U.S.C 241, 18 U.S.C 242 to petition the courts to redress the injury caused by him and his RICO co-participants in violation of 18 U.S.C 201 offering or offer bribes to Defendant Melissa Ann Crane thinly disguised as political campaign donations and promises of future employment opportunities for Defendants Debora Baker, Kevin Badskhan, Tyler Evans, Joshua Kelly in exchange for removing Defendants 1180 President Funding LLC, Mark Tress aka Moishe Tress as litigants, who were represented by Defendant Kriss &Feuerstein in Plaintiffs CPLR 5015[a][1][2][3][4][5] motion due to their fraud upon the court 18 U.S.C 1346 scheme to defraud Plaintiffs by rendering a sewer process of service EXHIBIT M to prevent Plaintiffs from participating in Defendant Roberta Ashkin rigged Referee deed auction EXHIBIT N.

311.    Defendants defaulted on EXHIBI X by not responding to EXHIBIT W. As a result, Defendants Steve Zervoudis, Galaxy General Contracting Corporation, Banco Popular N.A., First American Title Insurance Company culpability was not fully litigated by Plaintiffs. See EXHIBITS G,H.I,I,J,K,L,M,N,O, P, Y.

312.    Defendant Susanna Molina Rojas Clerk of the Court Appellate Division First Department conspired with 18 U.S.C 371, aided and abetted 18 U.S,.C 2, using wires 18 U.S.C 1341 and mail 18 U.S.C 1343 with Defendants Kam Yuen, Veronica Duncan, Emma Lauren Holmes, David Satnick, John Piskora, Loeb & Loeb, Mark Tress aka Moishe Tress, Harlem Contracting LLC to violated Plaintiff Trevor Whittingham United States Constitution First Amendment Petition Clause rights 18 U.S.C 241, 18 U.S.C 242 to petition the courts to redress the injury caused by she and her RICO co-participants including 18 U.S.C 201 bribery of future employment in exchange for committing fraud upon the court, obstruction of justice, suborning perjury of the Defendants by fraudulent concealing and not subjecting Plaintiff appeal before a New York State Supreme Court Appellate Division First Judicial Department panel and masquerading and impersonating appellate justice see 18 U.S.C. 1346,

313.    Defendant Kam Yuen principal motion clerk Appellate Division First Judicial Department conspired with 18 U.S.C 371, aided and abetted 18 U.S.C 2, using wires 18 U.S.C 1341, and mail 18 U.S.C 1343 with Defendants Susanna Molina Rojas, Veronica Duncan, Emma Lauren Holmes, David Satnick, John Piskora, Loeb & Loeb, Mark Tress aka Moishe Tress, Harlem Contracting LLC to violated Plaintiff Trevor Whittingham United States Constitution First Amendment Petition Clause rights 18 U.S.C 241, 18 U.S.C 242 to petition the courts to redress the injury caused by him and his RICO co-participants 18 U.S.C 201 including bribery of future employment in exchange for committing fraud upon the court, obstruction of justice suborning perjury of the Defendants, by fraudulently concealing and not subjecting Plaintiffs appeal before a New York State Supreme Court Appellate Division First Judicial Department panel , and masquerading and impersonating appellate justices.

s

314.    Defendant Emma Lauren Holmes court attorney Appellate Division First Judicial Department conspired with 18 U.S.C 371, aided and abetted 18 U.S.C 2, using wires 18 U.S.C 1341 and mail 18 U.S.C 1343 with Defendants Susanna Molina Rojas, Kam Yuen, Veronica Duncan, David Satnick, John Piskora, Loeb & Loeb, Mark Tress aka Moishe Tress, Harlem Contracting LLC to violated Plaintiff Trevor Whittingham United States Constitution First Amendment Petition Clause rights 18 U.S.C 241, 18 U.S.C 242 to petition the courts to redress the injury she  and her RICO co-participants caused including 18 U.S.C 201 bribery of future employment opportunities in exchange  for committing fraud upon the court, obstruction of justice, suborning the perjury of Defendants by fraudulently concealing and not subjecting Plaintiffs appeal before a New York State Supreme Court Appellate Division First Judicial Department panel, and  masquerading and impersonating appellate

315.    Defendant Veronica Duncan Court analyst Appellate Division First Department conspired with 18 U.S.C 371, aided and abetted 18 U.S.C 2,  using wires 18 U.S.C 1341 and mail 18 U.S.C. 1343 with Defendants Susanna Molina Rojas, Kam Yuen, Emma Lauren Holmes, David Satnick, John Piskora, Loeb & Loeb, Mark Tress aka Moishe Tress, Harlem Contracting LLC to violated Plaintiff Trevor Whittingham United States Constitution First Amendment Petition Clause rights 18 U.S.C 241, 18 U.S.C 242 to petition the courts to redress the injuries she and her RICO co-participants caused including  18 U.S.C 201   in exchange  bribery of future employment opportunities in exchange for committing fraud upon the court, obstruction of justice suborning the perjury of Defendants  and fraudulently concealing and not subjecting Plaintiffs appeal before a New York State Supreme Court Appellate Division First Judicial Department Panel, and masquerading and impersonating appellate

XIX

FOURTEENTH CAUSE OF ACTION  42 U.S.C. 1983,  42 U.S.C 1985

United States Constitution Fourteenth Amendment Due Process Clause.

316.    Plaintiffs realleges all the matter set forth in paragraph 1 through paragraphs 315 and incorporated by reference herein.

317.    Defendants Mark  Tress aka Moishe Tress, Roberta Ashkins, David Kriss, Jerold Feuerstein, Kenneth Horowitz, Steve Zervoudis, David Satnick, John Piskora,  Melissa Ann Crane, Debora Baker, Kevin Badshkan, Tyler Evans,  Joshua Kelly, Susanna Molina Rojas, Kam Yuen, Veronica Duncan, Emma Lauren Holmes starting in  May 15,2016 conspired with 18 U.S.C 371, aided and abetted each other 18 U.S.C 2, using the wires 18 U.S.C 1341 and mail 18 U.S.C 1343 violated  Plaintiff  Trevor Whittingham 18 U.S.C 241, 18 U.S.C. 242 United States Constitution First Amendment rights to petition the courts to redress the  injuries of  the  co-participants RICO enterprise Harlem Contracting LLC 18 U.S.C  1346 to deprived Plaintiffs of their condominium development project property without due process in violation of Plaintiff Trevor Whittingham United States Constitution Due Process Clause.

318.    Defendants Steve Zervoudis, Galaxy General Contracting Harlem Contracting Corporation and First American Title Insurance filed a fraudulent exaggerated Mechanic Lien against Plaintiffs, and caused Defendants Banco Popular N.A, Mark Tress aka Moishe Tress, Harlem Contracting LLC, 1180 President Funding, Kris &Feuerstein, David Kriss, Jerold Feuerstein, David Satnick, John Piskora, Loeb & Loeb to initiated a fraudulent foreclosure actions against Plaintiffs Trevor Whittingham, 2201 7th Avenue Realty LLC in violation of Plaintiffs United State Constitution Fourteenth Amendment  Substantive and Procedural Due Process  Clause to deprived Plaintiffs of  their condominium development project 18 U.S.C 1346.

s

319.    Defendant Mark Tress aka Moishe Tress used Plaintiff  property on more than five separate occasions in violation of 18 U.S.C 1344 bank fraud  to dupe several financial institutions  to obtain more than $60 million dollars first mortgages which he reinvested 18 U.S.C. 1962[a] in Harlem Contracting LLC and  numerous  dummy limited liability companies in a RICO patterns 18 U.S.C 1962[b] in furtheranceof his 18 U.S.C 1962[c] enterprise co-participants to commit more than two criminal RICO predicate acts. 18 U.S.C 1962[d].Defendants Roberta Ashkin, Mark Tress aka Moishe Tress, 1180 President Funding LLC, Harlem Contracting LLC, David Satnick, John Piskora, Loeb & Loeb, David Kriss, Jerold Feuerstein, KennethHorowitz to render a sewer process of service EXHIBIT M to prevent Plaintiffs  from attending Defendant Roberta Ashkin rigged  auction  of  Plaintiff  Global;  Investment  Strategies  Trust  stolen condominium, project property.

320.    Defendants Melissa Ann Crane, Debora Baker, Kevin Badskhan, Tyler  Evans, Joshua Kelly conspired with aided and abetted David Kriss, Jerold Feuerstein, Kenneth Horowitz, Kris &Feuerstein, Mark Tress aka Moishe Tress,, Loeb & Loeb, David Satnick, John Piskora,  to eliminate 1180 President Funding as a litigant in Plaintiffs EXHIBIT W and EXHIBIT X due to the Defendants David Kriss et al and their RICO co-participants 18 U. S C. 1343 criminal jeopardy by using the mail to render a sewer process of service EXHIBIT M, to prevent Plaintiffs from attending Defendant  Roberta Ashkin rigged auction on Plaintiff Global Investment Strategies Trust and Trevor Whittingham stolen condominium development project property See EXHIBITs Y, WW.

321.    Defendants David Satnick, John Piskora, Loeb & Loeb, Mark Tress aka Moishe Tress, 1180 President Funding LLC, Harlem Contracting LLC  contaminated by extraneous influences using wires 18 U.S.C 1341 and mail 18 U.S.C 1343 , conspired 18 U.S. 371, aided and abetted 18 U.S.C. 2, Susanna Molina Rojas, Kam Yuen, Veronica Duncan, Emma  Lauren Holmes  to violated Plaintiff Trevor Whittingham United States Constitution  Amendment First Amendments 18 U.S.C. 241, 18 U.S.C 242 rights to petition New York State Supreme Court Appellate Division First Judicial Department to redress DefendantsMelissa Ann Crane, Debora Baker, Kevin Badskhan, Tyler Evans, Joshua Kelly and their RICO co-participants fraud upon the court, obstruction of justice, and suborning the Defendants perjury . See 18 U.S.C 1346.

322.    Defendants Molina Rojas, Kam Yuen, Veronica Duncan,  Emma Lauren Holmes fraudulently concealed, and  did not subjected Plaintiffs appeal  before a First Department appellate panel, s.Instead, Defendants masqueraded and impersonated New York State Supreme Court Appellate Division First Judicial Department  justices , and issue a fraudulent, unarticulated, frivolous, silent, boiler plate postcard  memorandum decision and order.

XX

FIFTEENTH CAUSE OF ACTION 42 U.S.C 1983, 42 U,S,.C. 1985

United States Constitution Fourteenth Amendment Equal Protection Clause.

Plaintiff Trevor Whittingham realleges  all the matter set forth in paragraph 1 through paragraphs 322 and incorporated by reference herein.

323.  Plaintiff Trevor Whittingham is an African- American Jamaican dissent. Defendants Mark Tress and his alter ego also known as Moishe,  Hassidic  Jew, Melissa Ann Crane, David Kriss, Jerold Feuerstein, Kenneth Horowitz, Debora Baker, Kevin Badskhan  David Satnick, Roberta Ashkin are Ashkenazi Jews.

s

Tyler Evans, Joshua Kelly, Susanna Molina Rojas, John Piskora, Steve Zervoudis are Caucasians. Kam Yuen is Asian. Veronica Duncan and Emma Lauren Holmes race and ethnicity are unknown.

324.  Plaintiff Trevor Whittingham is almost destitute and 74 years old with Social Security benefits s his only source of income while Defendant Mark Tress and his alter ego also known  as Moishe Tress is a multimillionaire who has unjustly enriched himself by using Plaintiffs  stolen condominium project property is schemes 18 U.S.C 1346 using the mail 18 U.S.C 1343 and wires 18  U.S.C 1341 as collateral to dupe several financial institutions 18 U.S.C 1344 in obtaining more than $60 million dollars in fraudulent first mortgages, loans and credit which he laundered 18  U.S.C 1956 and reinvested 18 U.S.C 1962[a] in a pattern of racketeering activities 18 U.S.C 1962[b] in an enterprise 18 U.S.C 1962[c] which activities 18 U.S.C 1962 [d] affects interstate commerce.

325.    Defendants David Kriss, JeroldFeuerstein, Kenneth Horowitz, Kriss &Feuerstein, David Satnick, John Piskora, Loeb & Loeb, Steve Zervoudis, Galaxy General Contracting Corporation, Roberta Ashkin, Banco Popular, First American Title Insurance RICO co-  participants conspired with 18 U.S.C 371, aided and abetted 18 U.S.C2 Defendant Mark Tress aka Moishe Tress and violated 18 U.S.C 201 to contaminated by extraneous influence Defendants Melissa Ann Crane, Debora Baker, Kevin Badskhan, Tyler Evans, Joshua Kelly, Susanna Molina Rojas, Kam Yuen, Veronica Duncan, Emma Lauren Holmes to violate Plaintiff Trevor Whittingham United States Constitution First Amendment Petition Clause rights committed  fraud upon the court, obstruction of justice, and suborning perjury, and circle the wagon to protect Defendant Mark Tress aka Moishe  Tress penal interest, liberty, and financial liability in violation of Plaintiff Trevor Whittingham United States Constitution  Fourteenth Amendment Equal Protection Claus and  equal justice for all.

326.    Upon  information and belief New York State Unified Court  system has a long standing  a tradition not  to subject African American pro se litigants pleadings for review on fact and law on the merit. It makes no difference whether it is a criminal or civil matter. Prosecutors and big law firm misconduct   are generally overlooked. American Bar Association Model Rule 3.3 is irrelevant. Trial transcripts and court records are not important. Newy created facts which bold face lies that dehored certified court records advance by prosecutors and litigators is an accepted norm.

327.  The RICO co-  participants intended  to discriminate and did discriminated against Plaintiff Trevor Whittingham. Racism, bigotry and xenophobia played a central role in this matter. Had it been the shoe was in another foot, and  Trevor Whittingham a black man  is the perpetrator of the RICO enterprise predicate acts and  Defendant Mark Tress aka Moishe Tress an Hassidic Jew the victim, New York State Unified Court System would not have violated Defendant Mark Tress aka Moishe Tress first amendment rights to petition the courts to render his injuries, nor would have the defendants committed fraud upon the court, obstruct justice or suborn perjury to protect Trevor Whittingham.

XXI.

SIXTEENTH CAUSE OF ACTION NEW YORK STATE PENDENT CLAIM.

Common Law Fraud.

Plaintiffs realleges all the matter set forth in paragraph 1 through paragraphs 327 and incorporated by reference herein.

s

328.   A party has a cause of action for common law fraud when [1] representation of fact was made; [2] the representation was material and the person relied on the representation;[3] the person making the representation knew of its falsity, and [4] the injured party suffered as a result of the reliance of such false representations.

329.   Defendant Banco Popular N.A violated its fiduciary responsibility owed to Plaintiffs and falsely represent that iwi would provide honest services to protect Plaintiffs financial interest  but instead participated in the RICO co-participants scheme to defraud Plaintiffs by initiating a fraudulent foreclosureaction Defendant

330.   First America Title Insuranceviolated its fiduciary responsibility owed to plaintiffs and represent that it would provide honest service to protect Plaintiffs financial interest but instead conspired with, aided and abetted Defendants Steve Zervoudis, Galaxy, General Contracting Corporation, Banco Popular N.A, Mark Tress aka Moishe Tress, 1180 President Funding LLC, Harlem Contracting LLC using the mail and wire in a scheme to defraud Plaintiffs  by filing a fraudulent exaggerated mechanic lien See EXHIBITs I and J.

331.   Defendants Steve Zervoudis and Galaxy General Contracting Corporation  violated their fiduciary responsibility owed to Plaintiffs, but instead breached its contract with plaintiffs to provide a completed turnkey condominium development project on time but was  12  months behind schedule.

332.   Although Defendants Steve Zervoudis and Galaxy General Contracting Corporation received a monthly wire transfer payment from Plaintiffs as their General Contractor  for more than $9.8 million dollars, and it  was  Defendant Steve Zervoudis responsibility to pay his sub-contractors and vendors, he failed to do so.

333.   In retaliation for it contracts termination, Defendants Steve Zervoudis and Galaxy General Contracting Corporation conspired  with, aided and abetted First America Title Insurance Company in filing a fraudulent exaggerated  mechanic lien  and  for Defendant Banco Popular N.A to initiate a fraudulent foreclosure action against Plaintiffs EXHBITs I and J.

334.   Defendants David Kriss, Jerold Feuerstein, Kenneth Horowitz, Kriss &Feuerstein, 1180 President Funding LLC, Mark Tress aka  Moishe Tress willfully disobey  Judge Marcia Friedman judicial order to issue Plaintiffs Trevor Whittingham  and 2201 7th Avenue Realty  LLC with a payout letter. Plaintiffs relied on Defendants  false representation that they would obey Judge Friedman order, but instead of complying Defendants David Satnick, John Piskora, Loeb & Loeb, Mark Tress aka Moishe Tress, Harlem Contracting LLC bifurcated the fraudulent foreclosure action before Judge Friedman ran to Hon. Carol Emead J.S.C. New York County Supreme Court Civil Term Commercial Division, and gas lighted her to enter a judicial sale order for a referee deed auction of Plaintiffs Trevor Whittingham and Global Investment Strategies Trust stolen property.

335.   Defendant Roberta Ashkin, David Kriss, Jerold Feuerstein, John Piskora, David Satnick are as attorneys admitted and registered to practice law are officers of the court. Plaintiffs relied on the false representation on their oath taken, but instead violated American Bar Association Model Rule 3.3. Defendants willfully and knowingly with intent to defraud Plaintiffs used the mail and wires, aided and abetted and conspired with Defendants Mark Tress aka Moishe Tress, Harlem Contracting LLC, 1180 President Funding LLC to render a sewer process service upon Joseph Raymond Sanchez whom they knew was no longer Plaintiffs attorney of record, and has shut down his law office, without leaving a forwarding address, to prevent Plaintiffs participation in Defendant Roberta Askins rig auction sale of

s

Plaintiffs property. Defendants also filed fraudulent, perjured and spacious pleadings in furtherance of the RICO co-participants activities.

336.   Defendants Mark Tress aka Moishe Tress, and Harlem Contracting LLC are cognizant of the fact that they did not have title to Plaintiffs Trevor Whittingham and Global Investment Strategies Trust property. Plaintiffs relied on the false representation made by Defendant Mark Tress aka Moishe Tress not to use Plaintiffs property as collateral to commit first mortgages bank fraud. Instead of using the wires and mail Defendant Mark Tress conspired with and was aided and abetted by the RICO co-participants to defraud more than $60 million dollars from various financial institutions using Plaintiffs property as collateral. Defendant Mark Tress aka Moishe Tress cynically bleed out every single dime of equity from Plaintiffs stolen $55 million dollars property, then abandoned Plaintiffs property to decay and rot without plowing a single dime from his stolen $60 million dollars bank fraud to complete the project.

337.   Defendants Melissa Ann Crane, Debora Baker, Kevin Badskhan, Tyler Evans, Joshua Kelly, Susanna Molina Rojas, Kam Yuen, Veronica Duncan, Emma Lauren Holmes violated the honest service statute, and schemed to defraud plaintiffs by committing fraud upon the court, obstruction of justice, suborn the RICO co-participants in violating Plaintiff United States Constitution First Amendment  Petition Clause rights. Plaintiffs relied on these Defendants as independent neutral arbiter of fact and law, and adjudication on the merit in their capacity of New York State Unified Court System judicial officers, but instead violated their oath of office and became willful co-participants in a RICO enterprise.

XXII

SEVENTEETH CAUSE OF ACTION NEW YORK PENDENT CLAIM.

Fraudulent Conversion

338.   Plaintiffs realleges all the matter set forth in paragraphs 1 through paragraphs 337 and incorporated by reference herein.

339.   A party has cause of action for conversion when [1] the Plaintiff has an exclusive right of possession;[2] into which the defendant; [3] intentionally; [4] interferes with that right. Plaintiffs above had a right of possession of their condominium development project property. No money was owed to Steve Zervoudis and  Galaxy  General  Contracting  Corporation  who  were  in  breach  of  contract. Defendant Steve Zervoudis and Galaxy General Contracting Corporation were 12 months behind schedule when Plaintiffs terminated their contract.

340.   Defendant   Steve Zervoudis and Galaxy General   Contracting  Corporation eventually indemnifiedPlaintiffs after causing irreparable damages by conspiring, and aiding abetting Defendants First American Title Insurance Company to file a fraudulent exaggerated mechanic lien,  Banco Popular N.A, Mark Tress aka Moishe Tress 1180 President Funding LLC  to initiated and equally fraudulent foreclosure,  against Plaintiffs

341.   Defendants David Kriss, Jerold Feuerstein, Kenneth Horowitz, Kriss & Feuerstein, David Satnick, John Piskora, Loeb & Loeb conspired with aided and abetted Defendant Mark Tress aka Moishe Tress, Harlem Contracting to fraudulently in the fraudulent conversion of Plaintiffs property, even though they were cognizant of the fact that 2201 7th Avenue Realty LLC was no longer the legal bona fide owner, and that the deed was registered with the New York City Department of Finance New York City Register

s

Office in the name of Global Investment Strategies Trust, they were more interested in their legal fees than upholding the law in violation of 18 U.S.C 1346 honest service in a scheme to defraud Plaintiffs. See EXHIBITs I and J.

342.    Defendants Melissa Ann Crane, Debora Baker, Kevin Badskhan, Tyler Evans, Joshua Kelly, Susanna Molina Rojas, Kam Yuen, Victoria Duncan Emma Holmes, regardless of the fact they have incontrovertible proof which are the exhibits annexed here in and are in the New York State Unified Court System court files and record, decided to become members  and co-participants oof the Defendants RICO enterprise in violation of both honest service and scheme to defraud statues obstructed justice, and committed fraudupon the court in a scheme to prevent the disgorgement of the proceeds of  Defendant Mark Tress aka Moise Tress bank frauds and maintaining his conversion  in perpetuity.

XXIII

Declaratory Judgement.

343.    Plaintiffs realleges  all the matter set forth in Paragraph 1 throughParagraphs 342 and incorporated by reference herein.

345.    Plaintiff seeks a declaratory judgement  to resolve questions  concerning  respective rights, obligations and duties of Plaintiffs and Defendants an actual case of justiciable controversy exist between Plaintiff and Defendants concerning the RICO co-participantsactivities Plaintiffprays that this court: Declared that the Defendant Harlem Contracting LLC Is an 18 U.S.C. 1962[c]  RICO enterprise, and that the co-participants invested in it or maintain an interest in it 18 U.S.C 1962[a].

346.    That the co-participants have engaged in a pattern of RICO activities, 18 U.S.C 1962[b] by committing two or more predicate acts, of aiding and abetting, conspiracy, mail fraud, wire fraud, honest service fraud, scheme to defraud, bank fraud, money laundering, bribery, extortion, criminal violation of Plaintiff Trevor Whittingham civil rights, violation of United States Constitution First Amendment Petition Claus, United States Constitution Fourteenth Amendment Due Process and Equal Protection Clause, New York Common law fraud and conversionwhich deprived Plaintiffs of their stolen condominium project property.

347.    The issuance of a  declaratory judgement relief by this court will terminate some of the existing controversy between parties and will provide certainty to the parties with respect their rights and obligations under  United States Constitution and Federal Rules of Civil Procedure.

348.    By reasons of the forgoing Plaintiffs are entitle to declaratory judgement establishing the rights and obligations of the parties and the extent of Plaintiffs entitlement to 18 U.S.C 1964 [c] compensatory and punitive monetary judgement paid in connection with the RICO co-participants activities. Plaintiff therefore request a declaratory judgement that they are entitle to an expeditious discovery and evidentiary hearing and a jury trial,

349. Order the Defendants,  their officers, agents and employees to refrain from engaging in any of the predicate acts forming the basis of the pattern of RICO activities described here in.

XXIV.

s

## Prayer for Injunctive Relief.

350.    WHEREFORE, award Plaintiffs such preliminary injunctive and ancillary relief as may be necessary to avert the likelihood of the Defendants constitution of their open ended RICO activities of fraud upon the courts, obstruction of justice, perjury, surbornation of perjury, denial of access to the courts to petition for redress of injuries during the pendency of this action to presser the possibility of an effective final relief including but not limited to temporary and preliminary injunctions,

351.    and ORDERR.Enter baring Defendant Mark Tress  and his alter ego also known as Moishe Tress, Harlem Contracting LLC, 1180 President Funding LLC and his other dummy limited liability corporation from flipping Plaintiffs property to himself and others.

352.    Enter and order barring Defendant Mark Tress aka Moishe Tress from using Plaintiffs property as collateral I n his bank fraud schemes.

353.    Enter an order directing Defendants Steve Zervoudis, Galaxy General Contracting Corporation, Harlem Contracting LLC, 1180 President Funding LLC, Mark Tress aka Moishe Tress, Banco Popular N.A, First American Title Insurance to restore Plaintiffs condominium  development project  to its former original glory and splendor using the same high quality materials paid for by Plaintiff, before Defendant Mark Tress aka Moishe Tress abandoned Plaintiffs Property in a state of despair and cynically allowed it to decay after he used it as collateral to defraud $60 million dollars in loans, line of credit, and mortgages from various financial institutions.

355.    Enter an order directing Mark Tress aka Moishe Tress to deposit $60 million in surety bond or cash  with the court which represents the amount of monies he has derive from his bank fraud. Enter an order for the Defendants RICO co-participants to file a responsive expeditious answer, and to impose severe sanctions for any unreasonable dilatory tactics which they used in the New York State Unified Court System to obstruct justice and fraud upon the court.

356.    Enter an order  for the imposition of sanctions against any Defendant or their attorney who violates American Bar Association vaunted Model Rule 3.3 which Defendants David Satnick,  John Piskora, Loeb & Loeb, David Kriss, Jerold Feuerstein, Kenneth Horowitz, Kriss &Feuerstein  did with imp unity before Hon. Marcy Friedman resulting in  a sanction hearing against Kenneth Horowitz, Kriss &Feuerstein, 1180 President Funding LLC i.e.  Mark Tress aka Moishe Tress. Defendants David Satnick, John Piskora, Loeb & Loeb, Harlem Contracting LLC i.e., Mark Tress aka Moishe Tress continue their perjury before Hon. Carol Emead J.S.C, Defendant Melissa Ann  J.S.C New York County Supreme Court, and New York State Supreme Court Appellate Division First Judicial Department by filing fraudulent perjured and spacious pleadings ridden with a plethora of bald face lies, which dehored certified court records and evidence

357. . Enter an order appointing pro bono counsel to  represent Plaintiff Trevor Whittingham who is a 74 year old African- American on Social Security fixed income. The drafter of the complaint is not registered nor admitted to practice law in New York for personal, professional reasons including racism, bigotry, xenophobia, and his private attorney general anti- public judiciary corruption and prosecutorial misconduct  and his dissident political activities, and as such he is in no position to represent Plaintiffs '

358.    Award such relief  reliefs as the court finds it necessary to redress Plaintiffs injury which was proximately cause by the RICO co-participants activities from violations of  United States Constitution,

s

Federal Rules of Criminal Procedure United States Codes Annotated Title 18XIV.Compensatory and Punitive Damages.

359.   Plaintiff are demanding  compensatory $55 million dollars in treble damages from  Mark Tress and his  alterego known as Moishe Tress., and  $500 million dollars in punitive damages. Plaintiff demands  in compensatory  $30 million dollars in treble damages and $60 million dollars in punitive damages from Defendant Banco Popular.

360.  Plaintiffs demands in  Compensatory $30 million dollars in treble damages and $ 60 million in punitive  damages from Defendant First American   Title Insurance Company Plaintiffs Demand in Compensatory Damages $30 million dollars treble damages and $ 60 million dollars in punitive damages From Defendants Steve Zervoudis and  Galaxy General Contracting Corporation. Plaintiffsdemand in compensatory $25 million dollars  in treble damages and $50 million dollars from each individual Defendants David Kriss, JeroldFeuerstein, Kenneth Horowitz, Kriss &Feuerstein Plaintiff'sdemand compensatory $ 25 million dollars in treble damages and $30 Million dollars in punitive damages from Defendant Melissa Ann Crane.

361.  Plaintiffs demand in compensatory $25 million dollars in treble damages and  $30 million dollars in punitive damages from Defendant Susanna Molina Rojas. Plaintiff's demand in compensatory  $10 million dollars in treble damages and  $20 million  dollars in punitive damages each and individually From  Defendants Debora Baker, Kevin Badskhan, Tyler Evans, Kam Yuen, Veronica Duncan, Emma Lauren Holmes.

xxv

Jury Trial Demanded.

362.  Plaintiffs hereby demands a trial by jury on all claims triable

XXVI

Certification and Closing..

363.   Under  Federal Rule of Civil Procedure 11, by signing below, I Trevor Whittingham certify to the best of my knowledge, information, and belief that this complaint:[a] is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needless increased the cause of litigation.

364.   The Defendants believes in their  delusion of grandeur that they are above the law, and have both celestial immunity form their gods and absolute judicial immunity to pervert justice by corrupting the judicial process, and should not be held accountable for their criminal actions because they are the masters and mistress of the universe and prince and princesses of the city, [b], it is supported by law, and  fact, including documentary evidence supporting the veracity of plaintiffs claim which are incontrovertible  proof Defendants cannot controvert,[c]  the  factual contentions have evidentiary support, if specifically, so identified, will likely have evidentiary support after a reasonable opportune it for further investigation  or discovery, and it is a non-frivolous argument for extending or modifying, or reversing existing RICO and civil rights statutes and law.

s

365.    Plaintiffs' complaint otherwise complies with the requirements of the Federal Rules of Civil Procedure Rule 11.Plaintiff Trevor Whittingham agree to provide the Clerk's office with any change of his address where case-related papers may be served. I  understand that my failure to keep a current address on file with the Court Clerk office may result in dismissals.

Dated : July 10,  2023.

New York New York.                              Respectfully submitted,

------------------------------------------------------------------------x

Trevor Whittingham pro se.

Apartment Number 2A.

132 West 119 Street.

New York New York 10026.

Telephone Number 201-737-5962.

Email address: thephoenix.tw@gmail.com.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK.

---------------------------------------------------------x     Company Docket Number:

Trevor Whittingham et al                                    JURY TRIAL DEMANDED,

                        Plaintiffs                18 U.SC 1961-64  Civil RICO &.

            vs,                                     42 U.S.C 1983, 42 U.S.C 1985.

Mark Tress aka Moishe Tress,                          Constitution Tort.

Defendants.      Index to the Appendix Exhibits.

---------------------------------------------------------x

## INDEX TO THE APPENDICES [EXHIBITS].

1.   Exhibit  A , Defendant   Banco Popular N.A. construction loanagreement with Plaintiff Trevor Whittingham and 2201 7th Avenue Realty LLC  dated on.. pages 2,7, 12,18,32,34, of Plaintiffs complaint.

2.   EXHIBIT Plaintiffs Trevor Whittingham and 2201 7th Avenue Realty LLC construction contract with Defendants Steve Zervoudis, and Galaxy   General Contracting Corporation dated onn 3,5,6,7,11,32,33,34,Pages—of Plaintiff's complaint.

3.   EXHIBIT C,  Plaintiffs Trevor Whittingham, 2201 7th Avenue Realty LLC  wire money transfer to Defendants Steve Zervoudis, and Galaxy General Contracting Corporation- pages3,4,5,6,7,11,18, 20, 32, 33, of Plaintiffs complaint.

4.   EXHIBIT D,  Plaintiffs condominium development project architect Spectrum Group project reporting attesting to  the veracity of their claims that Galaxy General Contracting LLC  and Steve Zervoudis was 12 months behind schedule to completed Plaintiffs condominium development project on pages  3,4,5,6,7,  11,18,20,32,33, 34,of Plaintiffs complaint.

5.   EXHIBIT E, Defendant John Piskora, David Satnick, Loeb  & Loeb, Harlem Contracting LLC affirmation opposing Plaintiffs CPLR 5501 [a], [1][][3[4][5] And CPLR 3215 motions dated on pages 3,5,.6, 7,11,12, 18,32,34  of Plaintiffs complaint.

6.   EXHIBIT F,architecture rendering   photograph of Plaintiffs condominium development project property pages 3.,5,6,7,9,11,20, 32, 34, of plaintiffs complaint

7.   EXHIBIT G , Plaintiffs termination of Defendants Steve Zervoudis, and Galaxy General corporation as their general contractor breach of contracts with Plaintiffs due to 12 months behind  schedule for the completion of a turnkey condominium construction project  -on pages 3,5,6.,7, 11,18,20,32, 33, 34, of Plaintiffs complaint.

8.   EXHIBIT H, First American Title Insurance company fraudulent exaggerated mechanical lien against Plaintiffs Trevor Whittingham, and 2201 7th Avenue Realty LLC which was responsible for

DefendantBanco Popular N.A. decision to initiated a fraudulent bogusforeclosure action against Plaintiffs for nonpayment of Defendants Steve Zervoudis, and Galaxy General Contracting Corporation and their sub-contractors and vendors dated PAGES 3.,6, 7, 11, 12,18,20,32,33,34, of Plaintiffs complaint.

9.   EXHIBIT I, Defendant Steve Zervoudis and Galaxy General Contracting Corporation

10. indemnification of Plaintiffs, after the fact of Defendant First American Title Insurance fraudulent exaggerated mechanic lien, and Banco Popular N.A. fraudulent foreclosure against Plaintiffs on 3, 4,5,6, 8,11, 12, 14, 15,18 ,19, 32, 33, of Plaintiff complaint.

11. EXHIBIT J, Plaintiffs Trevor Whittingham memorandum transferring Title of his and 2201 7th Avenue Realty LLC condominium development project property to Trevor Whittingham personal Trust Global Investment Strategist Trust  on pages 3, 4,5,6,7, 8 ,11,13,14,15,17, 18,19,27,34,37, of Plaintiffs complaint.

12. EXHIBIT K,    May 15, 2017,transcripts hearing before Judge Marcia Friedman contemplation whether to impose sanctions against Defendants Kenneth Horowitz, Kriss &Feuerstein, 1180 President Funding LLC i.e.  Mark Tress aka Moishe Tress for their fraud upon  the Bouth committed in her presence on pages 3,4 5, 6,7 ,17, 18, 19,32, 33, of plaintiffs complaint

13. EXHBIT L, June 12, 2017  hearing transcripts before Judge Friedman regarding Defendants Kenneth Horowitz, David Kriss, Jerold Feuerstein, Kris &Feuerstein LLP, 1180 President Funding LLC i.e. Mark Tress aka Moishe Tress, David Satnick, John Piskora, Loeb & Loeb, Harlem Contracting LLC i.e., Mark Tress aka Moishe Tress carnival; dog &ponyfreak show regarding their willful disobedience of her order directing Defendants to issue Plaintiffs  Trevor Whittingham, & 2201 7TH Avenue Realty LLLC with a pay out letter, after Defendant Banco Popular on its own motion decided to withdraw its fraudulent  foreclosure and Defendant Steve Zervoudis, and Galaxy General Contracting Corporation identified Plaintiffs from First American Title Insurance Company exaggerated fraudulent mechanics lien 0n pages 3, 4,5,6 , 7,17,19,32 of plaintiffs complaint

14. EXHIBIT M, Christopher Disti United States postmaster whose post office station services Joseph Raymond Sanchez law office  former address memorandum dated June 21, 2017 that every mail going to 295 Northern BoulevardGreat Neck New York Ste. 301 was return to sender since the end of 2014 was return to sender due to the fact Sanchez did not leave a forwarding address, after he shut down his office due to his suspension by Washington State Attorney Grievance committee, which was almost two years after Defendants render a sewer process of service notification to prevent Plaintiffs from attending Defendant Roberta  Ashkin riged auction of Plaintiffs stolen property on pages 3, 4, 5, 6,7,13, 14,16, 17, 19,32, 33, 36,of plaintiff complaint

15.  EXHIBIT N,  Defendant Roberta Ashkin February 8, 2016, informed acknowledgement referee deed auction of Plaintiffs Trevor Whittingham and Global Investment Strategies Trust stolen property, pages 3, 4, 5, 6, 7,13, 14, 19,27, 32,333,35, of Plaintiffs  complaints.

16.  EXHIBIT O, Defendant Mark Tress , and 1180 President Funding  LLC and his alter ego  also Known as Moishe Tress, and Harlem Contracting LLC registration of Plaintiffs  Trevor Whittingham, and Global Investment Strategies Trust stolen property with New York City Department of Finance Office of the City Register winning bid of $400,00 thousand dollars despite the fact that Mark

Tress aka Moishe Tress used Plaintiffs stolen property as collateral to commit bank fraud and obtain $4.1 million dollars auction bid line of credit loans dated February 5, 2016. On pages 3,4,5,6,7,14,18,19,32,33,35,

17. EXHIBIT P, Defendants David Satnick, John Piskora, Loeb & Loeb, Harlem Contracting LLC i.e. Mark Tress aka Moishe Tress memo to Carol Emead J.S.C New York County Supreme Court Civil Term Commercial Division opposing Defendants Steve Zervoudis, Galaxy General Contracting Corporation, Banco Popular, First American Title Insurance Company, David Kriss, Jerold Feuerstein, Kenneth Horowitz, Kriss &Feuerstein, 1180 President Funding LLC , i.e. Mark Tress aka Moishe Tress voluntary termination of the RICO co- participants fraudulent foreclosure action against Plaintiffs Trevor Whittingham and 2201 7th Avenue Realty dated June 2, 2017. Pages 3.4, 5,6,, 19, 32, 35, of Plaintiff complaints.

18. EXHIBIT Q, Plaintiffs attorney Andre Ramon Soile memo to Carol Emead J.C.C dated June 2, 2017 controverting Defendant David Satnick fraudulent memoaddressing the fact that Mark Tress , 1180 President Funding LLC, his alter ego also known as Moishe Tress i.e., Harlem contracting LLC are one and the same person who stole Plaintiffs property for auction riged by Defendant Roberta Ashkin who place the winning the winning bid of $400,000 for a $55 million dollars property which in essence Mark Tress aka Moishe Tress did not spend a dime. How could he when he was the alleged owner of Plaintiffs property and at the same time the buyer of the stolen property. 3,4,5,6,19,32, of plaintiffs complaint

19. EXHIBIT R, Joseph Raymond Sanchez order of suspension pages 3,5,35,

20. EXHIBIT S, Plaintiff complaint Appellate Division Second Department complaint against Joseph Sanchez pages 3,4,5,15,32, 35, of Plaintiffs complaint.

21. EXHIBIT T, New York State Supreme Court Appellate Division Second Judicial Department attorney grievance committee opinion and order against Andre Ramon Soile on page 5, 15, 32,of Plaintiffs complaint.

22. EXHBIT U Mark F. Dewan Deputy Clerk of the Court Appellate Vision Second Judicial Department response on Soile page 15,17, 32,of Plaintiffs complaints.

23. EXH BIT V Plaintiff complaint against Andre Ramon Soile on page 15,17, of Plaintiffs complaint

24. EXHIBIT W, Plaintiffs CPLR 5501 [a][1]2][3][4][5] motion to vacated Defendant Robert Ashkin who was bribed with $80,000 by Defendants to rig the auction sale of Plaintiffs stolen property on pages 5, 13, 15, 16,17,32, 36, ,of Plaintiffs complaint.

25. EXHIBIT X, Plaintiffs CPLR 3215 default judgement motion against Defendants David Satnick, John Piskora, Loeb & Loeb LLP, Harlem Contracting LLC, Mark Tress aka Moishe Tress, 1180 President Funding LLC, David Kriss, Jerold Feuerstein, Kenneth Horowitz, Kriss &Feuerstein who took seven moths to file answer, or did not file one, and did not file a motion for an expansion of time to file answer because they could not contaminated Judge Marcy Friedman by extraneous influences to commit fraud upon the court, and obstruction of justice or subornation of perjury. Defendants filed their dilatory serious and perjured answer after their success in judges shopping, and the motions assigned to their own handpick judge Defendant Melissa Ann Crane on page 5,,15,16,32,36 ,37, of Plaintiffs complaint.

26. EXHIBIT Y, Defendant Melissa Ann Crane Memorandum Decision and order denying Plaintiffs motion, which was drafted By Defendants John Piskora, David Satnick, Loeb & Loeb, Harlem Contracting LLC i.e., Mark Tress aka Moishe Tress in Defendants Melissa Ann Crane name on June 1, 2021, on page 16, 17, 18 ,32, Plaintiff's complaint.

27. EXHIBIT Z, Plaintiffs June 14, 2021, Notice of Appeal filed in the New York County Supreme Court Civil Term Court Clerk office 60 Centre Street New York New York 10013 on pages 16,17,32,36,

28. EXHIBIT AA. Plaintiffs June 14, 2021,notarized affidavit of service annexed to their notice of appeal which controverted and debunked Defendants David Satnick, John Piskora, Loeb & Loeb, Harlem Contracting LLC i.e., Mark Tress aka Moishe Tress bold face lies that their notice of appeal was untimely on page 16, 17,32 of Plaintiffs complaint.

29. EXHIBIT BB, Federal Express Air Bill June 15, 2021, incontrovertible proof supporting Plaintiffs veracity that their notice of appeal was timely on pages 16,17, 32, of Plaintiffs complain.

30. EXHIBIT CC which the signature and name C. Ward of the New York County Supreme Court Civil Term Court Clerk office employee who on June 15, 2021, signed and took service of Plaintiffs Federal Express package containingtheir notice of appeal on pages 16, 32, of plaintiffs complain.

31. EXHIBIT DD, Plaintiffs memorandum dated- addressed to Lawrence Mark former Chief Administrative Judge New York State Unified Court System demanding clarification as to the requirement exempting pro se litigant from E-filing. It does strain incredulity to a breaking point, and not even the proverbial village idiot who is a moron would believe New York County Supreme Court Civil Term Clerk's office employees oxymoron bold face lies that pro-se litigants must E-File their pleadings and notices. This is one of the patterns of the RICO-co participants obstruction of justice and fraud upon the court to prevent Plaintiffs from taken and perfecting their appeal on pages 17, 27, 32, of Plaintiffs complain.

32. EXHIBIT EE, New York State Unified Court System Office of Court Administration response to Plaintiffs demand for clarification of pro se litigant exemption from E-filing on pages,17,27,32, of Plaintiffs complaint.

33. EXHIBIT FF, Rider of Plaintiffs Record of Appeal which was certified by New York County Clerk on pages 17, 32, of Plaintiffs complaint.

34. EXHIBIT GG, New York County Clerk certification of Plaintiffs Record on appeal on page-32 of Plaintiffs complain.

35. EXHIBIT HH, is an example of New York County Supreme Court Civil Term Clerk Office employees mendacity, unethical misconduct working in concert with the RICO co-participants disingenuous efforts to prevent Plaintiffs from taking and perfecting their appeal. Trevor Whittingham is a lay person proceeding pro se. At first he was lied to that their was no record on file of the reassignment of their motions to Defendant Melissa Ann Crane upon the retirement of Judge Friedman, then lied to, that he must execute another notice of appeal in an attempt to procedurally time bar his appeal. EXHIBIT HH is plaintiffs second notice of appeal which was certified with their record on appeal on page 32 of Plaintiffs complaints.

36. EXHIBIT II, Plaintiffs  record on appeal and  brief dated filed in the New York State Supreme Court Appellate Division First Judicial Department which was hand deliver to Defendant Kam Yuen Principal Motion Clerk  on page 32,of Plaintiffs complain.

37. EXHIBIT JJ,  Record on Appeal consisted of  EXHIBIT A  to  EXHIBITS HH.

38. EXHIBIT KK,  Defendant Emma Lauren Holmes Appellate Division First Department Court Attorney emails regarding the scheduling of plaintiffs appeal brief, defendants answer, and plaintiffs reply brief dated April 20, 2022, on page 32,of Plaintiffs complain. This court should take a special judicial notice of the fact that at no time did Defendants request an expansion of time to file their answer. Defendants and their RICO co-participants  shop for a term where the panel  would include two African- Americans Hon. Dianne Renwick and Hon Troy Karen Webber to give the false appearance of impartiality and lack of racial discrimination, even though both Justices Renwick and Webber did not see, or  read the pleadings, or  render a decision, because plaintiffs appeal was not subjected before any panel. Defendants Susanna Molina Rojas, Kam Yuen, Veronica Duncan, Emma Lauren Holmes simply forged the names of five First Department Justices on the fraudulent, frivolous, unarticulated, silent, post card, boiler plate memorandum decision and order affirming Defendant Melissa Ann Crane June 1, 2021 Order EXHIBIT Y  drafted in her name by Defendants, John Piskora, David Satnick, Loeb & Loeb, Harlem Contracting LLC, i.e. Mark Tress aka Moishe Tress in furtherance of the RICO co-participants pattern of predicate acts activities on pages 18, 32 of plaintiffs complaint

39. EXHIBIT LL, Defendants John Piskora, David Satnick, Loeb & Loeb, Harlem Contracting LLC i.e., Mark Tress aka Moishe Tress spacious and perjured motion  and  affirmation in opposition dated April 20,2022,disingenuously demanding dismissal of Plaintiffs appeal as time bar, simply because they could not controvert plaintiffs pleadings on fact and law.  Defendants  have not produce single evidence as an incontrovertible proof to controvert plaintiffs factual allegations, instead what they have done was the filing of self-serving pleadings riddle  with a plethora of bold face lies which became newly created alternative facts inline with the RICO co-participants activities on page18,32  of Plaintiffs complain.

40. EXHIBIT MM, Defendants John Piskora, David Satnick, Loeb & Loeb, Harlem Contracting LLCC, i.e., Mark Tress aka Moishe Tress dilatory, spacious and perjured appellate brief [answer] on page 32,34 ,36, of Plaintiff's complaint.

41. EXHIBIT NN, Plaintiffs motion, affidavit in support, and affidavit of service dated on  requesting an expansion of time to file  a reply brief. It was rejected by Defendant Kam Yuen who demanded that plaintiffs must use the court standard boiler plate form on page 18, 32,of Plaintiffs complaint.

42. EXHIBIT OO,   New York State Supreme Court Appellate Division First Judicial Department Summary Statement on Application For Expedited Service of an Interim relief. Although Plaintiffs were granted an  expansion of time to file a reply brief, it was illusory. Compare the timing of EXHIBIT MM Defendants appellate brief  and EXHIBIT KK Defendant Emma Lauren Holmes scheduling order  with the date Plaintiff filed their brief EXHIBIT II, you will notice the unethical misconduct of Defendants Susanna Molina Rojas, Kam Yuen, Veronica Duncan, Emma Lauren Holmes disingenuous accommodation of Defendants John Piskora, David Satnick, Loeb & Loeb, Harlem Contracting LLCi.e., Mark  Tress aka Moishe Tress. Plaintiffs appeal was originally schedule for the June- July Term, the Defendants entered  a bogus  order in the name of  Justice Troy Karen

Webber rescheduling the appeal to the September 2022 Term, because the Defendants were procedurally time bar to file answer which they did not do for the June- July Term on page 32, Plaintiffs complain.

43. EXHIBIT PP, Defendant Kam Yuen Emails  dated on which was in sum, a dark  comedy of error. Plaintiffs followed Kam Yuen  Order. See EXHIBIT NN, but he decided to stage a Kabuki theater by finding nonexistingphony defects in the filing of  EXHIBIT NN  which was arbitrary and capricious to successfully procedural time bar plaintiffs from filing a reply in other to controvert Defendants plethora of   bold face lies in their self-serving, spacious and perjured appellate brief on page 18,32, of Plaintiff's complain.

44. EXHIBIT QQ, Defendant Victoria Duncan email  informing Plaintiffs that the Court has rejected their reply brief, because it was allegedly time bared on page 18, 32, 36, of plaintiffs complaint

45. EXHIBIT RR, Plaintiffs reply brief which was filed on the---- but was rejected by the court, because it was a brutal indictment of the RICO co-participants 18 U.S.C 1962[a], 18 U.S.C. 1962[b],18 U.S.C. 1962[c], 18 U.S.C. 1962[d] and 18 U.S.C 241, 18 U.S.C 242 violations which exposed the RICO co-participants 18 U.S.C. 2, 18 U.S.C. 371, 18 U.S.C. 1341, 18 U.S.C 1343, 18 U.S.C 1344, 18 U.S.C. 1346, 18 U.DS.C 1951, 18 U.S.C 1956, 18 U.S.C. 201 predicate acts on page 18,32,34,36,   of Plaintiffs complain.

46. EXHIBIT SS, John Piskora, David Satnick, Loeb & Loeb, Harlem Contracting LLC i.e., Mark Tress aka Moishe Tress  time bar dilatory, spacious, perjured, self-serving affirmation in opposition dated  to Plaintiffs CPLR 5501 [a][1][2][3][4][5] motion to vacate the fraudulent judicial order sale referee deed auction  on page 32,34, of Plaintiffs complain.

47. EXHIBIT TT, Plaintiffs New York State Court of Appeals notice of leave to appeal and Affidavit in support  on page18, 19, 32, of Plaintiffs complain

48. EXHIBIT UU, Defendants John Piskora, David Satnick, Loeb & Loeb, Harlem Contracting LLC, i.e., Mark Tress aka Moishe Tress affirmation in opposition  on page 18, of Plaintiffs complaint on page 32

49. EXHIBIT V.V,  Title search  dated  which is an incontrovertible proof that Defendant Mark Tress and his alter ego also known as Moishe Tress does not own Plaintiffs condominiumDevelopment. This Defendant without permission from Global Investment Strategies Trust which is the rightful legal owner fraudulent conversion Plaintiffs property which he used as a collateral in his bank fraud scheme to scam $60 million dollars in fraudulent first mortgages loans and line of credit, each time he uses on of  his United States Post Office Box dummy domestic limited liability companies that has no tangible assets to flip Plaintiff property to himself. Defendant Mark Tress aka Moishe Tress was aided and abetted by his RICO co-participants who conspired with him to stripped $60 million dollars of equity from Plaintiffs property, then cravenly and cynicalabandoned Plaintiffs property which was once the pride of Harlem now a monument to New York State Unified Court  System Judges, Court Clerks, Law Clarks corruption and Hassidic Jews greed, who are above the law, because they have both celestial immunities from the gods, and absolute immunities from corrupt judges, and cannot be held accountable even when they commit crimes evincing depraved indifference. See page 19, 27, 32, of Plaintiffs Complain.

50. EXHIBIT W.W Plaintiffs  New York State Court of Appeals memorandum of law in support of notice of leave to appeal. Page 37 of plaintiff complaint

51. EXHIBIT XX,  Defendant Emma Lauren Holmes emails  on page 32,36 of Plaintiffs complaints.

52. EXHIBIT YY , New York State Supreme Court Appellate Division First Judicial Department fraudulent, unarticulated, silent, postcard boiler plate memorandum decision and order which was not adjudicated on the merit affirming Defendants Melissa Ann Crane, Debora Baker, Kevin Badskhan, Tyler Evans,  Joshua Kelly June 1, 2021, EXHIBIT Y, which was drafted in the name of Defendant Crane by Defendants John Piskora, David Satnick, Loeb & Loeb et al. A review of Defendant Crane profile on the Robing Room Portal, you will see that members of the bar are very contemptuous of her due to her incompetence, unethical practices, inexperience and lack of legal scholarship. Compare EXHIBIT E Defendants affirmation with EXHIBIT Y, you don't need to be a forensic or linguistic expert to discern that both EXHIBIT E and EXHIBIT Y was drafted by the same person. In view of the fact that neither Defendant Crane or her law clerks have artificial intelligence [AI] brains or are bionic men and women, it is humanlyimpossible for them to have read 11 years' worth of a voluminous ligation trail records and transcripts in less than a week see page 32 ,36,of Plaintiffs Complain.

53. EXHBIT ZZ,  New York State Court of Appeals memorandum decision and order denying leave to appeal The  policy underlying the Rooker- Feldman doctrine which is based on the concept that a litigant should not be able to challenge state courts orders in federal court as a means of relegating matters that already have been  considered and decided by a court of competent jurisdiction. See  Rooker v. Fidelity Trust Co. 263 U.S. 413 [1923] and District of Columbia Court of Appeals v. Feldman 460 U.S. 462 [1983] See EXHIBITS YY Appellate Division First Department and EXHIBIT ZZ New York State Court of Appeals decisions. Both Courts decline to review Plaintiffs United States Constitution First and Fourteenth Amendment  claims. Plaintiffs did not raise New York common law fraud and conversion pendent state claims  in the New York State Unified Court system. Plaintiffs CPLR 5501[a][2][3][4][5] EXHIBIT W motion which is similar to Federal Rules of Civil Procedure 60[b][3] motion was for the fraudulent referee deed action to be vacated due to the defendants fraud upon the court. See EXHIBIT MM Defendants John Piskora, David Satnick, Loeb & Loeb, Harlem Contracting LLC, i.e., Mark Tress aka Moishe Tress appellate brief where they were whining and moaning, that Plaintiffs did not raise United States Constitution cause of action in their CPLR 5501 motions, thus the First Department lacks  subject matter jurisdiction, and the Court agreed. See pages 13,32,  of Plaintiffs complaints.

# EXHIBIT A

# EXHIBIT B

# AIA® Document A201™ – 1997

## General Conditions of the Contract for Construction

for the following PROJECT:
*(Name and location or address):*

THE OWNER:
*(Name and address):*

THE ARCHITECT:
*(Name and address):*

ADDITIONS AND DELETIONS: The author of this document has added information needed for its completion. The author may also have revised the text of the original AIA standard form. An *Additions and Deletions Report* that notes added information as well as revisions to the standard form text is available from the author and should be reviewed.

This document has important legal consequences. Consultation with an attorney is encouraged with respect to its completion or modification.

This document has been approved and endorsed by The Associated General Contractors of America

TABLE OF ARTICLES


1 GENERAL PROVISIONS

2 OWNER

3 CONTRACTOR

4 ADMINISTRATION OF THE CONTRACT

5 SUBCONTRACTORS

6 CONSTRUCTION BY OWNER OR BY SEPARATE CONTRACTORS

7 CHANGES IN THE WORK

8 TIME

9 PAYMENTS AND COMPLETION

10 PROTECTION OF PERSONS AND PROPERTY

11 INSURANCE AND BONDS

12 UNCOVERING AND CORRECTION OF WORK

13 MISCELLANEOUS PROVISIONS

14 TERMINATION OR SUSPENSION OF THE CONTRACT


ELECTRONIC COPYING of any portion of this AIA® Document to another electronic file is prohibited and constitutes a violation of copyright laws as set forth in the footer of this document.

AIA Document A201™ – 1997. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This draft was produced by AIA software at 16:35:35 on 03/23/2006 under Order No.1000175678_1 which expires on 4/25/2006, and is not for resale.
User Notes: (3812457617)

**INDEX**
**(Numbers and Topics in Bold are Section Headings)**

Acceptance of Nonconforming Work
9.6.6, 9.9.3, 12.3
Acceptance of Work
9.6.6, 9.8.2, 9.9.3, 9.10.1, 9.10.3, 12.3
Access to Work
3.16, 6.2.1, 12.1
Accident Prevention
4.2.3, 10
Acts and Omissions
3.2, 3.3.2, 3.12.8, 3.18, 4.2.3, 4.3.8, 4.4.1, 8.3.1,
9.5.1, 10.2.5, 13.4.2, 13.7, 14.1
Addenda
1.1.1, 3.11
Additional Costs, Claims for
4.3.4, 4.3.5, 4.3.6, 6.1.1, 10.3
Additional Inspections and Testing
9.8.3, 12.2.1, 13.5
Additional Time, Claims for
4.3.4, 4.3.7, 8.3.2
**ADMINISTRATION OF THE CONTRACT**
3.1.3, 4, 9.4, 9.5
Advertisement or Invitation to Bid
1.1.1
Aesthetic Effect
4.2.13, 4.5.1
Allowances
3.8
All-risk Insurance
11.4.1.1
Applications for Payment
4.2.5, 7.3.8, 9.2, 9.3, 9.4, 9.5.1, 9.6.3, 9.7.1, 9.8.5,
9.10, 11.1.3, 14.2.4, 14.4.3
Approvals
2.4, 3.1.3, 3.5, 3.10.2, 3.12, 4.2.7, 9.3.2, 13.4.2, 13.5
Arbitration
4.3.3, 4.4, 4.5.1, 4.5.2, 4.6, 8.3.1, 9.7.1, 11.4.9,
11.4.10
Architect
4.1
Architect, Definition of
4.1.1
Architect, Extent of Authority
2.4, 3.12.7, 4.2, 4.3.6, 4.4, 5.2, 6.3, 7.1.2, 7.3.6, 7.4,
9.2, 9.3.1, 9.4, 9.5, 9.8.3, 9.10.1, 9.10.3, 12.1, 12.2.1,
13.5.1, 13.5.2, 14.2.2, 14.2.4
Architect, Limitations of Authority and
Responsibility
2.1.1, 3.3.3, 3.12.4, 3.12.8, 3.12.10, 4.1.2, 4.2.1,
4.2.2, 4.2.3, 4.2.6, 4.2.7, 4.2.10, 4.2.12, 4.2.13, 4.4,
5.2.1, 7.4, 9.4.2, 9.6.4, 9.6.6
Architect's Additional Services and Expenses
2.4, 11.4.1.1, 12.2.1, 13.5.2, 13.5.3, 14.2.4
Architect's Administration of the Contract
3.1.3, 4.2, 4.3.4, 4.4, 9.4, 9.5

Architect's Approvals
2.4, 3.1.3, 3.5.1, 3.10.2, 4.2.7
Architect's Authority to Reject Work
3.5.1, 4.2.6, 12.1.2, 12.2.1
Architect's Copyright
1.6
Architect's Decisions
4.2.6, 4.2.7, 4.2.11, 4.2.12, 4.2.13, 4.3.4, 4.4.1, 4.4.5,
4.4.6, 4.5, 6.3, 7.3.6, 7.3.8, 8.1.3, 8.3.1, 9.2, 9.4,
9.5.1, 9.8.4, 9.9.1, 13.5.2, 14.2.2, 14.2.4
Architect's Inspections
4.2.2, 4.2.9, 4.3.4, 9.4.2, 9.8.3, 9.9.2, 9.10.1, 13.5
Architect's Instructions
3.2.3, 3.3.1, 4.2.6, 4.2.7, 4.2.8, 7.4.1, 12.1, 13.5.2
Architect's Interpretations
4.2.11, 4.2.12, 4.3.6
Architect's Project Representative
4.2.10
Architect's Relationship with Contractor
1.1.2, 1.6, 3.1.3, 3.2.1, 3.2.2, 3.2.3, 3.3.1, 3.4.2, 3.5.1,
3.7.3, 3.10, 3.11, 3.12, 3.16, 3.18, 4.1.2, 4.1.3, 4.2,
4.3.4, 4.4.1, 4.4.7, 5.2, 6.2.2, 7, 8.3.1, 9.2, 9.3, 9.4,
9.5, 9.7, 9.8, 9.9, 10.2.6, 10.3, 11.3, 11.4.7, 12,
13.4.2, 13.5
Architect's Relationship with Subcontractors
1.1.2, 4.2.3, 4.2.4, 4.2.6, 9.6.3, 9.6.4, 11.4.7
Architect's Representations
9.4.2, 9.5.1, 9.10.1
Architect's Site Visits
4.2.2, 4.2.5, 4.2.9, 4.3.4, 9.4.2, 9.5.1, 9.9.2, 9.10.1,
13.5
Asbestos
10.3.1
Attorneys' Fees
3.18.1, 9.10.2, 10.3.3
Award of Separate Contracts
6.1.1, 6.1.2
Award of Subcontracts and Other Contracts for
Portions of the Work
5.2
**Basic Definitions**
1.1
Bidding Requirements
1.1.1, 1.1.7, 5.2.1, 11.5.1
Boiler and Machinery Insurance
11.4.2
Bonds, Lien
9.10.2
Bonds, Performance, and Payment
7.3.6.4, 9.6.7, 9.10.3, 11.4.9, 11.5
Building Permit
3.7.1
Capitalization
1.3
Certificate of Substantial Completion
9.8.3, 9.8.4, 9.8.5
Certificates for Payment

AIA Document A201™ - 1997. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This draft was produced by AIA software at 10:25:30 on 05/30/2006 under Order No.1000175545_1 which expires on 4/25/2006, and is not for resale.
User Notes:                                                                                              (3012087619)

4.2.5, 4.2.9, 8.3.3, 9.4, 9.5, 9.6.1, 9.6.6, 9.7.1, 9.10.1,
9.10.3, 13.7, 14.1.1.3, 14.2.4
Certificates of Inspection, Testing or Approval
13.5.4
Certificates of Insurance
9.10.2, 11.1.3
Change Orders
1.1.1, 2.4.1, 3.4.2, 3.8.2.3, 3.11.1, 3.12.8, 4.2.8, 4.3.4,
4.3.9, 5.2.3, 7.1, 7.2, 7.3, 8.3.1, 9.3.1.1, 9.10.3,
11.4.1.2, 11.4.6, 11.4.9, 12.1.2
Change Orders, Definition of
7.2.1
CHANGES IN THE WORK
3.11, 4.2.8, 7, 8.3.1, 9.3.1.1, 11.4.9
Claim, Definition of
4.3.1
Claims and Disputes
3.2.3, 4.3, 4.4, 4.5, 4.6, 6.1.1, 6.3, 7.3.8, 9.3.3, 9.10.4,
10.3.3
Claims and Timely Assertion of Claims
4.6.5
Claims for Additional Cost
3.2.3, 4.3.4, 4.3.5, 4.3.6, 6.1.1, 7.3.8, 10.3.2
Claims for Additional Time
3.2.3, 4.3.4, 4.3.7, 6.1.1, 8.3.2, 10.3.2
Claims for Concealed or Unknown Conditions
4.3.4
Claims for Damages
3.2.3, 3.18, 4.3.10, 6.1.1, 8.3.3, 9.5.1, 9.6.7, 10.3.3,
11.1.1, 11.4.7, 14.1.3, 14.2.4
Claims Subject to Arbitration
4.4.1, 4.5.1, 4.6.1
Cleaning Up
3.15, 6.3
Commencement of Statutory Limitation Period
13.7
Commencement of the Work, Conditions Relating to
2.2.1, 3.2.1, 3.4.1, 3.7.1, 3.10.1, 3.12.6, 4.3.5, 5.2.1,
5.2.3, 6.2.2, 8.1.2, 8.2.2, 8.3.1, 11.1, 11.4.1, 11.4.6,
11.5.1
Commencement of the Work, Definition of
8.1.2
Communications Facilitating Contract
Administration
3.9.1, 4.2.4
Completion, Conditions Relating to
1.6.1, 3.4.1, 3.11, 3.15, 4.2.2, 4.2.9, 8.2, 9.4.2, 9.8,
9.9.1, 9.10, 12.2, 13.7, 14.1.2
COMPLETION, PAYMENTS AND
9
Completion, Substantial
4.2.9, 8.1.1, 8.1.3, 8.2.3, 9.4.2, 9.8, 9.9.1, 9.10.3,
9.10.4.2, 12.2, 13.7
Compliance with Laws
1.6.1, 3.2.2, 3.6, 3.7, 3.12.10, 3.13, 4.1.1, 4.4.8, 4.6.4,
4.6.6, 9.6.4, 10.2.2, 11.1, 11.4, 13.1, 13.4, 13.5.1,
13.5.2, 13.6, 14.1.1, 14.2.1.3
Concealed or Unknown Conditions

4.3.4, 8.3.1, 10.3
Conditions of the Contract
1.1.1, 1.1.7, 6.1.1, 6.1.4
Consent, Written
1.6, 3.4.2, 3.12.8, 3.14.2, 4.1.2, 4.3.4, 4.6.4, 9.3.2,
9.8.5, 9.9.1, 9.10.2, 9.10.3, 11.4.1, 13.2, 13.4.2
CONSTRUCTION BY OWNER OR BY
SEPARATE CONTRACTORS
1.1.4, 6
Construction Change Directive, Definition of
7.3.1
Construction Change Directives
1.1.1, 3.12.8, 4.2.8, 4.3.9, 7.1, 7.3, 9.3.1.1
Construction Schedules, Contractor's
1.4.1.2, 3.10, 3.12.1, 3.12.2, 4.3.7.2, 6.1.3
Contingent Assignment of Subcontracts
5.4, 14.2.2.2
Continuing Contract Performance
4.3.3
Contract, Definition of
1.1.2
CONTRACT, TERMINATION OR
SUSPENSION OF THE
5.4.1.1, 11.4.9, 14
Contract Administration
3.1.3, 4, 9.4, 9.5
Contract Award and Execution, Conditions Relating
to
3.7.1, 3.10, 5.2, 6.1, 11.1.3, 11.4.6, 11.5.1
Contract Documents, The
1.1, 1.2
Contract Documents, Copies Furnished and Use of
1.6, 2.2.5, 5.3
Contract Documents, Definition of
1.1.1
Contract Sum
3.8, 4.3.4, 4.3.5, 4.4.5, 5.2.3, 7.2, 7.3, 7.4, 9.1, 9.4.2,
9.5.1.4, 9.6.7, 9.7, 10.3.2, 11.4.1, 14.2.4, 14.3.2
Contract Sum, Definition of
9.1
Contract Time
4.3.4, 4.3.7, 4.4.5, 5.2.3, 7.2.1.3, 7.3, 7.4, 8.1.1, 8.2,
8.3.1, 9.5.1, 9.7, 10.3.2, 12.1.1, 14.3.2
Contract Time, Definition of
8.1.1
CONTRACTOR
3
Contractor, Definition of
3.1, 6.1.2
Contractor's Construction Schedules
1.4.1.2, 3.10, 3.12.1, 3.12.2, 4.3.7.2, 6.1.3
Contractor's Employees
3.3.2, 3.4.3, 3.8.1, 3.9, 3.18.2, 4.2.3, 4.2.6, 10.2, 10.3,
11.1.1, 11.4.7, 14.1, 14.2.1.1,
Contractor's Liability Insurance
11.1
Contractor's Relationship with Separate Contractors
and Owner's Forces

AIA Document A201™ - 1997. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This draft was produced by AIA software at 14:18:39 on 03/21/2006 under Order No.1000179670_1 which expires on 4/16/2006, and is not for resale.
User Notes:

3

3.12.5, 3.14.2, 4.2.4, 6, 11.4.7, 12.1.2, 12.2.4
Contractor's Relationship with Subcontractors
1.2.2, 3.3.2, 3.18.1, 3.18.2, 5, 9.6.2, 9.6.7, 9.10.2,
11.4.1.2, 11.4.7, 11.4.8
Contractor's Relationship with the Architect
1.1.2, 1.6, 3.1.3, 3.2.1, 3.2.2, 3.2.3, 3.3.1, 3.4.2, 3.5.1,
3.7.3, 3.10, 3.11, 3.12, 3.16, 3.18, 4.1.2, 4.1.3, 4.2,
4.3.4, 4.4.1, 4.4.7, 5.2, 6.2.2, 7, 8.3.1, 9.2, 9.3, 9.4,
9.5, 9.7, 9.8, 9.9, 10.2.6, 10.3, 11.3, 11.4.7, 12,
13.4.2, 13.5
Contractor's Representations
1.5.2, 3.5.1, 3.12.6, 6.2.2, 8.2.1, 9.3.3, 9.8.2
Contractor's Responsibility for Those Performing the
Work
3.3.2, 3.18, 4.2.3, 4.3.8, 5.3.1, 6.1.3, 6.2, 6.3, 9.5.1,
10
Contractor's Review of Contract Documents
1.5.2, 3.2, 3.7.3
Contractor's Right to Stop the Work
9.7
Contractor's Right to Terminate the Contract
4.3.10, 14.1
Contractor's Submittals
3.10, 3.11, 3.12, 4.2.7, 5.2.1, 5.2.3, 7.3.6, 9.2, 9.3,
9.8.2, 9.8.3, 9.9.1, 9.10.2, 9.10.3, 11.1.3, 11.5.2
Contractor's Superintendent
3.9, 10.2.6
Contractor's Supervision and Construction
Procedures
1.2.2, 3.3, 3.4, 3.12.10, 4.2.2, 4.2.7, 4.3.3, 6.1.3,
6.2.4, 7.1.3, 7.3.4, 7.3.6, 8.2, 10, 12, 14
Contractual Liability Insurance
11.1.1.8, 11.2, 11.3
Coordination and Correlation
1.2, 1.5.2, 3.3.1, 3.10, 3.12.6, 6.1.3, 6.2.1
Copies Furnished of Drawings and Specifications
1.6, 2.2.5, 3.11
Copyrights
1.6, 3.17
Correction of Work
2.3, 2.4, 3.7.4, 4.2.1, 9.4.2, 9.8.2, 9.8.3, 9.9.1, 12.1.2,
12.2, 13.7.1.3
Correlation and Intent of the Contract Documents
1.2
Cost, Definition of
7.3.6
Costs
2.4, 3.2.3, 3.7.4, 3.8.2, 3.15.2, 4.3, 5.4.2, 6.1.1, 6.2.3,
7.3.3.3, 7.3.6, 7.3.7, 7.3.8, 9.10.2, 10.3.2, 10.5, 11.3,
11.4, 12.1, 12.2.1, 12.2.4, 13.5, 14
Cutting and Patching
6.2.5, 3.14
Damage to Construction of Owner or Separate
Contractors
3.14.2, 6.2.4, 9.2.1.5, 10.2.1.2, 10.2.5, 10.6, 11.1,
11.4, 12.2.4
Damage to the Work
3.14.2, 9.9.1, 10.2.1.2, 10.2.5, 10.6, 11.4, 12.2.4

Damages, Claims for
3.2.3, 3.18, 4.3.10, 6.1.1, 8.3.3, 9.5.1, 9.6.7, 10.3.3,
11.1.1, 11.4.5, 11.4.7, 14.1.3, 14.2.4
Damages for Delay
6.1.1, 8.3.3, 9.5.1.6, 9.7, 10.3.2
Date of Commencement of the Work, Definition of
8.1.2
Date of Substantial Completion, Definition of
8.1.3
Day, Definition of
8.1.4
Decisions of the Architect
4.2.6, 4.2.7, 6.2.11, 4.2.12, 4.2.13, 4.3.4, 4.4.1, 4.4.5,
4.4.6, 4.5, 6.3, 7.3.6, 7.3.8, 8.1.3, 8.3.1, 9.2, 9.4,
9.5.1, 9.8.4, 9.9.1, 13.5.2, 14.2.2, 14.2.4
Decisions to Withhold Certification
9.4.1, 9.5, 9.7, 14.1.1.3
Defective or Nonconforming Work, Acceptance,
Rejection and Correction of
2.3, 2.4, 3.5.1, 4.2.6, 6.2.5, 9.5.1, 9.5.2, 9.6.6, 9.8.2,
9.9.3, 9.10.4, 12.2.1, 13.7.1.3
Defective Work, Definition of
3.5.1
Definitions
1.1, 2.1.1, 3.1, 3.5.1, 3.12.1, 3.12.2, 3.12.3, 4.1.1,
4.3.1, 5.1, 6.1.2, 7.2.1, 7.3.1, 7.3.6, 8.1, 9.1, 9.8.1
Delays and Extensions of Time
3.2.3, 4.3.1, 4.3.4, 4.3.7, 4.4.5, 5.2.3, 7.2.1, 7.3.1,
7.4.1, 8.3, 9.5.1, 9.7.1, 10.3.2, 10.6.1, 14.3.2
Disputes
4.1.4, 4.3, 4.4, 4.5, 4.6, 6.3, 7.3.8
Documents and Samples at the Site
3.11
Drawings, Definition of
1.1.5
Drawings and Specifications, Use and Ownership of
1.1.1, 1.3, 2.2.5, 3.11, 5.3
Effective Date of Insurance
8.2.2, 11.1.2
Emergencies
4.3.5, 10.6, 14.1.1.2
Employees, Contractor's
3.3.2, 3.4.3, 3.8.1, 3.9, 3.18.2, 4.2.3, 4.2.6, 10.2, 10.3,
11.1.1, 11.4.7, 14.1, 14.2.1.1
Equipment, Labor, Materials and
1.1.3, 1.1.6, 3.4, 3.5.1, 3.8.2, 3.8.3, 3.12, 3.13, 3.15.1,
4.2.6, 4.2.7, 5.2.1, 6.2.1, 7.3.6, 9.3.2, 9.3.3, 9.5.1.3,
9.10.2, 10.2.1, 10.2.4, 14.2.1.2
Execution and Progress of the Work
1.1.3, 1.2.1, 1.2.2, 2.2.3, 2.2.5, 3.1, 3.3, 3.4, 3.5, 3.7,
3.10, 3.12, 3.14, 4.2.2, 4.2.3, 4.3.3, 6.2.2, 7.1.3, 7.3.4,
8.2, 9.5, 9.9.1, 10.2, 10.3, 12.2, 14.2, 14.3
Extensions of Time
3.2.3, 4.3.1, 4.3.4, 4.3.7, 4.4.5, 5.2.3, 7.2.1, 7.3, 7.4.1,
9.5.1, 9.7.1, 10.3.2, 10.6.1, 14.3.2
Failure of Payment
4.3.6, 9.5.1.3, 9.7, 9.10.2, 14.1.1.3, 14.2.1.2, 13.6
Faulty Work

AIA Document A201™ - 1997. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This draft was produced by AIA software at 16:56:30 on 01/31/2006 under Order No.1000170070_1 which expires on 4/29/2006, and is not for resale.
User Notes:                                                                                                          (3832457817)

6

(See Defective or Nonconforming Work)
Final Completion and Final Payment
4.2.1, 4.2.9, 4.3.2, 9.8.2, 9.10, 11.1.2, 11.1.3, 11.4.1,
11.4.5, 12.3.1, 13.7, 14.2.4, 14.4.3
Financial Arrangement, Owner's
2.2.1, 13.2.2, 14.1.1.5
Fire and Extended Coverage Insurance
11.4
GENERAL PROVISIONS
1
Governing Law
13.1
Guarantees (See Warranty)
Hazardous Materials
10.2.4, 16.3, 10.5
Identification of Contract Documents
1.5.1
Identification of Subcontractors and Suppliers
5.2.1
Indemnification
3.17, 3.18, 9.10.2, 10.3.3, 10.5, 11.4.1.2, 11.4.7
Information and Services Required of the Owner
2.1.2, 2.2, 3.2.1, 3.12.4, 3.12.10, 4.2.7, 4.3.3, 6.1.3,
6.1.4, 6.2.5, 9.3.2, 9.6.1, 9.6.4, 9.9.2, 9.10.3, 10.3.3,
11.2, 11.4, 13.5.1, 13.5.2, 14.1.1.4, 14.1.4
Injury or Damage to Person or Property
4.3.8, 10.2, 10.6
Inspections
3.1.3, 3.3.3, 3.7.1, 4.2.2, 4.2.6, 4.2.9, 9.4.2, 9.8.2,
9.8.3, 9.9.2, 9.10.1, 12.2.1, 13.5
Instructions to Bidders
1.1.1
Instructions to the Contractor
3.2.3, 3.3.1, 3.8.1, 4.2.8, 5.2.1, 7, 12, 8.2.2, 13.5.2
Insurance
3.18.1, 6.1.1, 7.3.6, 8.2.1, 9.3.2, 9.8.4, 9.9.1, 9.10.2,
9.10.5, 11
Insurance, Boiler and Machinery
11.4.2
Insurance, Contractor's Liability
11.1
Insurance, Effective Date of
8.2.2, 11.1.2
Insurance, Loss of Use
11.4.3
Insurance, Owner's Liability
11.2
Insurance, Project Management Protective
Liability
11.3
Insurance, Property
10.2.5, 11.4
Insurance, Stored Materials
9.3.2, 11.4.1.4
INSURANCE AND BONDS
11
Insurance Companies, Consent to Partial Occupancy
9.9.1, 11.4.1.5

Insurance Companies, Settlement with
11.4.10
Intent of the Contract Documents
1.2.1, 4.2.7, 4.2.12, 4.2.13, 7.4
Interest
13.6
Interpretation
1.2.3, 1.4, 4.1.1, 4.3.1, 5.1, 6.1.2, 8.1.4
Interpretations, Written
4.2.11, 4.2.12, 4.3.6
Joinder and Consolidation of Claims Required
4.6.4
Judgment on Final Award
4.6.6
Labor and Materials, Equipment
1.1.3, 1.1.6, 3.4, 3.5.1, 3.8.2, 3.8.3, 3.12, 3.13, 3.15.1,
4.2.6, 4.2.7, 5.2.1, 6.2.1, 7.3.6, 9.3.2, 9.3.3, 9.5.1.3,
9.10.2, 10.2.1, 10.2.4, 14.2.1.2
Labor Disputes
8.3.1
Laws and Regulations
1.6, 3.2.2, 3.6, 3.7, 3.12.10, 3.13, 4.1.1, 4.4.8, 4.6,
9.6.4, 9.9.1, 10.2.2, 11.1, 11.4, 13.1, 13.4, 13.5.1,
13.5.2, 13.6, 14
Liens
2.1.2, 4.4.8, 8.2.2, 9.3.3, 9.10
Limitation on Consolidation or Joinder
4.6.4
Limitations, Statutes of
4.6.3, 12.2.6, 13.7
Limitations of Liability
2.3, 3.2.1, 3.5.1, 3.7.3, 3.12.8, 3.12.10, 3.17, 3.18,
4.2.6, 4.2.7, 4.2.12, 6.2.2, 9.4.2, 9.6.4, 9.6.7, 9.10.4,
10.3.3, 10.2.5, 11.1.2, 11.2.1, 11.4.7, 12.2.5, 13.4.2
Limitations of Time
2.1.2, 2.2, 2.4, 3.2.1, 3.7.3, 3.10, 3.11, 3.12.5, 3.15.1,
4.2.7, 4.3, 4.4, 4.5, 4.6, 5.2, 5.3, 5.4, 6.2.4, 7.3, 7.4,
8.2, 9.2, 9.3.1, 9.3.3, 9.4.1, 9.5, 9.6, 9.7, 9.8, 9.9,
9.10, 11.1.3, 11.4.1.5, 11.4.6, 11.4.10, 12.2, 13.5,
13.7, 14
Loss of Use Insurance
11.4.3
Material Suppliers
1.6, 3.12.1, 4.2.4, 4.2.6, 5.2.1, 9.3, 9.4.2, 9.6, 9.10.5
Materials, Hazardous
10.2.4, 10.3, 10.5
Materials, Labor, Equipment and
1.1.3, 1.1.6, 1.6.1, 3.4, 3.5.1, 3.8.2, 3.8.23, 3.12, 3.13,
3.15.1, 4.2.6, 4.2.7, 5.2.1, 6.2.1, 7.3.6, 9.3.2, 9.3.3,
9.5.1.3, 9.10.2, 10.2.1, 10.2.4, 14.2.1.2
Means, Methods, Techniques, Sequences and
Procedures of Construction
3.3.1, 3.12.10, 4.2.2, 4.2.7, 9.4.2
Mechanic's Lien
4.4.8
Mediation
4.4.1, 4.4.5, 4.4.6, 4.4.8, 4.5, 4.6.1, 4.6.2, 8.3.1, 10.5
Minor Changes in the Work

5

AIA Document A201™ – 1997. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987 and 1997 by The
American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International
Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal
penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 14:10:32 on
01/18/2006 under Order No.1000159570_1 which expires on 6/28/2006, and is not for resale.
User Notes:                                                                                      (3618087619)

1.1.1, 3.12.8, 4.2.8, 4.3.6, 7.1, 7.6
MISCELLANEOUS PROVISIONS
13
Modifications, Definition of
1.1.1
Modifications to the Contract
1.1.1, 1.1.2, 3.7.3, 3.11, 4.1.2, 4.2.1, 5.2.3, 7, 8.3.1,
9.7, 10.3.2, 11.4.1
Mutual Responsibility
6.2
Nonconforming Work, Acceptance of
9.6.6, 9.9.3, 12.3
Nonconforming Work, Rejection and Correction of
2.3, 2.4, 3.5.1, 4.2.6, 6.2.5, 9.5.1, 9.8.2, 9.9.3, 9.10.4,
12.2.1, 13.7.1.3
Notice
2.2.1, 2.3, 2.4, 3.2.3, 3.3.1, 3.7.2, 3.7.4, 3.12.9, 4.3,
4.4.8, 4.6.5, 5.2.1, 8.2.2, 9.7, 9.10, 10.2.2, 11.1.3,
11.4.6, 12.2.2, 12.2.4, 13.3, 13.5.1, 13.5.2, 14.1, 14.2
Notice, Written
2.3, 2.4, 3.3.1, 3.9, 3.12.9, 3.12.10, 4.3, 4.4.8, 4.6.5,
5.2.1, 8.2.2, 9.7, 9.10, 10.2.2, 10.3, 11.1.3, 11.4.6,
12.2.2, 12.2.4, 13.3, 14
Notice of Testing and Inspections
13.5.1, 13.5.2
Notice to Proceed
8.2.2
Notices, Permits, Fees and
2.2.2, 3.7, 3.13, 7.3.6.4, 10.2.2
Observations, Contractor's
1.5.2, 3.2, 3.7.3, 4.3.4
Occupancy
2.2.2, 9.6.6, 9.8, 11.4.1.5
Orders, Written
1.1.1, 2.3, 3.9, 4.3.6, 7, 8.2.2, 11.4.9, 12.1, 12.2,
13.5.2, 14.3.1
OWNER
2
Owner, Definition of
2.1
Owner, Information and Services Required of the
2.1.2, 2.2, 3.2.1, 3.12.4, 3.12.10, 4.2.7, 4.3.3, 6.1.3,
6.1.4, 6.2.5, 9.3.2, 9.6.1, 9.6.4, 9.9.2, 9.10.3, 10.3.3,
11.2, 11.4, 13.5.1, 13.5.2, 14.1.1.4, 14.1.4
Owner's Authority
1.6, 2.1.1, 2.3, 2.4, 3.4.2, 3.8.1, 3.12.10, 3.14.2, 4.1.2,
4.1.3, 4.2.4, 4.2.9, 4.3.6, 4.4.7, 5.2.1, 5.2.4, 5.4.1,
6.1, 6.3, 7.2.1, 7.3.1, 8.2.2, 8.3.1, 9.3.1, 9.3.2, 9.5.1,
9.9.1, 9.10.2, 10.3.2, 11.1.3, 11.3.1, 11.4.3, 11.4.10,
12.2.2, 12.3.1, 13.2.2, 14.3, 14.4
Owner's Financial Capability
2.2.1, 13.2.2, 14.1.1.5
Owner's Liability Insurance
11.2
Owner's Loss of Use Insurance
11.4.3
Owner's Relationship with Subcontractors
1.1.2, 5.2, 5.3, 5.4, 9.6.4, 9.10.2, 14.2.2

Owner's Right to Carry Out the Work
2.4, 12.2.4, 14.2.2.2
Owner's Right to Clean Up
6.3
Owner's Right to Perform Construction and to
Award Separate Contracts
6.1
Owner's Right to Stop the Work
2.3
Owner's Right to Suspend the Work
14.3
Owner's Right to Terminate the Contract
14.2
Ownership and Use of Drawings, Specifications
and Other Instruments of Service
1.1.1, 1.6, 2.2.5, 3.2.1, 3.11.1, 3.17.1, 4.2.12, 5.3
Partial Occupancy or Use
9.6.6, 9.9, 11.4.1.5
Patching, Cutting and
3.14, 6.2.5
Patents
3.17
Payment, Applications for
4.2.5, 7.3.8, 9.2, 9.3, 9.4, 9.5.1, 9.6.3, 9.7.1, 9.8.5,
9.10.1, 9.10.3, 9.10.5, 11.1.3, 14.2.4, 14.4.3
Payment, Certificates for
4.2.5, 4.2.9, 9.3.3, 9.4, 9.5, 9.6.1, 9.6.6, 9.7.1, 9.10.1,
9.10.3, 13.7, 14.1.1.3, 14.2.4
Payment, Failure of
4.3.6, 9.5.1.3, 9.7, 9.10.2, 14.1.1.3, 14.2.1.2, 13.6
Payment, Final
4.2.1, 4.2.9, 4.3.2, 9.8.2, 9.10, 11.1.2, 11.1.3, 11.4.1,
11.4.5, 12.3.1, 13.7, 14.2.4, 14.4.3
Payment Bond, Performance Bond and
7.3.6.4, 9.6.7, 9.10.3, 11.4.9, 11.5
Payments, Progress
4.3.3, 9.3, 9.6, 9.8.5, 9.10.3, 13.6, 14.2.3
PAYMENTS AND COMPLETION
9
Payments to Subcontractors
5.4.2, 9.5.1.3, 9.6.2, 9.6.3, 9.6.4, 9.6.7, 11.4.8,
14.2.1.2
PCB
10.3.1
Performance Bond and Payment Bond
7.3.6.4, 9.6.7, 9.10.3, 11.4.9, 11.5
Permits, Fees and Notices
2.2.2, 3.7, 3.13, 7.3.6.4, 10.2.2
PERSONS AND PROPERTY, PROTECTION
OF
10

Polychlorinated Biphenyl
10.3.1
Product Data, Definition of
3.12.2
Product Data and Samples, Shop Drawings
3.11, 3.12, 4.2.7

AIA Document A201™ - 1997. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987, 1997 by The
American Institute of Architects.  All rights reserved.  WARNING: This AIA®  Document is protected by U.S. Copyright Law and International
Treaties.  Unauthorized reproduction or distribution of this AIA®  Document, or any portion of it, may result in severe civil and criminal
penalties, and will be prosecuted to the maximum extent possible under the law. This draft was produced by AIA software at 14:05:48 on
01/05/2005 under Order No.1000175570_1 which expires on 6/26/2006, and is not for resale.
User Notes:                                                                                                                    (1024369017)

6

Progress and Completion
4.2.2, 4.3.3, 8.2, 9.8, 9.9.1, 14.1.4
Progress Payments
4.3.3, 9.3, 9.6, 9.8.5, 9.10.3, 13.6, 14.2.3
Project, Definition of the
1.1.6
Project Management Protective Liability
Insurance
11.3
Project Manual, Definition of the
1.1.7
Project Manuals
2.2.5
Project Representatives
4.2.10
Property Insurance
10.2.5, 11.4
PROTECTION OF PERSONS AND PROPERTY
10
Regulations and Laws
1.6, 3.2.2, 3.6, 3.7, 3.12.10, 3.13, 4.1.1, 4.4.8, 4.6,
9.6.4, 9.9.1, 10.2.2, 11.1, 11.4, 13.1, 13.4, 13.5.1,
13.5.2, 13.6, 14
Rejection of Work
3.5.1, 4.2.6, 12.2.1
Releases and Waivers of Liens
9.10.2
Representations
1.5.2, 3.5.1, 3.12.6, 6.2.2, 8.2.1, 9.3.3, 9.4.2, 9.5.1,
9.8.2, 9.10.1
Representatives
2.1.1, 3.1.1, 3.9, 4.1.1, 4.2.1, 4.2.10, 5.1.1, 5.1.2,
13.2.1
Resolution of Claims and Disputes
4.4, 4.5, 4.6
Responsibility for Those Performing the Work
3.3.2, 3.18, 4.2.3, 4.3.8, 5.3.1, 6.1.3, 6.2, 6.3, 9.5.1,
10
Retainage
9.3.1, 9.6.2, 9.8.5, 9.9.1, 9.10.2, 9.10.3
Review of Contract Documents and Field
Conditions by Contractor
1.5.2, 3.2, 3.7.3, 3.12.7, 6.1.3
Review of Contractor's Submittals by Owner and
Architect
3.10.1, 3.10.2, 3.11, 3.12, 4.2, 5.2, 6.1.3, 9.2, 9.8.2
Review of Shop Drawings, Product Data and
Samples by Contractor
3.12
Rights and Remedies
1.1.2, 2.3, 2.4, 3.5.1, 3.15.2, 4.2.6, 4.3.4, 4.5, 4.6, 5.3,
5.4, 6.1, 6.3, 7.3.1, 8.3, 9.5.1, 9.7, 10.2.5, 10.3,
12.2.2, 12.2.4, 13.4, 14
Royalties, Patents and Copyrights
3.17
Rules and Notices for Arbitration
4.6.2
Safety of Persons and Property

10.2, 10.6
Safety Precautions and Programs
3.3.1, 4.2.2, 4.2.7, 5.3.1, 10.1, 10.2, 10.6
Samples, Definition of
3.12.3
Samples, Shop Drawings, Product Data and
3.11, 3.12, 4.2.7
Samples at the Site, Documents and
3.11
Schedule of Values
9.2, 9.3.1
Schedules,
1.4.1.2, 3.10, 3.Construction12.1, 3.12.2, 4.3.7.2,
6.1.3
Separate Contracts and Contractors
1.1.4, 3.12.5, 3.14.2, 4.2.4, 4.2.7, 4.6.4, 6, 8.3.1,
11.4.7, 12.1.2, 12.2.5
Shop Drawings, Definition of
3.12.1
Shop Drawings, Product Data and Samples
3.11, 3.12, 4.2.7
Site, Use of
3.13, 6.1.1, 6.2.1
Site Inspections
1.2.2, 3.2.1, 3.3.3, 3.7.1, 4.2, 4.3.4, 9.4.2, 9.10.1, 13.5
Site Visits, Architect's
4.2.2, 4.2.9, 4.3.4, 9.4.2, 9.5.1, 9.9.2, 9.10.1, 13.5
Special Inspections and Testing
4.2.6, 12.2.1, 13.5
Specifications, Definition of the
1.1.6
Specifications, The
1.1.1, 1.1.6, 1.1.7, 1.2.2, 1.6, 3.11, 3.12.10, 3.17
Statute of Limitations
4.6.3, 12.2.6, 13.7
Stopping the Work
2.3, 4.3.6, 9.7, 10.3, 14.1
Stored Materials
6.2.1, 9.3.2, 10.2.1.2, 10.2.4, 11.4.1.4
Subcontractor, Definition of
5.1.1
SUBCONTRACTORS
5
Subcontractors, Work by
1.2.2, 3.3.2, 3.12.1, 4.2.3, 5.2.3, 5.3, 5.4, 9.3.1.2,
9.6.7
Subcontractual Relations
5.3, 5.4, 9.3.1.2, 9.6, 9.10 10.2.1, 11.4.7, 11.4.8, 14.1,
14.2.1, 14.3.2
Submittals
1.6, 3.10, 3.11, 3.12, 4.2.7, 5.2.1, 5.2.3, 7.3.6, 9.2,
9.3, 9.8, 9.9.1, 9.10.2, 9.10.3, 11.1.3
Subrogation, Waivers of
6.1.1, 11.4.5, 11.4.7
Substantial Completion
4.2.9, 8.1.1, 8.1.3, 8.2.3, 9.4.2, 9.8, 9.9.1, 9.10.3,
9.10.4.2, 12.2, 13.7
Substantial Completion, Definition of

AIA Document A201™ - 1997. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987 and 1997 by The
American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International
Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal
penalties, and will be prosecuted to the maximum extent possible under the law. This draft was produced by AIA software at 16:45:39 on
01/23/2008 under Order No.1000175075_1 which expires on 6/29/2008, and is not for resale.
User Notes:                                                                                                                (1013CBVC17)

9.8.1
Substitution of Subcontractors
5.2.3, 5.2.4
Substitution of Architect
4.1.3
Substitutions of Materials
3.4.2, 3.5.1, 7.3.7
Sub-subcontractor, Definition of
5.1.2
Subsurface Conditions
4.3.4
Successors and Assigns
13.2
Superintendent
3.9, 10.2.6
Supervision and Construction Procedures
1.2.2, 3.3, 3.4, 3.12.10, 4.2.2, 4.2.7, 4.3.3, 6.1.3,
6.2.4, 7.1.3, 7.3.6, 8.2, 8.3.1, 9.4.2, 10, 12, 14
Surety
4.4.7, 5.4.1.2, 9.8.5, 9.10.2, 9.10.3, 14.2.2
Surety, Consent of
9.10.2, 9.10.3
Surveys
2.2.3
Suspension by the Owner for Convenience
14.4
Suspension of the Work
5.4.2, 14.3
Suspension or Termination of the Contract
4.3.6, 5.4.1.1, 11.4.9, 14
Taxes
3.6, 3.8.2.1, 7.3.6.4
Termination by the Contractor
4.3.10, 14.1
Termination by the Owner for Cause
4.3.10, 5.4.1.1, 14.2
Termination of the Architect
4.1.3
Termination of the Contractor
14.2.2
TERMINATION OR SUSPENSION OF THE
CONTRACT
14
Tests and Inspections
3.1.3, 3.3.3, 4.2.2, 4.2.6, 4.2.9, 9.4.2, 9.8.3, 9.9.2,
9.10.1, 10.3.2, 11.4.1.1, 12.2.1, 13.5
TIME
8
Time, Delays and Extensions of
3.2.3, 4.3.1, 4.3.4, 4.3.7, 4.4.5, 5.2.3, 7.2.1, 7.3.1,
7.4.1, 8.3, 9.5.1, 9.7.1, 10.3.2, 10.6.1, 14.3.2
Time Limits
2.1.2, 2.2, 2.4, 3.2.1, 3.7.3, 3.10, 3.11, 3.12.5, 3.15.1,
4.2, 4.3, 4.4, 4.5, 4.6, 5.2, 5.3, 5.4, 6.2.4, 7.3, 7.4,

8.2, 9.2, 9.3.1, 9.3.3, 9.4.1, 9.5, 9.6, 9.7, 9.8, 9.9,
9.10, 11.1.3, 11.4.1.5, 11.4.6, 11.4.10, 12.2, 13.5,
13.7, 14
Time Limits on Claims
4.3.2, 4.3.4, 4.3.5, 4.4, 4.5, 4.6
Title to Work
9.3.2, 9.3.3
UNCOVERING AND CORRECTION OF
WORK
12
Uncovering of Work
12.1
Unforeseen Conditions
4.3.4, 8.3.1, 10.3
Unit Prices
4.3.9, 7.3.3.2
Use of Documents
1.1.1, 1.6, 2.2.5, 3.12.6, 5.3
Use of Site
3.13, 6.1.1, 6.2.1
Values, Schedule of
9.2, 9.3.1
Waiver of Claims by the Architect
13.4.2
Waiver of Claims by the Contractor
4.3.10, 9.10.5, 11.4.7, 13.4.2
Waiver of Claims by the Owner
4.3.10, 9.9.3, 9.10.3, 9.10.4, 11.4.3, 11.4.5, 11.4.7,
12.2.2.1, 13.4.2, 14.2.4
Waiver of Consequential Damages
4.3.10, 14.2.4
Waiver of Liens
9.10.2, 9.10.4
Waivers of Subrogation
6.1.1, 11.4.5, 11.4.7
Warranty
3.5, 4.2.9, 4.3.5.3, 9.3.3, 9.8.4, 9.9.1, 9.10.4, 12.2.2,
13.7.1.3
Weather Delays
4.3.7.2
Work, Definition of
1.1.3
Written Consent
1.6, 3.4.2, 3.12.8, 3.14.2, 4.1.2, 4.3.4, 4.6.4, 9.3.2,
9.8.5, 9.9.1, 9.10.2, 9.10.3, 11.4.1, 13.2, 13.4.2
Written Interpretations
4.2.11, 4.2.12, 4.3.6
Written Notice
2.3, 2.4, 3.3.1, 3.9, 3.12.9, 3.12.10, 4.3, 4.4.8, 4.6.5,
5.2.1, 8.2.2, 9.7, 9.10, 10.2.2, 10.3, 11.1.3, 11.4.6,
12.2.2, 12.2.4, 13.3, 14
Written Orders
1.1.1, 2.3, 3.9, 4.3.6, 7, 8.2.2, 11.4.9, 12.1, 12.2,
13.5.2, 14.3.1

AIA Document A201™ – 1997. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The
American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International
Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal
penalties, and will be prosecuted to the maximum extent possible under the law. This draft was produced by AIA software at 16:45:30 on
01/05/2000 under Order No.1000815070_1 which expires on 1/05/2000, and is not for resale.
User Notes:                                                                                          (1012867617)

8

## ARTICLE 1  GENERAL PROVISIONS

### § 1.1 BASIC DEFINITIONS

### § 1.1.1 THE CONTRACT DOCUMENTS

The Contract Documents consist of the Agreement between Owner and Contractor (hereinafter the Agreement), Conditions of the Contract (General, Supplementary and other Conditions), including this version of AIA Document A201-1997 (the "parties' version of AIA Document A201-1997"), Drawings, Specifications, Addenda issued prior to execution of the Contract, other documents listed in the Agreement and Modifications issued after execution of the Contract. A Modification is (1) a written amendment to the Contract signed by both parties, (2) a Change Order, (3) a Construction Change Directive or (4) a written order for a minor change in the Work issued by the Architect. Unless specifically enumerated in the Agreement, the Contract Documents do not include other documents such as bidding requirements (advertisement or invitation to bid, Instructions to Bidders, sample forms, the Contractor's bid or portions of Addenda relating to bidding requirements).

### § 1.1.2 THE CONTRACT

The Contract Documents form the Contract for Construction. The Contract represents the entire and integrated agreement between the parties hereto and supersedes prior negotiations, representations or agreements, either written or oral. The Contract may be amended or modified only by a Modification. The Contract Documents shall not be construed to create a contractual relationship of any kind (1) between the Architect and Contractor; (2) between the Owner and a Subcontractor or Sub-subcontractor, (3) between the Owner and Architect; (4) between the Contractor and Owner's Lender; or (5) between any persons or entities other than the Owner and Contractor. The Architect shall, however, be entitled to performance and enforcement of obligations under the Contract intended to facilitate performance of the Architect's duties.

### § 1.1.3 THE WORK

The term "Work" means the construction and services required by the Contract Documents, whether completed or partially completed, and includes all other labor, materials, equipment and services provided or to be provided by the Contractor to fulfill the Contractor's obligations. The Work may constitute the whole or a part of the Project.

### § 1.1.4 THE PROJECT

The Project is the total construction of which the Work performed under the Contract Documents may be the whole or a part and which may include construction by the Owner or by separate contractors.

### § 1.1.5 THE DRAWINGS

The Drawings are the graphic and pictorial portions of the Contract Documents showing the design, location and dimensions of the Work, generally including plans, elevations, sections, details, schedules and diagrams.

### § 1.1.6 THE SPECIFICATIONS

The Specifications are that portion of the Contract Documents consisting of the written requirements for materials, equipment, systems, standards and workmanship for the Work, and performance of related services.

### § 1.1.7 THE PROJECT MANUAL

The Project Manual is a volume assembled for the Work which may include the bidding requirements, sample forms, Conditions of the Contract and Specifications.

### § 1.2 CORRELATION AND INTENT OF THE CONTRACT DOCUMENTS

### § 1.2.1 The intent of the Contract Documents is to include all items necessary for the proper execution and completion of the Work by the Contractor. The Contract Documents are complementary, and what is required by one shall be as binding as if required by all; performance by the Contractor shall be required only to the extent consistent with the Contract Documents and reasonably inferable from them as being necessary to produce the indicated results.

### § 1.2.1.1 In the event of any conflict among the Contract Documents, , the Contractor shall immediately notify the Owner. The Contract Documents shall be construed according to the following principles:

Highest Priority:                    Modifications issued and executed after execution of the Agreement
                                     between Owner and Contractor (the "Agreement")
                                     Rider to the Agreement
Second Priority:                     the Agreement
Third Priority:

AIA Document A201™ – 1997. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This draft was produced by AIA software at 16:18:59 on 03/31/2006 under Order No.1000174876_1 which expires on 6/26/2006, and is not for resale.
User Notes:                                                                                       (3032087667)

9

the parties' version of AIA Document A201-1997
the Specifications
the Drawings

**Fourth Priority:**
**Fifth Priority:**
**Sixth Priority:**

Nothing in this paragraph shall relieve the Contractor of its obligations pursuant to Paragraphs 3.2 and 3.7 herein.

The Contractor represents that it has verified measurements at the Project site before ordering any materials or performing any Work, and is responsible for the correctness of such measurements. No extra charges or compensation will be allowed on account of differences between actual dimensions and the dimensions indicated on the Drawings unless such differences could not with reasonable due diligence have been discovered by the Contractor prior to ordering materials or performing Work.

Should the Drawings or the Specifications disagree between or among themselves or with each other, the Contractor shall provide the better quality or greater quantity of work and/or materials unless otherwise directed by written addendum to the Contract in accordance with applicable provisions of these Conditions.

The Contractor and all Subcontractors shall refer to all of the Drawings and to all of the Sections of the Specifications and shall perform all work reasonably inferable therefrom as being necessary to produce the indicated results.

§ 1.2.2 Organization of the Specifications into divisions, sections and articles, and arrangement of Drawings shall not control the Contractor in dividing the Work among Subcontractors or in establishing the extent of Work to be performed by any trade.

§ 1.2.3 Unless otherwise stated in the Contract Documents, words which have well-known technical or construction industry meanings are used in the Contract Documents in accordance with such recognized meanings.

§ 1.3 CAPITALIZATION
§ 1.3.1 Terms capitalized in these General Conditions include those which are (1) specifically defined, (2) the titles of numbered articles or (3) the titles of other documents published by the American Institute of Architects. The inadvertent failure to capitalize such terms in other Contract Documents shall be of no significance.

§ 1.4 INTERPRETATION
§ 1.4.1 In the interest of brevity the Contract Documents frequently omit modifying words such as "all" and "any" and articles such as "the" and "an," but the fact that a modifier or an article is absent from one statement and appears in another is not intended to affect the interpretation of either statement.

§ 1.5 EXECUTION OF CONTRACT DOCUMENTS
§ 1.5.1 The Contract Documents shall be signed by the Owner and Contractor. If either the Owner or Contractor or both do not sign all the Contract Documents, the Architect shall identify such unsigned Documents upon request.

§ 1.5.2 Execution of the Contract by the Contractor is a representation that the Contractor has visited the site, becomes generally familiar with local conditions under which the Work is to be performed and correlated personal observations with requirements of the Contract Documents.

§ 1.6 OWNERSHIP AND USE OF DRAWINGS, SPECIFICATIONS AND OTHER INSTRUMENTS OF SERVICE
§ 1.6.1 The Drawings, Specifications and other documents, including those in electronic form, prepared by the Architect and the Architect's consultants are Instruments of Service through which the Work is to be executed by the Contractor is described. The Contractor may retain one record set. Neither the Contractor nor any Subcontractor, Sub-subcontractor or material or equipment supplier shall own or claim a copyright in the Drawings, Specifications and other documents prepared by the Architect or the Architect's consultants, and unless otherwise indicated the Architect and the Architect's consultants shall be deemed the authors of them and will retain all common law, statutory and other reserved rights, in addition to the copyrights. All copies of Instruments of Service, except the Contractor's record set, shall be returned or suitably accounted for to the Architect, on request, upon completion of the Work. The Drawings, Specifications and other documents prepared by the Architect and the Architect's consultants, and copies thereof furnished to the Contractor, are for use solely with respect to this Project. They are not to be used by the Contractor or any Subcontractor, Sub-subcontractor or material or equipment supplier on other projects or for additions to this Project outside the scope of the Work without the specific written consent of the

2.0

AIA Document A201™ – 1997. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This draft was produced by AIA software at 16:55:36 on 01/28/2008 under Order No.1000178076_1 which expires on 6/25/2008, and is not for resale.
User Notes:                                                                                      (3032463761?)

Owner, Architect and the Architect's consultants. The Contractor, Subcontractors, Sub-subcontractors and material or equipment suppliers are authorized to use and reproduce applicable portions of the Drawings, Specifications and other documents prepared by the Architect and the Architect's consultants appropriate to and for use in the execution of their Work under the Contract Documents. All copies made under this authorization shall bear the statutory copyright notice, if any, shown on the Drawings, Specifications and other documents prepared by the Architect and the Architect's consultants. Submittal or distribution to meet official regulatory requirements or for other purposes in connection with this Project is not to be construed as publication in derogation of the Architect's or Architect's consultants' copyrights or other reserved rights.

§ 1.7 CONFIDENTIALITY/PUBLIC COMMUNICATIONS AND USE AND DISCLOSURE OF PROJECT INFORMATION

§ 1.7.1 Any public communications or disclosure of materials or information with respect to the Project by the Contractor and its employees and Subcontractors, except such as are reasonably necessary to perform the Work, shall be subject to the Owner's prior written approval, including, without limitation, any promotional, marketing, media, or other material or information related to the Owner or the Project.

§ 1.7.2 The Contractor and its employees hereby agrees to indemnify and hold the Owner harmless from and against any cost, damage, liability, loss or claim arising from violation of the foregoing.

ARTICLE 2  OWNER
§ 2.1 GENERAL
§ 2.1.1 The Owner is the person or entity identified as such in the Agreement and is referred to throughout the Contract Documents as if singular in number. The Owner shall designate in writing a representative who shall have express authority to bind the Owner with respect to all matters requiring the Owner's approval or authorization. Except as otherwise provided in Section 4.2.1, the Architect does not have such authority. The term "Owner" means the Owner or the Owner's authorized representative.

§ 2.1.2 The Owner shall furnish to the Contractor within five days after receipt of a written request, information necessary and relevant for the Contractor to evaluate, give notice of or enforce mechanic's lien rights. Such information shall include a correct statement of the record legal title to the property on which the Project is located, usually referred to as the site, and the Owner's interest therein.

§ 2.2 INFORMATION AND SERVICES REQUIRED OF THE OWNER
§ 2.2.1 The Owner shall, at the written request of the Contractor, prior to commencement of the Work and thereafter, furnish to the Contractor reasonable evidence that financial arrangements have been made to fulfill the Owner's obligations under the Contract. Furnishing of such evidence shall be a condition precedent to commencement or continuation of the Work. After such evidence has been furnished, the Owner shall not materially vary such financial arrangements without prior notice to the Contractor.

§ 2.2.2 Except for permits and fees, including those required under Section 3.7.1, which are the responsibility of the Contractor under the Contract Documents, the Owner shall secure and pay for necessary approvals, easements, assessments and charges required for construction, use or occupancy of permanent structures or for permanent changes in existing facilities.

§ 2.2.3 The Owner shall furnish surveys describing physical characteristics, legal limitations and utility locations for the site of the Project, and a legal description of the site. The Contractor shall be entitled to rely on the accuracy of information furnished by the Owner but shall exercise proper precautions relating to the safe performance of the Work.

§ 2.2.4 Information or services required of the Owner by the Contract Documents shall be furnished by the Owner with reasonable promptness. Any other information or services relevant to the Contractor's performance of the Work under the Owner's control shall be furnished by the Owner after receipt from the Contractor of a written request for such information or services.

§ 2.2.5 Unless otherwise provided in the Contract Documents, the Contractor will be furnished, free of charge, such copies of Drawings and Project Manuals as are reasonably necessary for execution of the Work.

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This draft was produced by AIA software at 16:18:38 on 02/23/2009 under Order No.1000147678_1 which expires on 6/28/2009, and is not for resale.
(3218687619)
User Notes:

22

§ 2.3 OWNER'S RIGHT TO STOP THE WORK

§ 2.3.1 If the Contractor fails to correct Work which is not in accordance with the requirements of the Contract Documents as required by Section 12.2 or persistently fails to carry out Work in accordance with the Contract Documents, or fails or refuses to provide a sufficient amount of labor, materials, or equipment so as to be able to complete the Work within the Contract Time or fails to remove and discharge (within sixty (60) days) any lien filed upon the Owner's property by anyone claiming by, thorough, or under the Contractor, or disregards the instructions of the Owner's Rep and/or the Architect when based upon the requirements of the Contract Documents, the Owner may issue a written order to the Contractor to stop the Work, or any portion thereof, until the cause for such order has been eliminated; however, the right of the Owner to stop the Work shall not give rise to a duty on the part of the Owner to exercise this right for the benefit of the Contractor or any other person or entity, except to the extent required by Section 6.1.3.

§ 2.3.1.1 The Owner's rights pursuant to this Section shall be in addition to, and not restrictive of, Owner's rights under Subparagraphs 12.2, 14.2 and 14.3 of these Conditions.

§ 2.3.1.2 If, after consultation with the Owner's Rep, suspension of the Work is warranted by reason of unforeseen conditions that might adversely affect the quality of the Work if such Work were continued, the Owner may suspend the Work by written notice to the Contractor. In such event, the Contract Time shall be adjusted accordingly, and the Contract Sum shall be adjusted to the extent, if any, that additional costs are incurred by reason of such suspension. If the Contractor, in its reasonable judgment, believes that a suspension is warranted by reason of unforeseen circumstances that may adversely affect the quality of the Work if the Work were continued, the Contractor shall immediately notify the Owner in writing of such belief and describe with particularity the reasons therefor.

§ 2.4 OWNER'S RIGHT TO CARRY OUT THE WORK

§ 2.4.1 If the Contractor defaults or neglects to carry out the Work in accordance with the Contract Documents and fails within a seven-day period after receipt of written notice from the Owner to commence and continue correction of such default or neglect with diligence and promptness, the Owner may after such seven-day period give the Contractor a second written notice to correct such deficiencies within a three-day period. If the Contractor within such three-day period after receipt of such second notice fails to commence and continue to correct any deficiencies, the Owner may, without prejudice to other remedies the Owner may have, correct such deficiencies. In such case an appropriate Change Order shall be issued deducting from payments then or thereafter due the Contractor the reasonable cost of correcting such deficiencies, including Owner's expenses and compensation for the Architect's additional services made necessary by such default, neglect or failure. Such action by the Owner and amounts charged to the Contractor are both subject to prior approval of the Architect. If payments then or thereafter due the Contractor are not sufficient to cover such amounts, the Contractor shall pay the difference to the Owner.

§ 2.5 EXTENT OF OWNER'S RIGHTS AND RESPONSIBILITIES

§ 2.5.1 The rights stated in this Article 2 and elsewhere in the Contract Documents are cumulative and not in limitation of any rights of the Owner (1) granted in the Contract Documents, (2) at law or (3) in equity.

§ 2.5.2 In no event shall the Owner have control over, charge of, or any responsibility for construction means, methods, techniques, sequences or procedures or for safety precautions and programs in connection with the Work, notwithstanding any of the rights and authority granted the Owner in the Contract Documents.

ARTICLE 3  CONTRACTOR
§ 3.1 GENERAL

§ 3.1.1 The Contractor is the person or entity identified as such in the Agreement and is referred to throughout the Contract Documents as if singular in number. The term "Contractor" means the Contractor or the Contractor's authorized representative.

§ 3.1.2 The Contractor shall perform the Work in accordance with the Contract Documents.

§ 3.1.3 The Contractor shall not be relieved of obligations to perform the Work in accordance with the Contract Documents either by activities or duties of the Architect in the Architect's administration of the Contract, or by tests, inspections or approvals required or performed by persons other than the Contractor.

AIA Document A201™ – 1997. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987 and 1997 by The American Institute of Architects. ALL rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This draft was produced by AIA software at 16:03:39 on 03/23/2006 under Order No.1000176074_1 which expires on 4/25/2006, and is not for resale.
User Notes:                                                                                    (3032467617)

12

§ 3.2 REVIEW OF CONTRACT DOCUMENTS AND FIELD CONDITIONS BY CONTRACTOR
§ 3.2.1 Since the Contract Documents are complementary, before starting each portion of the Work, the Contractor shall carefully study and compare the various Drawings and other Contract Documents relative to that portion of the Work, as well as the information furnished by the Owner pursuant to Section 2.2.3, shall take field measurements of any existing conditions related to that portion of the Work and shall observe any conditions at the site effecting it. These obligations are for the purpose of facilitating construction by the Contractor and are not for the purpose of discovering errors, omissions, or inconsistencies in the Contract Documents; however, any errors, inconsistencies or omissions discovered by the Contractor shall be reported promptly to the Architect as a request for information in such form as the Architect may require.

§ 3.2.2 Any design errors or omissions noted by the Contractor during this review shall be reported promptly to the Architect, but it is recognized that the Contractor's review is made in the Contractor's capacity as a contractor and not as a licensed design professional unless otherwise specifically provided in the Contract Documents. The Contractor is not required to ascertain that the Contract Documents are in accordance with applicable laws, statutes, ordinances, building codes, and rules and regulations, but any nonconformity discovered by or made known to the Contractor shall be reported promptly to the Architect.

§ 3.2.3 If the Contractor believes that additional cost or time is involved because of clarifications or instructions issued by the Architect in response to the Contractor's notices or requests for information pursuant to Sections 3.2.1 and 3.2.2, the Contractor shall make Claims as provided in Sections 4.3.6 and 4.3.7. If the Contractor fails to perform the obligations of Sections 3.2.1 and 3.2.2, the Contractor shall pay such costs and damages to the Owner as would have been avoided if the Contractor had performed such obligations. The Contractor shall not be liable to the Owner or Architect for damages resulting from errors, inconsistencies or omissions in the Contract Documents or for differences between field measurements or conditions and the Contract Documents unless the Contractor recognized or should have recognized such error, inconsistency, omission or difference and knowingly failed to report it promptly in writing to the Owner or Architect.

§ 3.2.4 Should the Contractor perform any construction activity with actual knowledge it involves an error, inconsistency or omission in the Contract Documents without such written notice to the Owner, it will assume appropriate responsibility for such performance and shall bear all costs for correction; further, should any words or numbers that are necessary for a clear understanding of the Work be illegible or omitted, or should an error, or discrepancy occur in any of the Contract Documents, the Contractor shall immediately notify the Owner in writing of such omission, error or discrepancy.

§ 3.3 SUPERVISION AND CONSTRUCTION PROCEDURES
§ 3.3.1 The Contractor shall supervise and direct the Work, using the Contractor's best skill and attention. The Contractor shall be solely responsible for and have control over construction means, methods, techniques, sequences and procedures and for coordinating all portions of the Work under the Contract, unless the Contract Documents give other specific instructions concerning these matters. If the Contract Documents give specific instructions concerning construction means, methods, techniques, sequences or procedures, the Contractor shall evaluate the jobsite safety thereof and, except as stated below, shall be fully and solely responsible for such means, methods, techniques, sequences or procedures. If the Contractor determines that such means, methods, techniques, sequences or procedures may not be safe, the Contractor shall give timely written notice to the Owner and Architect and shall not proceed with that portion of the Work without further written instructions from the Architect. If the Contractor is then instructed to proceed with the required means, methods, techniques, sequences or procedures without acceptance of changes proposed by the Contractor, the Owner shall be solely responsible for any resulting loss or damage.

§ 3.3.1.1 All loss, damage or liability, or cost of correcting defective work arising from the employment of any construction means, methods, techniques, sequences or procedures shall be borne by the Contractor, notwithstanding that such construction means, methods, techniques, sequences or procedures are referred to, indicated or implied by the Contract Documents.

§ 3.3.2 The Contractor shall be responsible to the Owner for acts and omissions of the Contractor's employees, Subcontractors and their agents and employees, and other persons or entities performing portions of the Work for or on behalf of the Contractor or any of its Subcontractors.

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This draft was produced by AIA software at 14:28:38 on 05/25/2005 under Order No.2888278076_5 which expires on 6/28/2006, and is not for resale.
User Notes:                                                                                                  (2013664761?)

3.2

§ 3.3.3 The Contractor shall be responsible for inspection of portions of Work already performed to determine that such portions are in proper condition to receive subsequent Work.

§ 3.4 LABOR AND MATERIALS
§ 3.4.1 Unless otherwise provided in the Contract Documents, the Contractor shall provide and pay for labor, materials, equipment, tools, construction equipment and machinery, water, heat, utilities, transportation, and other facilities, equipment and services necessary for proper execution and completion of the Work, whether temporary or permanent and whether or not incorporated or to be incorporated in the Work.

§ 3.4.2 The Contractor may make substitutions only with the written consent of the Owner, after evaluation by the Architect and in accordance with a Change Order, which consent shall not be reasonably withheld.

§ 3.4.3 The Contractor shall enforce strict discipline and good order among the Contractor's employees and other persons carrying out the Contract. The Contractor shall not permit employment of unfit persons or persons not skilled in tasks assigned to them. Should any disorderly, incompetent or objectionable person be hired or employed by the Contractor, upon or about the premises of the Owner, for any purpose or in any capacity, he/she shall, upon request of the Owner, be removed from the Project and not again assigned thereto without written permission of the Architect or Owner.

§ 3.4.4 The Contract Documents are intended to produce a building of consistent character and quality of design.

§ 3.5 WARRANTY
§ 3.5.1 The Contractor warrants to the Owner and Architect that materials and equipment furnished under the Contract will be of good quality and new unless otherwise required or permitted by the Contract Documents, that the Work will be free from defects not inherent in the quality required or permitted, and that the Work will conform to the requirements of the Contract Documents. Work not conforming to these requirements, including substitutions not properly approved and authorized, may be considered defective. The Contractor's warranty excludes remedy for damage or defect caused by abuse, modifications not executed by the Contractor, improper or insufficient maintenance, improper operation, or normal wear and tear and normal usage. If required by the Architect, the Contractor shall furnish satisfactory evidence as to the kind and quality of materials and equipment.

§ 3.5.2 The warranty provided in this Section 3.5 shall be in addition to and not in limitation of any other warranty required by the Contract Documents or otherwise prescribed by law.

§ 3.5.3 In addition to any other warranties and guarantees, Contractor shall furnish maintenance and 24-hour call-back service for the equipment provided by it for a period of three (3) months after final completion and acceptance of the work. This work shall include all necessary adjustments, greasing, oiling, cleaning, supplies, and parts to keep the equipment in proper operation except such parts made necessary by misuse, accidents, or negligence not caused by the Contractor or any of its Subcontractors.

§ 3.5.4 The Contractor agree to assign to the Owner at the time of Final Completion of the Work, any and all manufacturer's warranties relating to materials and labor used in the Work and further agrees to perform the Work in such manner so as to preserve any and all such manufacturer's warranties.

§ 3.5.5 The Contractor warrants good and legal title to all materials, supplies and equipment installed or incorporated into the Work.

§ 3.6 TAXES
§ 3.6.1 The Contractor shall pay sales, consumer, use and similar taxes for the Work provided by the Contractor which are legally enacted when bids are received or negotiations concluded, whether or not yet effective or merely scheduled to go into effect.

§ 3.7 PERMITS, FEES AND NOTICES
§ 3.7.1 Unless otherwise provided in the Contract Documents, the Contractor shall secure and pay for the building permit and other permits and governmental fees, licenses and inspections necessary for proper execution and completion of the Work which are customarily secured after execution of the Contract and which are legally required when bids are received or negotiations concluded.

AIA Document A201™ – 1997. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This draft was produced by AIA software at 16:38:30 on 01/23/2009 under Order No.1000707878_1 which expires on 6/30/2009, and is not for resale.
User Notes:                                                                                         (3832657617)

14

§ 3.7.2 The Contractor shall comply with and give notices required by laws, ordinances, rules, regulations and lawful orders of public authorities applicable to performance of the Work.

If the Contractor fails to give such notices, it shall be liable for and shall indemnify and hold harmless the Owner, its employees, officers and agents against any resulting fines, penalties, judgments or damages, including reasonable attorney's fees imposed on, or incurred by, the parties indemnified hereunder.

Contractor shall pay any costs or fees incurred in such compliance and any fines or penalties imposed for violation thereof, and any costs or fees incurred by Owner due to any such violation.

§ 3.7.3 It is not the Contractor's responsibility to ascertain that the Contract Documents are in accordance with applicable laws, statutes, ordinances, building codes, and rules and regulations. However, if the Contractor observes that portions of the Contract Documents are at variance therewith, the Contractor shall promptly notify the Architect and Owner in writing, and necessary changes shall be accomplished by appropriate Modification.

§ 3.7.4 If the Contractor performs Work with actual knowledge it is contrary to laws, statutes, ordinances, building codes, and rules and regulations without such notice to the Architect and Owner, the Contractor shall assume appropriate responsibility for such Work and shall bear the costs attributable to correction.

§ 3.7.5 The Contractor shall secure approval of and comply with requirements of all authorities having jurisdiction over the construction and deliver certificate of approval to the Architect, and shall prepare all documents, including drawings, necessary to secure such approval.

§ 3.7.6 In the event any violations are placed upon the premises by any public authority as a result of the fault of the Contractor or any Subcontractors, the Contractor shall be solely responsible therefor and shall bear all costs attributable thereto.

Final payment in an amount sufficient to correct such violations as determined by the Owner shall be withheld until all such violations are cured of record.

§ 3.8 ALLOWANCES
§ 3.8.1 The Contractor shall include in the Contract Sum all allowances stated in the Contract Documents. Items covered by allowances shall be supplied for such amounts and by such persons or entities as the Owner may direct, but the Contractor shall not be required to employ persons or entities to whom the Contractor has reasonable objection.

§ 3.8.2 Unless otherwise provided in the Contract Documents:

.1 allowances shall cover the cost to the Contractor of materials and equipment delivered at the site and all required taxes, less applicable trade discounts;

.2 Contractor's costs for unloading and handling at the site, labor, installation costs, overhead, profit and other expenses contemplated for stated allowance amounts shall be included in the Contract Sum but not in the allowances;

.3 whenever costs are more than or less than allowances, the Contract Sum shall be adjusted accordingly by Change Order. The amount of the Change Order shall reflect (1) the difference between actual costs and the allowances under Section 3.8.2.1 and (2) changes in Contractor's costs under Section 3.8.2.2.

§ 3.8.3 Materials and equipment under an allowance shall be selected by the Owner in sufficient time to avoid delay in the Work.

§ 3.9 SUPERINTENDENT
§ 3.9.1 The Contractor shall employ a competent superintendent and necessary assistants who shall be in attendance at the Project site during performance of the Work. The superintendent shall represent the Contractor, and important communications given to the superintendent shall be as binding as if given to the Contractor. Other communications shall be similarly confirmed on written request in each case.

15

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This draft was produced by AIA software at 16:16:29 on 03/26/2008 under Order No.1000175075_1 which expires on 6/25/2008, and is not for resale.
User Notes:                                                                                    (3012657617)

§ 3.10 CONTRACTOR'S CONSTRUCTION SCHEDULES

§ 3.10.1 The Contractor, promptly after being awarded the Contract, shall prepare and submit for the Owner's and Architect's information a Contractor's construction schedule for the Work. The schedule shall not exceed time limits current under the Contract Documents, shall be revised at appropriate intervals as required by the conditions of the Work and Project, shall be related to the entire Project to the extent required by the Contract Documents, and shall provide for expeditious and practicable execution of the Work. The term of the job shall be sixteen months with one additional month to obtain certificate of occupancy and the schedule will start as indicated on a letter to proceed from the Owner.

§ 3.10.2 The Contractor shall prepare and keep current, for the Owner's and/or Architect's approval, a schedule of submittals which is coordinated with the Contractor's construction schedule and allows the Architect reasonable time to review submittals.

§ 3.10.3 The Contractor shall perform the Work in general accordance with the most recent schedules submitted to the Owner and Architect.

§ 3.10.4 The Owner reserves the right to direct a postponement or rescheduling of any date or time for the performance of any part of the Work that might interfere with the operation of the Owner's premises or any tenants or invitees thereof, and the Owner shall be responsible for any and all delays, extensions of the Contract Time or increases in the Contract Sum necessitated by such postponements or re-schedulings for which the Contractor is not at all responsible.

§ 3.11 DOCUMENTS AND SAMPLES AT THE SITE

§ 3.11.1 The Contractor shall maintain at the site for the Owner one record copy of the Drawings, Specifications, Addenda, Change Orders and other Modifications, in good order and marked currently to record field changes and selections made during construction, and one record copy of approved Shop Drawings, Product Data, Samples and similar required submittals. These shall be available to the Architect and shall be delivered to the Architect for submittal to the Owner upon completion of the Work.

§ 3.12 SHOP DRAWINGS, PRODUCT DATA AND SAMPLES

§ 3.12.1 Shop Drawings are drawings, diagrams, schedules and other data specially prepared for the Work by the Contractor or a Subcontractor, Sub-subcontractor, manufacturer, supplier or distributor to illustrate some portion of the Work.

§ 3.12.2 Product Data are illustrations, standard schedules, performance charts, instructions, brochures, diagrams and other information furnished by the Contractor to illustrate materials or equipment for some portion of the Work.

§ 3.12.3 Samples are physical examples which illustrate materials, equipment and workmanship and establish standards by which the Work will be judged.

§ 3.12.4 Shop Drawings, Product Data, Samples and similar submittals are not Contract Documents. The purpose of their submittal is to demonstrate for those portions of the Work for which submittals are required by the Contract Documents the way by which the Contractor proposes to conform to the information given and the design concept expressed in the Contract Documents. Review by the Architect is subject to the limitations of Section 4.2.7. Informational submittals upon which the Architect is not expected to take responsive action may be so identified in the Contract Documents. Submittals which are not required by the Contract Documents may be returned by the Architect without action.

§ 3.12.5 The Contractor shall review for compliance with the Contract Documents, approve and submit to the Architect Shop Drawings, Product Data, Samples and similar submittals required by the Contract Documents with reasonable promptness and in such sequence as to cause no delay in the Work or in the activities of the Owner or of separate contractors. Submittals which are not marked as reviewed for compliance with the Contract Documents and approved by the Contractor may be returned by the Architect without action.

§ 3.12.6 By approving and submitting Shop Drawings, Product Data, Samples and similar submittals, the Contractor represents that the Contractor has determined and verified materials, field measurements and field construction

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This draft was produced by AIA software at 14:25:28 on 03/25/2008 under Order No.1000147076_1 which expires on 4/30/2008, and is not for resale.

User Notes:

(2012057637)

criteria related thereto, or will do so, and has checked and coordinated the information contained within such submittals with the requirements of the Work and of the Contract Documents.

§ 3.12.6.1 Should the Contractor elect to release work without approvals, same shall be at its own risk and expense.

§ 3.12.7 The Contractor shall perform no portion of the Work for which the Contract Documents require submittal and review of Shop Drawings, Product Data, Samples or similar submittals until the respective submittal has been approved by the Architect.

§ 3.12.8 The Work shall be in accordance with approved submittals except that the Contractor shall not be relieved of responsibility for deviations from requirements of the Contract Documents by the Architect's approval of Shop Drawings, Product Data, Samples or similar submittals unless the Contractor has specifically informed the Architect in writing of such deviation at the time of submittal and (1) the Architect has given written approval to the specific deviation as a minor change in the Work, or (2) a Change Order or Construction Change Directive has been issued authorizing the deviation. The Contractor shall not be relieved of responsibility for errors or omissions in Shop Drawings, Product Data, Samples or similar submittals by the Architect's approval thereof.

§ 3.12.9 The Contractor shall direct specific attention, in writing or on resubmitted Shop Drawings, Product Data, Samples or similar submittals, to revisions other than those requested by the Architect on previous submittals. In the absence of such written notice the Architect's approval of a resubmission shall not apply to such revisions.

§ 3.12.10 The Contractor shall not be required to provide professional services which constitute the practice of architecture or engineering unless such services are specifically required by the Contract Documents for a portion of the Work or unless the Contractor needs to provide such services in order to carry out the Contractor's responsibilities for construction means, methods, techniques, sequences and procedures. The Contractor shall not be required to provide professional services in violation of applicable law. If professional design services or certifications by a design professional related to systems, materials or equipment are specifically required of the Contractor by the Contract Documents, the Owner and the Architect will specify all performance and design criteria that such services must satisfy. The Contractor shall cause such services or certifications to be provided by a properly licensed design professional, whose signature and seal shall appear on all drawings, calculations, specifications, certifications, Shop Drawings and other submittals prepared by such professional. Shop Drawings and other submittals related to the Work designed or certified by such professional, if prepared by others, shall bear such professional's written approval when submitted to the Architect. The Owner and the Architect shall be entitled to rely upon the adequacy, accuracy and completeness of the services, certifications or approvals performed by such design professionals, provided the Owner and Architect have specified to the Contractor all performance and design criteria that such services must satisfy. Pursuant to this Section 3.12.10, the Architect will review, approve or take other appropriate action on submittals only for the limited purpose of checking for conformance with information given and the design concept expressed in the Contract Documents. The Contractor shall not be responsible for the adequacy of the performance or design criteria required by the Contract Documents.

§ 3.13 USE OF SITE
§ 3.13.1 The Contractor shall confine operations at the site to areas permitted by law, ordinances, permits and the Contract Documents and shall not unreasonably encumber the site with materials or equipment.

§ 3.13.2 The right of possession of the premises shall remain at all times with the Owner.

The Contractor's right to entry and use thereof arises solely from the permission granted by the Owner under the Contract Documents.

§ 3.13.3 It is the responsibility of the Contractor to provide necessary and required security measures to adequately safeguard the construction site from vandalism and intrusion of unauthorized persons.

§ 3.14 CUTTING AND PATCHING
§ 3.14.1 The Contractor shall be responsible for cutting, fitting or patching required to complete the Work or to make its parts fit together properly.

17

AIA Document A201™ – 2007, Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This draft was produced by AIA software at 14:58:30 on 07/30/2008 under Order No.1000149576_1 which expires on 4/22/2009, and is not for resale.
User Notes: (1012657627)

§ 3.14.2 The Contractor shall not damage or endanger a portion of the Work or fully or partially completed construction of the Owner or separate contractor by cutting, patching or otherwise altering such construction, or by excavation. The Contractor shall not cut or otherwise alter such construction by the Owner or a separate contractor except with written consent of the Owner and of such separate contractor; such consent shall not be unreasonably withheld. The Contractor shall not unreasonably withhold from the Owner or a separate contractor the Contractor's consent to cutting or otherwise altering the Work.

§ 3.15 CLEANING UP
§ 3.15.1 The Contractor shall keep the premises and surrounding area free from accumulation of waste materials or rubbish caused by operations under the Contract. At completion of the Work, the Contractor shall remove from and about the Project waste materials, rubbish, the Contractor's tools, construction equipment, machinery and surplus materials.

§ 3.15.2 If the Contractor fails to clean up as provided in the Contract Documents, the Owner may do so and the cost thereof shall be charged to the Contractor.

§ 3.16 ACCESS TO WORK
§ 3.16.1 The Contractor shall provide the Owner and Architect access to the Work in preparation and progress wherever located.

§ 3.17 ROYALTIES, PATENTS AND COPYRIGHTS
§ 3.17.1 The Contractor shall pay all royalties and license fees. The Contractor shall defend suits or claims for infringement of copyrights and patent rights and shall hold the Owner and Architect harmless from loss on account thereof, but shall not be responsible for such defense or loss when a particular design, process or product of a particular manufacturer or manufacturers is required by the Contract Documents or where the copyright violations are contained in Drawings, Specifications or other documents prepared by the Owner or Architect. However, if the Contractor has actual knowledge that the required design, process or product is an infringement of a copyright or a patent, the Contractor shall be responsible for such loss unless such information is promptly furnished to the Architect.

§ 3.18 INDEMNIFICATION
§ 3.18.1 To the fullest extent permitted by law and to the extent claims, damages, losses or expenses are not covered by Project Management Protective Liability insurance purchased by the Contractor in accordance with Section 11.3, the Contractor shall indemnify and hold harmless the Owner, Architect, Architect's consultants, and agents and employees of any of them from and against claims, damages, losses and expenses, including but not limited to attorneys' fees, arising out of or resulting from performance of the Work, provided that such claim, damage, loss or expense is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the Work itself), but only to the extent caused by the negligent acts or omissions of the Contractor, a Subcontractor, anyone directly or indirectly employed by them or anyone for whose acts they may be liable. Such obligation shall not be construed to negate, abridge, or reduce other rights or obligations of indemnity which would otherwise exist as to a party or person described in this Section 3.18.

§ 3.18.2 In claims against any person or entity indemnified under this Section 3.18 by an employee of the Contractor, a Subcontractor, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, the indemnification obligation under Section 3.18.1 shall not be limited by a limitation on amount or type of damages, compensation or benefits payable by or for the Contractor or a Subcontractor under workers' compensation acts, disability benefit acts or other employee benefit acts.

ARTICLE 4   ADMINISTRATION OF THE CONTRACT
§ 4.1 ARCHITECT
§ 4.1.1 The Architect is the person lawfully licensed to practice architecture or an entity lawfully practicing architecture identified as such in the Agreement and is referred to throughout the Contract Documents as if singular in number. The term "Architect" means the Architect or the Architect's authorized representative.

§ 4.1.2 Duties, responsibilities and limitations of authority of the Architect as set forth in the Contract Documents shall not be restricted, modified or extended without written consent of the Owner, Contractor and Architect. Consent shall not be unreasonably withheld.

5.8

AIA Document A201™ - 1997. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This draft was produced by AIA software at 14:38:30 on 03/23/2006 under Order No.1000178681_1 which expires on 6/22/2006, and is not for resale.                    (2022076191)

§ 4.1.3 If the employment of the Architect is terminated, the Owner shall employ a new Architect whose status under the Contract Documents shall be that of the former Architect. The Owner shall bear all responsibility for the selection of a new Architect in the event that the original Architect is terminated

§ 4.2 ARCHITECT'S ADMINISTRATION OF THE CONTRACT
§ 4.2.1 The Architect will provide administration of the Contract as described in the Contract Documents, and will be an Owner's representative (1) during construction, (2) until final payment is due and (3) with the Owner's concurrence, from time to time during the one-year period for correction of Work described in Section 12.2. The Architect will have authority to act on behalf of the Owner only to the extent provided in the Contract Documents, unless otherwise modified in writing in accordance with other provisions of the Contract.

§ 4.2.2 The Architect, as a representative of the Owner, will visit the site at intervals appropriate to the stage of the Contractor's operations (1) to become generally familiar with and to keep the Owner informed about the progress and quality of the portion of the Work completed, (2) to endeavor to guard the Owner against defects and deficiencies in the Work, and (3) to determine in general if the Work is being performed in a manner indicating that the Work, when fully completed, will be in accordance with the Contract Documents. However, the Architect will not be required to make exhaustive or continuous on-site inspections to check the quality or quantity of the Work. The Architect will neither have control over or charge of, nor be responsible for, the construction means, methods, techniques, sequences or procedures, or for the safety precautions and programs in connection with the Work, since these are solely the Contractor's rights and responsibilities under the Contract Documents, except as provided in Section 3.3.1.

§ 4.2.3 The Architect will not be responsible for the Contractor's failure to perform the Work in accordance with the requirements of the Contract Documents. The Architect will not have control over or charge of and will not be responsible for acts or omissions of the Contractor, Subcontractors, or their agents or employees, or any other persons or entities performing portions of the Work.

§ 4.2.4 Communications Facilitating Contract Administration. Except as otherwise provided in the Contract Documents or when direct communications have been specially authorized, the Owner and Contractor shall endeavor to communicate with each other through the Architect about matters arising out of or relating to the Contract. Communications by and with the Architect's consultants shall be through the Architect. Communications by and with Subcontractors and material suppliers shall be through the Contractor. Communications by and with separate contractors shall be through the Owner.

§ 4.2.5 Based on the Architect's evaluations of the Contractor's Applications for Payment, the Architect will review and certify the amounts due the Contractor and will issue Certificates for Payment in such amounts.

§ 4.2.6 The Architect will have authority to reject Work that does not conform to the Contract Documents. Whenever the Architect considers it necessary or advisable, the Architect will have authority to require inspection or testing of the Work in accordance with Sections 13.5.2 and 13.5.3, whether or not such Work is fabricated, installed or completed. However, neither this authority of the Architect nor a decision made in good faith either to exercise or not to exercise such authority shall give rise to a duty or responsibility of the Architect to the Contractor, Subcontractors, material and equipment suppliers, their agents or employees, or other persons or entities performing portions of the Work.

§ 4.2.7 The Architect will review and approve or take other appropriate action upon the Contractor's submittals such as Shop Drawings, Product Data and Samples, but only for the limited purpose of checking for conformance with information given and the design concept expressed in the Contract Documents. The Architect's action will be taken within ten (10) days so as to cause no delay in the Work or in the activities of the Owner, Contractor or separate contractors, while allowing sufficient time in the Architect's professional judgment to permit adequate review. Review of such submittals is not conducted for the purpose of determining the accuracy and completeness of other details such as dimensions and quantities, or for substantiating instructions for installation or performance of equipment or systems, all of which remain the responsibility of the Contractor as required by the Contract Documents. The Architect's review of the Contractor's submittals shall not relieve the Contractor of the obligations under Sections 3.3, 3.5 and 3.12. The Architect's review shall not constitute approval of safety precautions or, unless otherwise specifically stated by the Architect, of any construction means, methods, techniques, sequences or procedures. The Architect's approval of a specific item shall not indicate approval of an assembly of which the item is a component. Upon receipt of shop drawings, Architect shall approve or disapprove within ten days.

2.9

AIA Document A201™ - 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This draft was produced by AIA software at 16:15:35 on 05/22/2008 under Order No.1000176573_1 which expires on 4/26/2008, and is not for resale.
User Notes:                                                                                              (1813647517)

§ 4.2.6 The Architect will prepare Change Orders and Construction Change Directives, and may authorize minor changes in the Work as provided in Section 7.4.

§ 4.2.8 The Architect will conduct inspections to determine the date or dates of Substantial Completion and the date of final completion, will receive and forward to the Owner, for the Owner's review and records, written warranties and related documents required by the Contract and assembled by the Contractor, and will issue a final Certificate for Payment upon compliance with the requirements of the Contract Documents.

§ 4.2.10 If the Owner and Architect agree, the Architect will provide one or more project representatives to assist in carrying out the Architect's responsibilities at the site. The duties, responsibilities and limitations of authority of such project representatives shall be as set forth in an exhibit to be incorporated in the Contract Documents.

§ 4.2.11 The Architect will interpret and decide matters concerning performance under and requirement of, the Contract Documents on written request of either the Owner or Contractor. The Architect's response to such requests will be made in writing within any time limits agreed upon or otherwise with reasonable promptness. If no agreement is made concerning the time within which interpretations required of the Architect shall be furnished in compliance with this Section 4.2, then delay shall not be recognized on account of failure by the Architect to furnish such interpretations until 15 days after written request is made for them.

§ 4.2.12 Interpretations and decisions of the Architect will be consistent with the intent of and reasonably inferable from the Contract Documents and will be in writing or in the form of drawings. When making such interpretations and initial decisions, the Architect will endeavor to secure faithful performance by both Owner and Contractor, will not show partiality to either and will not be liable for results of interpretations or decisions so rendered in good faith.

§ 4.2.13 The Architect's decisions on matters relating to aesthetic effect will be final if consistent with the intent expressed in the Contract Documents.

§ 4.3 CLAIMS AND DISPUTES
§ 4.3.1 Definitions.  A Claim is a demand or assertion by one of the parties seeking, as a matter of right, adjustment or interpretation of Contract terms, payment of money, extension of time or other relief with respect to the terms of the Contract. The term "Claim" also includes other disputes and matters in question between the Owner and Contractor arising out of or relating to the Contract. Claims must be initiated by written notice. The responsibility to substantiate Claims shall rest with the party making the Claim.

§ 4.3.2 Time Limits on Claims. Claims by either party must be initiated within 21 days after occurrence of the event giving rise to such Claim or within 21 days after the claimant first recognizes, or should have reasonably recognized, the condition giving rise to the Claim, whichever is later. Claims must be initiated by written notice to the Architect and the other party.

§ 4.3.3 Continuing Contract Performance. Pending final resolution of a Claim except as otherwise agreed in writing or as provided in Section 9.7.1 and Article 14, the Contractor shall proceed diligently with performance of the Contract and the Owner shall continue to make payments in accordance with the Contract Documents.

§ 4.3.4 Claims for Concealed or Unknown Conditions. If conditions are encountered at the site which are (1) subsurface or otherwise concealed physical conditions which differ materially from those indicated in the Contract Documents or (2) unknown physical conditions of an unusual nature, which differ materially from those ordinarily found to exist and generally recognized as inherent in construction activities of the character provided for in the Contract Documents, then notice by the observing party shall be given to the other party promptly before conditions are disturbed and in no event later than 21 days after first observance of the conditions. The Architect will promptly investigate such conditions and, if they differ materially and cause an increase or decrease in the Contractor's cost of, or time required for, performance of any part of the Work, will recommend an equitable adjustment in the Contract Sum or Contract Time, or both. If the Architect determines that the conditions at the site are not materially different from those indicated in the Contract Documents and that no change in the terms of the Contract is justified, the Architect shall so notify the Owner and Contractor in writing, stating the reasons. Claims by either party in opposition to such determination must be made within 21 days after the Architect has given notice of the decision. If the conditions encountered are materially different, the Contract Sum and Contract Time shall be equitably adjusted, but if the Owner and Contractor cannot agree on an adjustment in the Contract Sum or Contract Time, the

AIA Document A201™ – 1997. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This draft was produced by AIA software at 16:58:29 on 08/03/2005 under Order No.1000178590_1 which expires on 6/28/2006, and is not for resale.
User Notes:                                                                                          (3632067817)

adjustment shall be referred to the Architect for initial determination, subject to further proceedings pursuant to Section 4.4.

§ 4.3.5 Claims for Additional Cost. If the Contractor wishes to make Claim for an increase in the Contract Sum, written notice as provided herein shall be given before proceeding to execute the Work. Prior notice is not required for Claims relating to an emergency endangering life or property arising under Section 10.6.

§ 4.3.6 If the Contractor believes additional cost is involved for reasons including but not limited to (1) a written interpretation from the Architect, (2) an order by the Owner to stop the Work where the Contractor was not at fault, (3) a written order for a minor change in the Work issued by the Architect, (4) failure of payment by the Owner, (5) termination of the Contract by the Owner, (6) Owner's suspension or (7) other reasonable grounds, Claim shall be filed in accordance with this Section 4.3.

§ 4.3.7 Claims for Additional Time
§ 4.3.7.1 If the Contractor wishes to make Claim for an increase in the Contract Time, written notice as provided herein shall be given. The Contractor's Claim shall include an estimate of cost and of probable effect of delay on progress of the Work. In the case of a continuing delay only one Claim is necessary.

§ 4.3.7.2 If adverse weather conditions are the basis for a Claim for additional time, such Claim shall be documented by data substantiating that weather conditions were abnormal for the period of time, could not have been reasonably anticipated and had an adverse effect on the scheduled construction.

§ 4.3.8 Injury or Damage to Person or Property. If either party to the Contract suffers injury or damage to person or property because of an act or omission of the other party, or of others for whose acts such party is legally responsible, written notice of such injury or damage, whether or not insured, shall be given to the other party within a reasonable time not exceeding 21 days after discovery. The notice shall provide sufficient detail to enable the other party to investigate the matter.

§ 4.3.9 If unit prices are stated in the Contract Documents or subsequently agreed upon, and if quantities originally contemplated are materially changed in a proposed Change Order or Construction Change Directive so that application of such unit prices to quantities of Work proposed will cause substantial inequity to the Owner or Contractor, the applicable unit prices shall be equitably adjusted.

§ 4.3.10 Claims for Consequential Damages. The Contractor and Owner waive Claims against each other for consequential damages arising out of or relating to this Contract. This mutual waiver includes:

.1 damages incurred by the Owner for rental expenses, for losses of use, income, profit, financing, business and reputation, and for loss of management or employee productivity or of the services of such persons; and

.2 damages incurred by the Contractor for principal office expenses including the compensation of personnel stationed there, for losses of financing, business and reputation, and for loss of profit except anticipated profit arising directly from the Work.

This mutual waiver is applicable, without limitation, to all consequential damages due to either party's termination in accordance with Article 14. Nothing contained in this Section 4.3.10 shall be deemed to preclude an award of liquidated direct damages, when applicable, in accordance with the requirements of the Contract Documents.

§ 4.4 RESOLUTION OF CLAIMS AND DISPUTES
§ 4.4.1 Decision of Architect. Claims, including those alleging an error or omission by the Architect but excluding those arising under Sections 10.3 through 10.5, shall be referred initially to the Architect for decision. An initial decision by the Architect shall be required as a condition precedent to mediation, arbitration or litigation of all Claims between the Contractor and Owner arising prior to the date final payment is due, unless 30 days have passed after the Claim has been referred to the Architect with no decision having been rendered by the Architect. The Architect will not decide disputes between the Contractor and persons or entities other than the Owner.

§ 4.4.2 The Architect will review Claims and within ten days of the receipt of the Claim take one or more of the following actions: (1) request additional supporting data from the claimant or a response with supporting data from the other party, (2) reject the Claim in whole or in part, (3) approve the Claim, (4) suggest a compromise, or (5) advise the parties that the Architect is unable to resolve the Claim if the Architect lacks sufficient information to

AIA Document A201™ – 1997. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This draft was produced by AIA software at 10:15:36 on 03/22/2006 under Order No.1000176070_1 which expires on 6/26/2006, and is not for resale.                (1013076817)

21.

evaluate the merits of the Claim or if the Architect concludes that, in the Architect's sole discretion, it would be inappropriate for the Architect to resolve the Claim.

§ 4.6.3 In evaluating Claims, the Architect may, but shall not be obligated to, consult with or seek information from either party or from persons with special knowledge or expertise who may assist the Architect in rendering a decision. The Architect may request the Owner to authorize retention of such persons at the Owner's expense.

§ 4.6.4 If the Architect requests a party to provide a response to a Claim or to furnish additional supporting data, such party shall respond, within ten days after receipt of such request, and shall either provide a response on the requested supporting data, advise the Architect when the response or supporting data will be furnished or advise the Architect that no supporting data will be furnished. Upon receipt of the response or supporting data, if any, the Architect will either reject or approve the Claim in whole or in part.

§ 4.6.5 The Architect will approve or reject Claims by written decision, which shall state the reasons therefor and which shall notify the parties of any change in the Contract Sum or Contract Time or both. The approval or rejection of a Claim by the Architect shall be final and binding on the parties but subject to mediation and arbitration.

§ 4.6.6 When a written decision of the Architect states that (1) the decision is final but subject to mediation and arbitration and (2) a demand for arbitration of a Claim covered by such decision must be made within 30 days after the date on which the party making the demand receives the final written decision, then failure to demand arbitration within said 30 days' period shall result in the Architect's decision becoming final and binding upon the Owner and Contractor. If the Architect renders a decision after arbitration proceedings have been initiated, such decision may be entered as evidence, but shall not supersede arbitration proceedings unless the decision is acceptable to all parties concerned.

§ 4.6.7 Upon receipt of a Claim against the Contractor or at any time thereafter, the Architect or the Owner may, but is not obligated to, notify the surety, if any, of the nature and amount of the Claim. If the Claim relates to a possibility of a Contractor's default, the Architect or the Owner may, but is not obligated to, notify the surety and request the surety's assistance in resolving the controversy.

§ 4.6.8 If a Claim relates to or is the subject of a mechanic's lien, the party asserting such Claim may proceed in accordance with applicable law to comply with the lien notice or filing deadlines prior to resolution of the Claim by the Architect, by mediation or by arbitration.

§ 4.6 MEDIATION
§ 4.6.1 Any Claim arising out of or related to the Contract, except Claims relating to aesthetic effect and except those waived as provided for in Sections 4.3.10, 9.10.4 and 9.10.5 shall, after initial decision by the Architect or 30 days after submission of the Claim to the Architect, be subject to mediation as a condition precedent to the institution of legal or equitable proceedings by either party.

§ 4.6.2 The parties shall endeavor to resolve their Claims by mediation which, unless the parties mutually agree otherwise, shall be in accordance with the Construction Industry Mediation Rules of the American Arbitration Association currently in effect. Request for mediation shall be filed in writing with the other party to the Contract and with the American Arbitration Association. The request may be made concurrently with the filing of a demand for arbitration but, in such event, mediation shall proceed in advance of arbitration or legal or equitable proceedings, which shall be stayed pending mediation for a period of 60 days from the date of filing, unless stayed for a longer period by agreement of the parties or court order.

§ 4.6.3 The parties shall share the mediator's fee and any filing fees equally. The mediation shall be held in the place where the Project is located, unless another location is mutually agreed upon. Agreements reached in mediation shall be enforceable as settlement agreements in any court having jurisdiction thereof.


ARTICLE 5  SUBCONTRACTORS
§ 5.1 DEFINITIONS
§ 5.1.1 A Subcontractor is a person or entity who has a direct contract with the Contractor to perform a portion of the Work at the site or to otherwise furnish labor, material or other services. The term "Subcontractor" is referred to throughout the Contract Documents as if singular in number and means a Subcontractor or an authorized

AIA Document A201™ - 1997. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This draft was produced by AIA software at 16:16:59 on 02/23/2006 under Order No.1000119070_2 which expires on 6/26/2006, and is not for resale.
User Notes: (3832684829)

22

representative of the Subcontractor. The term "Subcontractor" does not include a separate contractor or subcontractors of a separate contractor.

§ 5.1.2 A Sub-subcontractor is a person or entity who has a direct or indirect contract with a Subcontractor to perform a portion of the Work at the site or to otherwise furnish labor, material or other services. The term "Sub-subcontractor" is referred to throughout the Contract Documents as if singular in number and means a Sub-subcontractor or an authorized representative of the Sub-subcontractor.

§ 5.2 AWARD OF SUBCONTRACTS AND OTHER CONTRACTS FOR PORTIONS OF THE WORK
§ 5.2.1 Unless otherwise stated in the Contract Documents or the bidding requirements, the Contractor, as soon as practicable after award of the Contract, shall furnish in writing to the Owner through the Architect the names of persons or entities (including those who are to furnish materials or equipment fabricated to a special design) proposed for each principal portion of the Work. The Architect will promptly reply to the Contractor in writing stating whether or not the Owner or the Architect, after due investigation, has reasonable objection to any such proposed person or entity. Failure of the Owner or Architect to reply promptly shall constitute notice of no reasonable objection.

§ 5.2.2 The Contractor shall not contract with a proposed person or entity to whom the Owner or Architect has made reasonable and timely objection. The Contractor shall not be required to contract with anyone to whom the Contractor has made reasonable objection.

§ 5.2.3 If the Owner or Architect has reasonable objection to a person or entity proposed by the Contractor, the Contractor shall propose another to whom the Owner or Architect has no reasonable objection. If the proposed but rejected Subcontractor was reasonably capable of performing the Work, the Contract Sum and Contract Time shall be increased or decreased by the difference, if any, occasioned by such change, and an appropriate Change Order shall be issued before commencement of the substitute Subcontractor's Work. However, no increase in the Contract Sum or Contract Time shall be allowed for such change unless the Contractor has acted promptly and responsively in submitting names as required.

§ 5.2.4 The Contractor shall not change a Subcontractor, person or entity previously selected if the Owner or Architect makes reasonable objection to such substitute.

§ 5.3 SUBCONTRACTUAL RELATIONS
§ 5.3.1 By appropriate agreement, written where legally required for validity, the Contractor shall require each Subcontractor, to the extent of the Work to be performed by the Subcontractor, to be bound to the Contractor by terms of the Contract Documents, and to assume toward the Contractor all the obligations and responsibilities, including the responsibility for safety of the Subcontractor's Work, which the Contractor, by these Documents, assumes toward the Owner and Architect. Each subcontract agreement shall preserve and protect the rights of the Owner and Architect under the Contract Documents with respect to the Work to be performed by the Subcontractor so that subcontracting thereof will not prejudice such rights, and shall allow to the Subcontractor, unless specifically provided otherwise in the subcontract agreement, the benefit of all rights, remedies and redress against the Owner. Where appropriate, the Contractor shall require each Subcontractor to enter into similar agreements with Sub-subcontractors. The Contractor shall make available to each proposed Subcontractor, prior to the execution of the subcontract agreement, copies of the Contract Documents to which the Subcontractor will be bound, and, upon written request of the Subcontractor, identify to the Subcontractor terms and conditions of the proposed subcontract agreement which may be at variance with the Contract Documents. Subcontractors will similarly make copies of applicable portions of such documents available to their respective proposed Sub-subcontractors.

§ 5.4 CONTINGENT ASSIGNMENT OF SUBCONTRACTS
§ 5.4.1 Each subcontract agreement for a portion of the Work is assigned by the Contractor to the Owner provided that:

.1    assignment is effective only after termination of the Contract by the Owner pursuant to Section 14 and only for those subcontract agreements which the Owner accepts by notifying the Subcontractor and Contractor in writing

AIA Document A201™ – 1997. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 16:36:30 on 03/08/2006 under Order No.1000278678_1 which expires on 6/26/2006, and is not for resale.
User Notes:                                                                                        (3812681617)

23

ARTICLE 6  CONSTRUCTION BY OWNER OR BY SEPARATE CONTRACTORS  [OMITTED]

ARTICLE 7  CHANGES IN THE WORK
§ 7.1 GENERAL
§ 7.1.1 Changes in the Work may be accomplished after execution of the Contract, and without invalidating the Contract, by Change Order, Construction Change Directive or order for a minor change in the Work, subject to the limitations stated in this Article 7 and elsewhere in the Contract Documents.

Accordingly, no course of conduct or dealings between the parties, nor express or implied acceptance of alterations or additions to the Work, and no claim that the Owner has been unjustly enriched by any alteration or addition to the Work, whether or not there is, in fact, any unjust enrichment, shall be the basis of any claim to an increase in any amount due under the Contract Documents or a change in any time period provided for in the Contract Documents.

§ 7.1.2 A Change Order shall be based upon agreement among the Owner, Contractor and Architect; a Construction Change Directive requires agreement by the Owner and Architect and may or may not be agreed to by the Contractor; an order for a minor change in the Work may be issued by the Architect alone.

§ 7.1.3 Changes in the Work shall be performed under applicable provisions of the Contract Documents, and the Contractor shall proceed promptly, unless otherwise provided in the Change Order, Construction Change Directive or order for a minor change in the Work.

§ 7.2 CHANGE ORDERS
§ 7.2.1 A Change Order is a written instrument prepared by the Architect and signed by the Owner, Contractor and Architect, stating their agreement upon all of the following:
    .1    change in the Work;
    .2    the amount of the adjustment, if any, in the Contract Sum; and
    .3    the extent of the adjustment, if any, in the Contract Time.

§ 7.2.2 Methods used in determining adjustments to the Contract Sum may include those listed in Section 7.3.3.

§ 7.3 CONSTRUCTION CHANGE DIRECTIVES
§ 7.3.1 A Construction Change Directive is a written order prepared by the Architect and signed by the Owner and Architect, directing a change in the Work prior to agreement on adjustment, if any, in the Contract Sum or Contract Time, or both. The Owner may by Construction Change Directive, without invalidating the Contract, order changes in the Work within the general scope of the Contract consisting of additions, deletions or other revisions, the Contract Sum and Contract Time being adjusted accordingly. Deletions shall be defined as work not performed by the Contractor.

§ 7.3.2 A Construction Change Directive shall be used in the absence of total agreement on the terms of a Change Order.

§ 7.3.3 If the Construction Change Directive provides for an adjustment to the Contract Sum, the adjustment shall be based on one of the following methods:
    .1    mutual acceptance of a lump sum properly itemized and supported by sufficient substantiating data to permit evaluation;
    .2    unit prices stated in the Contract Documents or subsequently agreed upon;
    .3    cost to be determined in a manner agreed upon by the parties and a mutually acceptable fixed or percentage fee; or
    .4    as provided in Section 7.3.6.

§ 7.3.4 Upon receipt of a Construction Change Directive, the Contractor shall promptly proceed with the change in the Work involved and advise the Architect of the Contractor's agreement or disagreement with the method, if any, provided in the Construction Change Directive for determining the proposed adjustment in the Contract Sum or Contract Time.

§ 7.3.5 A Construction Change Directive signed by the Contractor indicates the agreement of the Contractor therewith, including adjustment in Contract Sum and Contract Time or the method for determining them. Such agreement shall be effective immediately and shall be recorded as a Change Order.

AIA Document A201™ - 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This draft was produced by AIA software at 14:25:29 on 05/22/2020 under Order No.1085279578_1 which expires on 4/22/2021, and is not for resale.
User Notes:                                                                                                    (2012467617)

26

§ 7.3.6 If the Contractor does not respond promptly or disagrees with the method for adjustment in the Contract Sum, the method and the adjustment shall be determined by the Architect on the basis of reasonable expenditures and savings of those performing the Work attributable to the change, including, in case of an increase in the Contract Sum, a reasonable allowance for overhead and profit. In such case, and also under Section 7.3.3.3, the Contractor shall keep and present, in such form as the Architect may prescribe, an itemized accounting together with appropriate supporting data. Unless otherwise provided in the Contract Documents, costs for the purposes of this Section 7.3.6 shall be limited to the following:

.1    costs of labor, including social security, old age and unemployment insurance, fringe benefits required by agreement or custom, and workers' compensation insurance;

.2    costs of materials, supplies and equipment, including cost of transportation, whether incorporated or consumed;

.3    rental costs of machinery and equipment, exclusive of hand tools, whether rented from the Contractor or others;

.4    costs of premiums for all bonds and insurance, permit fees, and sales, use or similar taxes related to the Work; and

.5    additional costs of supervision and field office personnel directly attributable to the change.

§ 7.3.7 The amount of credit to be allowed by the Contractor to the Owner for a deletion or change which results in a net decrease in the Contract Sum shall be actual net cost as confirmed by the Architect and Owner's lender's engineer. When both additions and credits covering related Work or substitutions are involved in a change, the allowance for overhead and profit shall be figured on the basis of net increase, if any, with respect to that change.

§ 7.3.8 Pending final determination of the total cost of a Construction Change Directive to the Owner, amounts not in dispute for such changes in the Work shall be included in Applications for Payment accompanied by a Change Order indicating the parties' agreement with part or all of such costs. For any portion of such cost that remains in dispute, the Architect will make an interim determination for purposes of monthly certification for payment for those costs. That determination of cost shall adjust the Contract Sum on the same basis as a Change Order, subject to the right of either party to disagree and assert a claim in accordance with Article 4.

§ 7.3.9 When the Owner and Contractor agree with the determination made by the Architect concerning the adjustments in the Contract Sum and Contract Time, or otherwise reach agreement upon the adjustments, such agreement shall be effective immediately and shall be recorded by preparation and execution of an appropriate Change Order.

§ 7.3.10 Agreement on any Change Order shall constitute a final settlement of all matters relating to the change in the Work which is the subject of the Change Order, including, but not limited to, all direct and indirect costs associated with such Change and any and all adjustments to the Contract Sum and Construction Schedule which reasonably could have been determined and incorporated into the Change Order application. In the event a Change Order increases the Contract Sum, the Contractor shall include the Work covered by such Change Order in Applications for Payment as if the Work were originally part of the Contract Documents.

§ 7.4 MINOR CHANGES IN THE WORK
§ 7.4.1 The Architect will have authority to order minor changes in the Work not involving adjustment in the Contract Sum or extension of the Contract Time and not inconsistent with the intent of the Contract Documents. Such changes shall be effected by written order and shall be binding on the Owner and Contractor. The Contractor shall carry out such written orders promptly.

ARTICLE 8    TIME
§ 8.1 DEFINITIONS
§ 8.1.1 Unless otherwise provided, Contract Time is the period of time, including authorized adjustments, allotted in the Contract Documents for Substantial Completion of the Work.

§ 8.1.2 The date of commencement of the Work is the date established in the Agreement.

§ 8.1.3 The date of Substantial Completion is the date certified by the Architect in accordance with Section 9.8.

AIA Document A201™ – 1997. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This draft was produced by AIA software at 16:38:25 on 01/23/2006 under Order No.1000170174_1 which expires on 6/28/2006, and is not for resale.
User Notes:                                                                                          (3212037017)

25

§ 8.1.4 The term "day" as used in the Contract Documents shall mean calendar day unless otherwise specifically defined.

§ 8.2 PROGRESS AND COMPLETION
§ 8.2.1 Time limits stated in the Contract Documents are of the essence of the Contract. By executing the Agreement the Contractor confirms that the Contract Time is a reasonable period for performing the Work.

§ 8.2.2 The Contractor shall not knowingly, except by agreement or instruction of the Owner in writing, prematurely commence operations on the site or elsewhere prior to the effective date of insurance required by Article 11 to be furnished by the Contractor and Owner. The date of commencement of the Work shall not be changed by the effective date of such insurance. Unless the date of commencement is established by the Contract Documents or a notice to proceed given by the Owner, the Contractor shall notify the Owner in writing not less than five days or other agreed period before commencing the Work to permit the timely filing of mortgages, mechanic's liens and other security interests.

§ 8.2.3 The Contractor shall proceed expeditiously with adequate forces and shall achieve Substantial Completion within the Contract Time.

§ 8.3 DELAYS AND EXTENSIONS OF TIME
§ 8.3.1 If the Contractor is delayed at any time in the commencement or progress of the Work by an act or neglect of the Owner or Architect, or of an employee of either, or of a separate contractor employed by the Owner, or by changes ordered in the Work, or by labor disputes, fire, unusual delay in deliveries, unavoidable casualties or other causes beyond the Contractor's control, or by delay authorized by the Owner pending mediation and arbitration, or by other causes which the Architect determines may justify delay, then the Contract Time shall be extended by Change Order for such reasonable time as the Architect may determine.

§ 8.3.1.1  Contractor shall at all times exert its best efforts and judgment as an experienced contractor to adopt and implement policies and practices designed to avoid work stoppages, slowdowns, disputes or strikes where reasonably possible and practical under the circumstances and shall, at all times, maintain Project wide labor harmony.

§ 8.3.2 Claims relating to time shall be made in accordance with applicable provisions of Section 4.3.

§ 8.3.3 This Section 8.3 does not preclude recovery of damages for delay by either party under other provisions of the Contract Documents. Contractor agrees to make no claims for damage for the delay in the performance of this Contract occasioned by any act, or failure to act, of Owner, Owner's Rep., Architect, Architect's Consultants and Subconsultants, or any of their representatives. Contractor agrees that any such claim shall be compensated for solely by an extension of time. The Contractor hereby expressly assumes the risk of all delays to the Work, and waives all claims for monetary damages or additional payment for delays to the Work, provided that the Contract Schedule be extended for excusable and acceptable delays as defined in 8.3.1 above

ARTICLE 9  PAYMENTS AND COMPLETION
§ 9.1 CONTRACT SUM
§ 9.1.1 The Contract Sum is stated in the Agreement and, including authorized adjustments, is the total amount payable by the Owner to the Contractor for performance of the Work under the Contract Documents.

§ 9.2 SCHEDULE OF VALUES
§ 9.2.1 Before the first Application for Payment, the Contractor shall submit to the Architect a schedule of values allocated to various portions of the Work, prepared in such form and supported by such data to substantiate its accuracy as the Architect may require. This schedule, unless objected to by the Architect, shall be used as a basis for reviewing the Contractor's Applications for Payment.

§ 9.3 APPLICATIONS FOR PAYMENT
§ 9.3.1 At least ten days before the date established for each progress payment, the Contractor shall submit to the Architect an itemized Application for Payment for operations completed in accordance with the schedule of values.

26

AIA Document A201™ – 1997. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This draft was produced by AIA software at 16:52:30 on 07/25/2006 under Order No.1000179076_1 which expires on 4/30/2008, and is not for resale.
User Notes:                                                                                            (1032405929)

Such application shall be notarized, if required, and supported by such data substantiating the Contractor's right to payment as the Owner or Architect may require, such as copies of requisitions from Subcontractors and material suppliers, and reflecting retainage if provided for in the Contract Documents.

§ 9.3.1.1 As provided in Section 7.3.9, such applications may include requests for payment on account of changes in the Work which have been properly authorized by Construction Change Directives, or by interim determinations of the Architect, but not yet included in Change Orders.

§ 9.3.1.2 Such applications may not include requests for payment for portions of the Work for which the Contractor does not intend to pay to a Subcontractor or material supplier, unless such Work has been performed by others whom the Contractor intends to pay.

§ 9.3.2 Unless otherwise provided in the Contract Documents, payments shall be made on account of materials and equipment delivered and suitably stored at the site for subsequent incorporation in the Work. If approved in advance by the Owner, payment may similarly be made for materials and equipment suitably stored off the site at a location agreed upon in writing. Payment for materials and equipment stored on or off the site shall be conditioned upon compliance by the Contractor with procedures satisfactory to the Owner to establish the Owner's title to such materials and equipment or otherwise protect the Owner's interest, and shall include the costs of applicable insurance, storage and transportation to the site for such materials and equipment stored off the site.

§ 9.3.3 The Contractor warrants that title to all Work covered by an Application for Payment will pass to the Owner no later than the time of payment. The Contractor further warrants that upon submittal of an Application for Payment, all Work for which Certificates for Payment have been previously issued and payments received from the Owner shall, to the best of the Contractor's knowledge, information and belief, be free and clear of liens, claims, security interests or encumbrances in favor of the Contractor, Subcontractors, material suppliers, or other persons or entities making a claim by reason of having provided labor, materials and equipment relating to the Work.

§ 9.4 CERTIFICATES FOR PAYMENT
§ 9.4.1 The Architect will, within seven days after receipt of the Contractor's Application for Payment, either issue to the Owner a Certificate for Payment, with a copy to the Contractor, for such amount as the Architect determines is properly due, or notify the Contractor and Owner in writing of the Architect's reasons for withholding certification in whole or in part as provided in Section 9.5.1.

§ 9.4.2 The issuance of a Certificate for Payment will constitute a representation by the Architect to the Owner, based on the Architect's evaluation of the Work and the data comprising the Application for Payment, that the Work has progressed to the point indicated and that, to the best of the Architect's knowledge, information and belief, the quality of the Work is in accordance with the Contract Documents. The foregoing representations are subject to an evaluation of the Work for conformance with the Contract Documents upon Substantial Completion, to results of subsequent tests and inspections, to correction of minor deviations from the Contract Documents prior to completion and to specific qualifications expressed by the Architect. The issuance of a Certificate for Payment will further constitute a representation that the Contractor is entitled to payment in the amount certified. However, the issuance of a Certificate for Payment will not be a representation that the Architect has (1) made exhaustive or continuous on-site inspections to check the quality or quantity of the Work, (2) reviewed construction means, methods, techniques, sequences or procedures, (3) reviewed copies of requisitions received from Subcontractors and material suppliers and other data requested by the Owner to substantiate the Contractor's right to payment, or (4) made examination to ascertain how or for what purpose the Contractor has used money previously paid on account of the Contract Sum.

§ 9.5 DECISIONS TO WITHHOLD CERTIFICATION
§ 9.5.1 Any decision to withhold a Certificate for payment shall require the approval of the lender's engineer. The Architect may withhold a Certificate for Payment in whole or in part, to the extent reasonably necessary to protect the Owner, if in the Architect's opinion the representations to the Owner required by Section 9.4.2 cannot be made. If the Architect is unable to certify payment in the amount of the Application, the Architect will notify the Contractor and Owner as provided in Section 9.4.1. If the Contractor and Architect cannot agree on a revised amount, the Architect will promptly issue a Certificate for Payment for the amount for which the Architect is able to make such representations to the Owner. The Architect may also withhold a Certificate for Payment or, because of subsequently discovered evidence, may nullify the whole or a part of a Certificate for Payment previously issued, to such extent as may be necessary in the Architect's opinion to protect the Owner from loss for which the Contractor is responsible, including loss resulting from acts and omissions described in Section 3.3.2, because of:

AIA Document A201™ - 1997. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This draft was produced by AIA software at 16:35:35 on 02/23/2006 under Order No.1000199079_1 which expires on 4/26/2006, and is not for resale.
User Notes:                                                                                      (3613C(093))

27

.1 defective Work not remedied;
.2 third party claims filed or reasonable evidence indicating probable filing of such claims unless security acceptable to the Owner is provided by the Contractor;
.3 failure of the Contractor to make payments properly to Subcontractors or for labor, materials or equipment;
.4 reasonable evidence that the Work cannot be completed for the unpaid balance of the Contract Sum;
.5 damage to the Owner or another contractor;
.6 reasonable evidence that the Work will not be completed within the Contract Time, and that the unpaid balance would not be adequate to cover actual or liquidated damages for the anticipated delay;
.7 persistent failure to carry out the Work in accordance with the Contract Documents; or
.8 damages resulting from Contractor's failure to give notice of errors and inconsistencies.

**§ 9.5.2** When the above reasons for withholding certification are removed, certification will be made for amounts previously withheld.

**§ 9.5.3** Any decision by the Architect to withhold certification for payment may be presented by Contractor to Owner's lender's engineer for a second opinion; Owner's lender has the authority to overrule the Architect and certify payment to the extent recommended by lender's engineer.

**§ 9.6 PROGRESS PAYMENTS**
**§ 9.6.1** After the Architect has issued a Certificate for Payment, the Owner shall make payment in the manner and within the time provided in the Contract Documents, and shall so notify the Architect.

**§ 9.6.1.1** No partial payment made hereunder shall be or be construed to be final acceptance or approval of that portion of the Work to which such partial payment relates or relieve the Contractor, Subcontractor or Vendor of any of its obligations hereunder with respect thereto. The Owner shall make no payment until the Owner has received from the Contractor a release and/or waiver of liens from the Contractor for the Contractor and all Subcontractors for the portion of the Work covered by such payments.

**§ 9.6.2** The Contractor shall promptly pay each Subcontractor, upon receipt of payment from the Owner, out of the amount paid to the Contractor on account of such Subcontractor's portion of the Work, the amount to which said Subcontractor is entitled, reflecting percentages actually retained from payments to the Contractor on account of such Subcontractor's portion of the Work. The Contractor shall, by appropriate agreement with each Subcontractor, require each Subcontractor to make payments to Sub-subcontractors in a similar manner.

**§ 9.6.3** [omitted]

**§ 9.6.4** Neither the Owner nor Architect shall have an obligation to pay or to see to the payment of money to a Subcontractor except as may otherwise be required by law.

**§ 9.6.5** Payment to material suppliers shall be treated in a manner similar to that provided in Sections 9.6.2, 9.6.3 and 9.6.4.

**§ 9.6.6** A Certificate for Payment, a progress payment, or partial or entire use or occupancy of the Project by the Owner shall not constitute acceptance of Work not in accordance with the Contract Documents.

**§ 9.6.7** Unless the Contractor provides the Owner with a payment bond in the full penal sum of the Contract Sum, payments received by the Contractor for Work properly performed by Subcontractors and suppliers shall be held by the Contractor for those Subcontractors or suppliers who performed Work or furnished materials, or both, under contract with the Contractor for which payment was made by the Owner. Nothing contained herein shall require money to be placed in a separate account and not commingled with money of the Contractor, shall create any fiduciary liability or tort liability on the part of the Contractor for breach of trust or shall entitle any person or entity to an award of punitive damages against the Contractor for breach of the requirements of this provision.

AIA Document A201™ – 1997. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 14:50:39 on 03/31/2008 under Order No.1000178670_1 which expires on 6/26/2008, and is not for resale.
User Notes:                                                                                      (3032648765)

20

**§ 9.7 FAILURE OF PAYMENT**

**§ 9.7.1** If the Architect does not issue a Certificate for Payment, through no fault of the Contractor, within fifteen (15) days after receipt of the Contractor's Application for Payment, or if the Owner does not pay the Contractor within fifteen (15) days after the date established in the Contract Documents the amount certified by the Architect, then the Contractor may, upon seven (7) additional days' written notice to the Owner and Architect, stop the Work until payment of the amount owing has been received. The Contract Time shall be extended appropriately and the Contract Sum shall be increased by the amount of the Contractor's reasonable costs of shut-down, delay and start-up, plus interest as provided for in the Contract Documents.

**§ 9.7.2** If the Owner is entitled to reimbursement or payment from the Contractor under or pursuant to the Contract Documents, such payment shall be made promptly upon demand by the Owner. Notwithstanding anything contained in the Contract Documents to the contrary, if the Contractor fails to promptly make any payment due to the Owner, or the Owner incurs any costs or expenses to cure any default of the Contractor to correct defective Work, the Owner shall have an absolute right to offset such amount against the Contract Sum and may, in Owner's sole discretion, elect either to: (1) deduct an amount equal to that which the Owner is entitled from any payment then or thereafter due the Contractor from the Owner, or (2) issue through the Owner or the Architect a written notice to the Contractor reducing the Contract Sum by an amount equal to that which the Owner is entitled.

**§ 9.8 SUBSTANTIAL COMPLETION**

**§ 9.8.1** Substantial Completion is the stage in the progress of the Work when the Work or designated portion thereof is sufficiently complete in accordance with the Contract Documents so that the Owner can occupy or utilize the Work for its intended use and only minor items that can be corrected or completed without any material interference with Owner's use of the Work remains to be corrected or completed.

**§ 9.8.2** When the Contractor considers that the Work, or a portion thereof which the Owner agrees to accept separately, is substantially complete, the Contractor shall prepare and submit to the Architect a comprehensive list of items to be completed or corrected prior to final payment. Failure to include an item on such list does not alter the responsibility of the Contractor to complete all Work in accordance with the Contract Documents.

**§ 9.8.3** Upon receipt of the Contractor's list, the Architect will make an inspection to determine whether the Work or designated portion thereof is substantially complete. If the Architect's inspection discloses any item, whether or not included on the Contractor's list, which is not sufficiently complete in accordance with the Contract Documents so that the Owner can occupy or utilize the Work or designated portion thereof for its intended use, the Contractor shall, before issuance of the Certificate of Substantial Completion, complete or correct such item upon notification by the Architect. In such case, the Contractor shall then submit a request for another inspection by the Architect to determine Substantial Completion.

**§ 9.8.4** When the Work or designated portion thereof is substantially complete, the Architect will prepare a Certificate of Substantial Completion which shall establish the date of Substantial Completion, shall establish responsibilities of the Owner and Contractor for security, maintenance, heat, utilities, damage to the Work and insurance, and shall fix the time within which the Contractor shall finish all items on the list accompanying the Certificate. Warranties required by the Contract Documents shall commence on the date of Substantial Completion of the Work or designated portion thereof unless otherwise provided in the Certificate of Substantial Completion.

**§ 9.8.5** The Certificate of Substantial Completion shall be submitted to the Owner and Contractor for their written acceptance of responsibilities assigned to them in such Certificate. Upon such acceptance and consent of surety, if any, the Owner shall make payment of retainage applying to such Work or designated portion thereof. Such payment shall be adjusted for Work that is incomplete or not in accordance with the requirements of the Contract Documents.

**§ 9.9 PARTIAL OCCUPANCY OR USE**

**§ 9.9.1** The Owner may occupy or use any completed or partially completed portion of the Work at any stage when such portion is designated by separate agreement with the Contractor, provided such occupancy or use is consented to by the insurer as required under Section 11.4.1.5 and authorized by public authorities having jurisdiction over the Work. Such partial occupancy or use may commence whether or not the portion is substantially complete, provided the Owner and Contractor have accepted in writing the responsibilities assigned to each of them for payments, retainage, if any, security, maintenance, heat, utilities, damage to the Work and insurance, and have agreed in writing concerning the period for correction of the Work and commencement of warranties required by the Contract

AIA Document A201™ – 1997. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This draft was produced by AIA software at 16:05:30 on 03/15/2006 under Order No.1000178075_1 which expires on 4/28/2006, and is not for resale. User Notes: (3012097843)

29

Documents. When the Contractor considers a portion substantially complete, the Contractor shall prepare and submit a list to the Architect as provided under Section 9.8.2. Consent of the Contractor to partial occupancy or use shall not be unreasonably withheld. The stage of the progress of the Work shall be determined by written agreement between the Owner and Contractor or, if no agreement is reached, by decision of the Architect. Owner responsible for all costs associated with partial occupancy or use.

§ 9.6.1.1 It shall be mutually understood and agreed that such occupancy does not relieve any Contractor from completing the Work within the time period specified.

§ 9.6.2 Immediately prior to such partial occupancy or use, the Owner, Contractor and Architect shall jointly inspect the area to be occupied or portion of the Work to be used in order to determine and record the condition of the Work.

§ 9.6.3 Unless otherwise agreed upon, partial occupancy or use of a portion of the Contract Documents, constitute acceptance of Work not complying with the requirements of the Contract Documents.

§ 9.6.4 The occupancy of any portion of the building does not constitute an acceptance of any work as the Project will be accepted as a whole and not in mist; further, such occupancy alone shall not determine when substantial completion and performance has been reached.

§ 9.10 FINAL COMPLETION AND FINAL PAYMENT

§ 9.10.1 Upon receipt of written notice that the Work is ready for final inspection and acceptance and upon receipt of a final Application for Payment, the Architect will promptly make such inspection and, when the Architect finds the Work acceptable under the Contract Documents and the Contract fully performed, the Architect will promptly issue a final Certificate for Payment stating that to the best of the Architect's knowledge, information and belief, and on the basis of the Architect's on-site visits and inspections, the Work has been completed in accordance with terms and conditions of the Contract Documents and that the entire balance found to be due the Contractor and noted in the final Certificate is due and payable. The Architect's final Certificate for Payment will constitute a further representation that conditions listed in Section 9.10.2 as precedent to the Contractor's being entitled to final payment have been fulfilled.

All warranties and guarantees required under or pursuant to the Contract Documents shall be assembled and delivered by the General Contractor to the Owner's Rep as part of the final Application for Payment. Final Certificate for Payment shall not be issued until all warranties and guarantees have been received, accepted and approved. Acceptance and approval of such warranties and guarantees shall not be unreasonably delayed or withheld.

§ 9.10.2 [omitted] Contractor shall submit lien waivers in lieu thereof.

§ 9.10.3 If, after Substantial Completion of the Work, final completion thereof is materially delayed through no fault of the Contractor or by issuance of Change Orders affecting final completion, and the Architect so confirms, the Owner shall, upon application by the Contractor and certification by the Architect, and without terminating the Contract, make payment of the balance due for that portion of the Work fully completed and accepted. If the remaining balance for Work not fully completed or corrected is less than retainage stipulated in the Contract Documents, and if bonds have been furnished, the written consent of surety to payment of the balance due for that portion of the Work fully completed and accepted shall be submitted by the Contractor to the Architect prior to certification of such payment. Such payment shall be made under terms and conditions governing final payment, except that it shall not constitute a waiver of claims.

§ 9.10.4 The making of final payment shall constitute a waiver of Claims by the Owner except those arising from:

  .1   liens, Claims, security interests or encumbrances arising out of the Contract and unsettled;

  .2   failure of the Work to comply with the requirements of the Contract Documents; or

  .3   terms of special warranties required by the Contract Documents.

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This draft was produced by AIA software at 16:30:30 on 05/25/2006 under Order No.1660170570_1 which expires on 5/25/2006, and is not for resale.
User Notes:                                                                (3812609519)

30

§ 9.10.5 Acceptance of final payment by the Contractor, a Subcontractor or material supplier shall constitute a waiver of claims by that payee except those previously made in writing and identified by that payee as unsettled at the time of final Application for Payment.

## ARTICLE 10   PROTECTION OF PERSONS AND PROPERTY
§ 10.1 SAFETY PRECAUTIONS AND PROGRAMS
§ 10.1.1 The Contractor shall be responsible for initiating, maintaining and supervising all safety precautions and programs in connection with the performance of the Contract.

§ 10.2 SAFETY OF PERSONS AND PROPERTY
§ 10.2.1 The Contractor shall take reasonable precautions for safety of, and shall provide reasonable protection to prevent damage, injury or loss to:

.1   employees on the Work and other persons who may be affected thereby;

.2   the Work and materials and equipment to be incorporated therein, whether in storage on or off the site, under care, custody or control of the Contractor or the Contractor's Subcontractors or Subsubcontractors; and

.3   other property at the site or adjacent thereto, such as trees, shrubs, lawns, walks, pavements, roadways, structures and utilities not designated for removal, relocation or replacement in the course of construction.

§ 10.2.2 The Contractor shall give notices and comply with applicable laws, ordinances, rules, regulations and lawful orders of public authorities bearing on safety of persons or property or their protection from damage, injury or loss.

§ 10.2.3 The Contractor shall erect and maintain, as required by existing conditions and performance of the Contract, reasonable safeguards for safety and protection, including posting danger signs and other warnings against hazards, promulgating safety regulations and notifying owners and users of adjacent sites and utilities.

§ 10.2.4 When use or storage of explosives or other hazardous materials or equipment or unusual methods are necessary for execution of the Work, the Contractor shall exercise utmost care and carry on such activities under supervision of properly qualified personnel.

§ 10.2.5 The Contractor shall promptly remedy damage and loss (other than damage or loss insured under property insurance required by the Contract Documents) to property referred to in Sections 10.2.1.2 and 10.2.1.3 caused in whole or in part by the Contractor, a Subcontractor, a Sub-subcontractor, or anyone directly or indirectly employed by any of them, or by anyone for whose acts they may be liable and for which the Contractor is responsible under Sections 10.2.1.2 and 10.2.1.3, except damage or loss attributable to acts or omissions of the Owner or Architect or anyone directly or indirectly employed by either of them, or by anyone for whose acts either of them may be liable, and not attributable to the fault or negligence of the Contractor. The foregoing obligations of the Contractor are in addition to the Contractor's obligations under Section 3.18.

§ 10.2.6 The Contractor shall designate a responsible member of the Contractor's organization at the site whose duty shall be the prevention of accidents. This person shall be the Contractor's superintendent unless otherwise designated by the Contractor in writing to the Owner and Architect.

§ 10.2.7 The Contractor shall not load or permit any part of the construction or site to be loaded so as to endanger its safety.

§ 10.2.8 The Contractor shall promptly report in writing to the Owner all accidents arising out of or in connection with the Work which cause death, personal injury, or property damage, giving full details and statements of any witnesses. In addition, if death, serious personal injuries, or serious property damages are caused, the accident shall be reported immediately by telephone or messenger to the Owner.

§ 10.3 HAZARDOUS MATERIALS
§ 10.3.1 If reasonable precautions will be inadequate to prevent foreseeable bodily injury or death to persons resulting from a material or substance, including but not limited to asbestos or polychlorinated biphenyl (PCB), encountered on the site by the Contractor, the Contractor shall, upon recognizing the condition, immediately stop Work in the affected area and report the condition to the Owner and Architect in writing.

AIA Document A201™ - 1997. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This draft was produced by AIA software at 16:18:36 on 03/23/2006 under Order No.1000178470_3 which expires on 6/28/2006, and is not for resale.
User Notes:                                                    (2018267617)

31